1  **BOHM, MATSEN, KEGEL & AGUILERA, LLP**
   A. Eric Aguilera (SBN 192390)
2  Raymond E. Brown (SBN 164819)
   695 Town Center Drive, Suite 700
3  Costa Mesa, CA 92626
   Telephone: (714) 384-6500
4  Facsimile: (714) 384-6501
   eaguilera@bmkalaw.com
5  rbrown@bmkalaw.com

6

7  Attorneys for Plaintiffs

8                    **UNITED STATES DISTRICT COURT**

9                    **NORTHERN DISTRICT OF CALIFORNIA**

10

11

12  TRAVELERS PROPERTY CASUALTY          Case No. 3:11-CV-03638-MEJ
    COMPANY OF AMERICA, a Connecticut
13  corporation; FIDELITY & GUARANTY
    INSURANCE COMPANY, an Iowa            **COMPLAINT FOR:**
14  corporation; THE TRAVELERS INDEMNITY
    COMPANY OF CONNECTICUT, a            **(1) DECLARATORY RELIEF;**
15  Connecticut corporation, ST. PAUL
    MERCURY INSURANCE COMPANY, a         **(2) BREACH OF CONTRACT;**
16  Minnesota corporation
                                         **(3) BREACH OF THE IMPLIED**
17              Plaintiff,               **COVENANT OF GOOD FAITH AND**
                                         **FAIR DEALING; AND**
18              vs.
                                         **(4) REIMBURSEMENT**
19
    CENTEX HOMES, a Nevada partnership; and
20  DOES 1 through 10 inclusive,
                                         **JURY DEMAND**
21              Defendant.

22

23          For its claims against Defendants Centex Homes and Does 1 through 10, Plaintiffs

24  TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, FIDELITY & GUARANTY

25  INSURANCE COMPANY, THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT,

26  and ST. PAUL MERCURY INSURANCE COMPANY  (collectively referred to as "Plaintiffs")

27  allege as follows:

28  //

---

1

## JURISDICTION

1.    Plaintiff TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA ("Travelers") is now, and at all relevant times was, a corporation, existing under the laws of the State of Connecticut.  Travelers is, and at all relevant times was, an insurance carrier eligible to do business as an insurer in the State of California.

2.    Plaintiff FIDELITY & GUARANTY INSURANCE COMPANY ("Fidelity") is now, and at all relevant times was, a corporation, existing under the laws of the State of Iowa.  Fidelity is, and at all relevant times was, an insurance carrier eligible to do business as an insurer in the State of California.

3.    Plaintiffs THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT ("TRV Indemnity"), is now, and at all relevant times was, a corporation, existing under the laws of the State of Connecticut.  TRV Indemnity is, and at all relevant times was, an insurance carrier eligible to do business as an insurer in the State of California.

4.    Plaintiffs ST. PAUL MERCURY INSURANCE COMPANY ("St. Paul"), is now, and at all relevant times was, a corporation, existing under the laws of the State of Minnesota.  St. Paul is, and at all relevant times was, an insurance carrier eligible to do business as an insurer in the State of California.

5.    Plaintiffs are informed and believe and thereon allege that Defendant Centex Homes ("Centex" or "Defendant"), is, a partnership, existing under the laws of the State of Nevada. Plaintiffs are further informed and believe and thereon allege that Centex is, and at all times relevant was, a home builder doing business in the State of California.

6.    Defendants sued herein as DOES 1 through 10, inclusive, are sued herein by such fictitious names because Plaintiffs are unaware of the true names and capacities of said DOE defendants.  Plaintiffs will amend this Complaint to reflect the true names when the same are ascertained.  Plaintiffs are informed and believe and thereon allege that said DOE defendants are responsible for the acts, events, and circumstances alleged herein, or are interested parties to this action.

7.    This Court has original jurisdiction under 28 U.S.C. § 1332 in that it is a civil action

**FIRST AMENDED COMPLAINT**

between citizens of different states in which the matter in controversy exceeds, exclusive of costs and interest, seventy-five thousand dollars.   The amount in controversy exceeds $75,000, and represents fees and costs sought by Defendant Centex from Plaintiffs in connection with its defense and indemnification in two separate lawsuits.

<b><u>VENUE</u></b>

8.     Plaintiffs are informed and believe and thereon allege that the acts and/or omissions at issue in this litigation took place in this judicial district within the State of California.   The Underlying Action is pending in this judicial district.   Venue, therefore, lies with this Court, as a substantial part of the events which are the subject of the claims asserted herein are located and/or took place in this judicial district.

<b><u>GENERAL ALLEGATIONS</u></b>

**A.     Insurance Policies**

      **(1) The American Woodmark Policy**

9.     Travelers issued commercial general liability policy number TJ GLSA-450J0461-TIL, effective 2/8/03 through 3/1/04, under which American Woodmark Corporation was a named insured (hereinafter referred to as the "American Woodmark Policy").    Under the terms of the American Woodmark Policy, Travelers was given the right to retain counsel of its own choosing to represent its insured or any other additional insureds.  In addition, under the terms of the American Woodmark Policy, the insured and additional insureds are mandated to cooperate with Travelers with regard to all aspects of its coverage, including any defense afforded under the policy.   The American Woodmark Policy contains the Commercial General Liability Coverage Form CG 00 01 10 93, as modified by form CG D1 94 11 97, which specifically provides in part as follows:

      **SECTION I – COVERAGES**

      **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

      **1.  Insuring Agreement.**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

10. The American Woodmark Policy further requires that in the event of an occurrence, offense, claim or suit, any insured must "[c]ooperate with us in the investigation or settlement of the claim or defense against the 'suit' " and "[a]ssist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply."

11. In addition, the American Woodmark Policy provides that "[n]o insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than first aid, without our consent."

### (2) The West Coast Countertops Policies

12. Fidelity and/or Travelers issued commercial general liability policies numbered BK01095109, effective 4/12/02 to 4/12/03, BK01449053, effective 4/12/03 to 4/12/04, BK0171446, effective 4/12/04 to 4/12/05, BK02126663, effective 4/12/05 to 4/12/06, and I-680-2897C731-TIL, effective 4/12/06 to 4/12/08 under which West Coast Countertops was the named insured (hereinafter referred to as the "West Coast Countertops Policies").

13. Under the terms of the West Coast Countertops Policy, effective 4/12/04 to 4/12/05, Fidelity was given the right to retain counsel of its own choosing to represent its insured or any other additional insureds. In addition, under the terms of the West Coast Countertops Policy, effective 4/12/04 to 4/12/05, the insured and any additional insureds are mandated to cooperate with Fidelity with regard to all aspects of its coverage, including any defense afforded under the policy. The West Coast Countertops Policy, effective 4/12/04 to 4/12/05 contains the Liability Coverage Part form number CL/BF 20 10 11 02, which specifically provides in part as follows:

**FIRST AMENDED COMPLAINT**

**SECTION I. COVERAGE**

**A.  Liability**

    **1.  Insuring Agreement**

        **a.**  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

14.     The West Coast Countertops Policy, effective 4/12/04 to 4/12/05 also provides that any insured "must cooperate with and, when requested, assist us in…[t]aking other reasonable steps to help us investigate or settle a claim or 'suit' or defend any insured against a 'suit'."

15.     In addition, the West Coast Countertops Policy, effective 4/12/04 to 4/12/05 provides that "[n]o insured will, except at the insured's own cost, voluntarily make a payment, assume any financial obligation or incur any expense, other than for first aid given to other persons at the time of an accident, without our consent."

16.     The West Coast Countertops Policies, effective 4/12/06 to 4/12/08, each contain blanket additional insured endorsements, the terms of which, in addition to all other applicable terms and limitations, limit the coverage available to any individual or entity which qualifies as an additional insured to liability arising out of West Coast Countertops ongoing operations for the additional insured.

          **(3) The Foremost Superior Marble Policy**

17.     Travelers issued commercial general liability policy number 680-359Y8564-TIL, effective 8/1/02 through 8/1/03 under which Foremost Superior Marble was a named insured (hereinafter referred to as the "Foremost Policy ").    Under the terms of the Foremost Policy, Travelers was given the right to retain counsel of its own choosing to represent its insured or any other additional insureds.  In addition, under the terms of the Foremost Policy, the insured and additional insureds are mandated to cooperate with Travelers with regard to all aspects of its coverage, including any defense afforded under the policy.  The Foremost Policy contains the

**FIRST AMENDED COMPLAINT**

Commercial General Liability Coverage Form CG 00 01 10 93, as modified by form CG D1 94 11 97, which specifically provides in part as follows:

### SECTION I – COVERAGES

### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement.**

> b. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

18.     The Foremost Policy further requires that in the event of an occurrence, offense, claim or suit, any insured must "[c]ooperate with us in the investigation or settlement of the claim or defense against the 'suit' " and "[a]ssist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply."

19.     In addition, the Foremost Policy provides that "[n]o insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than first aid, without our consent."

### (4) The Fresno Precision Plastics Policy

20.     TRV Indemnity issued commercial general liability policy number Y-630-626X1002-TCT-04, effective 5/1/04 through 5/1/05, under which Fresno Precision Plastics was a named insured (hereinafter referred to as the "Fresno Policy "). Under the terms of the Fresno Policy, TRV Indemnity was given the right to retain counsel of its own choosing to represent its insured or any other additional insureds. In addition, under the terms of the Fresno Policy, the insured and additional insureds are mandated to cooperate with TRV Indemnity with regard to all

**FIRST AMENDED COMPLAINT**

aspects of its coverage, including any defense afforded under the policy. The Fresno Policy contains the Commercial General Liability Coverage Form CG 00 01 10 93, as modified by form CG D1 94 11 97, which specifically provides in part as follows:

**SECTION I – COVERAGES**

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.  Insuring Agreement.**

> c.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

21.    The Fresno Policy further requires that in the event of an occurrence, offense, claim or suit, any insured must "[c]ooperate with us in the investigation or settlement of the claim or defense against the 'suit' " and "[a]ssist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply."

22.    In addition, the Fresno Policy provides that "[n]o insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than first aid, without our consent."

**(5) The Executive Landscape Policy**

23.    St. Paul issued commercial general liability policy number CK08100356, effective 6/30/06 through 6/30/07, under which Executive Landscape was a named insured (hereinafter referred to as the "Executive Landscape Policy ").   Under the terms of the Executive Landscape Policy, St. Paul was given the right to retain counsel of its own choosing to represent its insured or any other additional insureds.  In addition, under the terms of the Executive Landscape Policy, the

insured and additional insureds are mandated to cooperate with St. Paul with regard to all aspects of its coverage, including any defense afforded under the policy.   The Executive Landscape Policy contains the Commercial General Liability Protection form 47500 Rev. 1-01, which specifically provides in part as follows:

> **Right and duty to defend a protected person.**
> We'll have the right and duty to defend any protected person against a claim or suit for injury or damage covered by this agreement.   We'll have such right and duty even if all of the allegations of the claim or suit are groundless, false, or fraudulent. But we won't have a duty to perform any other act or service.

24.    The Executive Landscape Policy also provides that any insured "must "[c]ooperate with and, when requested, assist us in…[t]aking other reasonable steps to help us investigate or settle, or defend a person or organization protected under your policy against, a claim or suit."

25.    In addition, the Executive Landscape policy prohibits an insured from "assum[ing] any financial obligation or pay[ing] out any money, other than for first aid given to others at the time of an accident, without our consent."

### (6) The Wayne-Dalton Policies

26.    Travelers issued commercial general liability policy numbered 281K3126, effective in successive terms from 6/1/03 to 6/1/07 under which Wayne-Dalton Corporation ("Wayne-Dalton") was the named insured (the "Wayne-Dalton Policies").

27.    Each of the Wayne-Dalton policies contain blanket additional insured endorsements, the terms of which, in addition to all other applicable terms and limitations, limit the coverage available to any individual or entity which qualifies as an additional insured to liability arising out of Wayne-Dalton's work for the additional insured.

### (7) The Penney Lawn Policies

28.    St. Paul issued commercial general liability policy numbered CK08101545, effective in successive terms from 5/20/04 to 5/20/11 under which Penney Lawn Service, Inc. ("Penney Lawn") was the named insured (the "Penney Lawn Policies").

29.    Each of the Penney Lawn policies contain blanket additional insured endorsements,

**FIRST AMENDED COMPLAINT**

the terms of which, in addition to all other applicable terms and limitations, limit the coverage available to any individual or entity which qualifies as an additional insured to liability arising out of Penney Lawn's ongoing operations for the additional insured.

### B.    The Garvey Action

30.    On or about March 18, 2010, the matter entitled, *Garvey et al. v. Centex Homes, et al.*, Sacramento County Superior Court Case No. 34-2010-00073233 was filed ("Garvey Action"). On or about June 7, 2010, the plaintiffs filed a first amended complaint. The litigation relates to allegations of construction defect by various homeowners in the Skyline, Sun River, and Town Square developments in Sacramento, California. The first amended complaint alleges causes of action against Centex for: 1) Strict Liability; 2) Breach of Express Warranty; 3) Breach of Implied Warranties of Merchantability; and 4) Negligence.

31.    Centex, by and through its legal representative, Newmeyer & Dillion, tendered the Garvey Action to Travelers as an additional insured under the American Woodmark Policy.

32.    Travelers acknowledged receipt of Centex's tender and requested additional information. After receiving some of the requested information and reviewing same, Travelers sent correspondence requesting additional information and advising that Travelers was still investigating the matter.

33.    After receiving the requested information and completing its investigation, Travelers sent correspondence to Centex advising it that subject to a full reservation of rights, Travelers accepted Centex's tender and agreed to defend Centex in the Garvey Action as an additional insured under the American Woodmark Policy. At that time, Travelers asserted its right to retain counsel of its choosing and advised Centex that it was appointing Mary K. Glaspy of the law firm Glaspy & Glaspy to represent and defend Centex in the Garvey Action.

34.    To date, Centex has refused to accept counsel appointed by Travelers to defend it in the Garvey Action. Said refusal is in material breach of the subject insurance policy, and the implied covenant of good faith and fair dealing. In addition, Centex has refused to seek contribution and/or a defense from other insurance carriers. Such conduct is also a material breach of the subject insurance policy, and the implied covenant of good faith and fair dealing.

**FIRST AMENDED COMPLAINT**

35.     Centex, by and through its legal representative, Newmeyer & Dillion, also tendered the Garvey Action to Travelers as an additional insured pursuant to the policies of insurance issued to Wayne-Dalton.  Travelers denied Centex's tender pursuant to the Wayne-Dalton policies based upon the fact that the Garvey Action does not contain any allegations of damages arising out of Wayne-Dalton's work.  Travelers is informed and believes that Centex disputes Travelers denial of the tender.

**C.     The Acupan Action**

36.     On or about March 29, 2010, pursuant to California Civil Code §895 et seq., the owners of 134 homes located in the Encanto, Tesoro, Greystone and Hidden Oaks communities in Bakersfield, California, provided notice to Centex of claims for construction deficiencies.   The owners of additional homes provided notice to Centex of claims of construction deficiencies on or about April 22, 2010, May 24, 2010, July 27, 2010, September 21, 2010, November 8, 2010, and February 2, 2011, bringing the total homes at issue to 203.  In the notices, the homeowners allege a variety of defects in their homes.  On or about April 19, 2011, the homeowners filed the lawsuit entitled *Acupan et al. v. Centex Homes, et al.*, Kern County Superior Court Case No. S-1500-CV-273392 (the "Acupan Action").

37.     Centex, by and through its legal representative Newmeyer & Dillion, tendered the Acupan Action to Fidelity and Travelers as an additional insured under the West Coast Countertops Policies.

38.     After requesting additional information and conducting an investigation, Fidelity sent correspondence to Centex advising it that subject to a full reservation of rights, Fidelity accepted Centex's tender and agreed to defend Centex in the Acupan Action as an additional insured under the West Coast Countertops Policy, effective 4/12/04 to 4/12/05.  Fidelity has asserted its right to retain counsel of its choosing and advised Centex that it was appointing Mr. David Lee, Esq. of the law firm of Lee, Hernandez, Landrum, Garofalo & Blake to represent and defend Centex in the Acupan Action.

39.     To date, Centex has refused to accept counsel appointed by Fidelity to defend it in the Acupan Action. Said refusal is in material breach of the subject insurance policy, and the

**FIRST AMENDED COMPLAINT**

implied covenant of good faith and fair dealing.  In addition, Centex has refused to seek contribution and/or a defense from other insurance carriers.  Such conduct is also a material breach of the subject insurance policy, and the implied covenant of good faith and fair dealing.

40.     Centex, by and through its legal representative Newmeyer & Dillion, also tendered the Acupan Action to TRV Indemnity as an additional insured under the Fresno Policy.

41.     After repeated requests for information and after conducting an investigation, TRV Indemnity sent correspondence to Centex advising it that subject to a full reservation of rights, TRV Indemnity accepted Centex's tender and agreed to defend Centex in the Acupan Action as an additional insured under the Fresno Policy.

42.     Centex has indicated that it will refuse to accept counsel appointed by TRV Indemnity to defend it in the Acupan Action. Said refusal is in material breach of the subject insurance policy, and the implied covenant of good faith and fair dealing.  In addition, Centex has refused to seek contribution and/or a defense from other insurance carriers.  Such conduct is also a material breach of the subject insurance policy, and the implied covenant of good faith and fair dealing.

43.     Centex, by and through its legal representative Newmeyer & Dillion, also tendered the Acupan Action to St. Paul as an additional insured under the Penney Lawn Policies.  St. Paul denied Centex's tender, among other reasons, based upon the fact that the Acupan Action does not involve any allegations of damages arising from Penney Lawn's ongoing operations.  St. Paul is informed and believes that Centex disputes this denial.

**D.     The Adkins Action**

44.     On or about March 16, 2010, the owners of 33 single family homes in the Laguna Stonelake development located in Sacramento, California filed a construction defect lawsuit entitled *Suzanne Adkins, et al. v. Centex Homes, et al.*, Sacramento County Superior Court Case No. 2010-00068675 (the "Adkins Action").  The first amended complaint contains causes of action for: 1) Strict Products Liability; 2) Breach of Implied Warranty of Merchantability; 3) Breach of Contract; 4) Negligence; and 5) Breach of Express Warranty.

45.     Centex, by and through its legal representative, Newmeyer & Dillion, tendered the

**FIRST AMENDED COMPLAINT**

1  Adkins Action to Travelers as an additional insured under the Foremost Policy.

2      46.    Subject to a full reservation of rights, Travelers accepted Centex's tender and agreed

3  to defend Centex in the Adkins Action as an additional insured under the Foremost Policy.

4  Thereafter, Travelers retained Mr. David Lee, Esq. of the law firm of Lee, Hernandez, Landrum,

5  Garofalo & Blake to represent and defend Centex in the Adkins Action.

6      47.    After being contacted by Mr. Lee, Centex, through counsel, sent written

7  correspondence to Travelers refusing to accept Mr. Lee as its counsel in the underlying matter. Said

8  refusal is in material breach of the subject insurance contract, and the implied covenant of good

9  faith and fair dealing. In addition, Centex has refused to seek contribution and/or a defense from

10 other insurance carriers. Such conduct is also a material breach of the subject insurance policy, and

11 the implied covenant of good faith and fair dealing.

12     48.    Centex, by and through its legal representative, Newmeyer & Dillion, also tendered

13 the Adkins Action to Travelers as an additional insured under the American Woodmark Policy.

14     49.    Subject to a full reservation of rights, Travelers accepted Centex's tender and agreed

15 to defend Centex in the Adkins Action as an additional insured under the American Woodmark

16 Policy. Travelers has asserted its right to retain counsel of its choosing and advised Centex that it

17 was appointing Mr. David Lee, Esq. of the law firm of Lee, Hernandez, Landrum, Garofalo & Blake

18 to represent and defend Centex in the Adkins Action.

19     50.    To date, Centex has refused to accept counsel appointed by Travelers to defend it in

20 the Adkins Action. Said refusal is in material breach of the subject insurance policy, and the implied

21 covenant of good faith and fair dealing. In addition, Centex has refused to seek contribution and/or

22 a defense from other insurance carriers. Such conduct is also a material breach of the subject

23 insurance policy, and the implied covenant of good faith and fair dealing.

24     **E.    The Conner Action**

25     51.    The homeowners of approximately 50 single family homes in the Desert Vista,

26 Loreto, and Vista Bella at the Heberwood Estates located in Heber, California, filed the lawsuit

27 entitled, *Conner et al. v. Centex Homes, et al.*, Imperial County Superior Court Case No. ECU06075

28 alleging a variety of construction defects.

**FIRST AMENDED COMPLAINT**

52.     Centex, by and through its legal representative, Newmeyer & Dillion, tendered the Conner Action to St. Paul as an additional insured under the Executive Landscape Policy.

53.     Subject to a full reservation of rights, St. Paul accepted Centex's tender and agreed to defend Centex in the Conner Action as an additional insured under the Executive Landscape Policy. Thereafter, St. Paul retained Mr. David Lee, Esq. of the law firm of Lee, Hernandez, Landrum, Garofalo & Blake to represent and defend Centex in the Conner Action.

54.     After being contacted by Mr. Lee, Centex, through counsel, sent written correspondence to St. Paul refusing to accept Mr. Lee as its counsel in the underlying matter. Said refusal is in material breach of the subject insurance contract, and the implied covenant of good faith and fair dealing. In addition, Centex has refused to seek contribution and/or a defense from other insurance carriers. Such conduct is also a material breach of the subject insurance policy, and the implied covenant of good faith and fair dealing.

55.     Centex, by and through its legal representative Newmeyer & Dillion, also tendered the Conner Action to Fidelity/Travelers as an additional insured under the West Coast Countertops Policies. Fidelity denied Centex's tender based upon the fact that the work was not completed until after 4/12/06 and therefore the subject homes could not have suffered any "property damage" during the policies effective from 4/12/02 to 4/12/06. Travelers denied Centex's tender pursuant to the policies effective 4/12/06 to 4/12/08, among other reasons, based upon the fact that the Conner Action does not involve any allegations of damages arising from West Coast Countertop's ongoing operations. Fidelity/Travelers is informed and believes that Centex disputes this denial.

**F.      The Kent Action**

56.     On or about September 10, 2007, the litigation entitled, *Kent, et al. v. Centex Homes, et al.*, Sacramento County Superior Court Case No. 07AS04107 (the "Kent Action") was filed, alleging a variety of construction defects at issue in the housing development known as Empire Ranch Village located in the city of Folsom, California.

57.     Centex, by and through its legal representative, Newmeyer & Dillion, tendered the Kent Action to Travelers as an additional insured under the Foremost Policy.

58.     Subject to a full reservation of rights, Travelers accepted Centex's tender and agreed

13

**FIRST AMENDED COMPLAINT**

to defend Centex in the Kent Action as an additional insured under the Foremost Policy.

59.     After accepting Centex's tender in the Kent Action, Travelers began receiving bills from RGL Forensics ("RGL"), the third-party accounting firm engaged on behalf of Centex to assist in the administration of all costs of attorneys, experts and consultants in the Kent Action, which allocated to Travelers anywhere from a 20% to a 100% share, depending upon the number of other carriers purportedly participating at the time.  In addition, on various occasions Centex purported to provide Travelers with the identity of all of the other carriers that were participating in the defense and the total number of shares that were participating.

60.     Unbeknownst to Travelers, the information being provided by Centex was not true and the bills received from RGL did not reflect the true allocations that had been determined by Centex.  In reality, Centex had struck various "side deals" with another carrier, Zurich American Insurance Company ("Zurich"), whereby Zurich was given a lower allocation per share.  As part of the side deal, Zurich was participating on behalf of five separate subcontractors, however Centex told Travelers and the other carriers that Zurich was only participating on behalf of two subcontractors.   Thus, while Travelers was being billed a 20% allocation for its single subcontractor, Zurich was only being billed a 12.5% allocation for each of its five subcontractors.

61.     Based upon the fact that carriers were actually participating on behalf of eight subcontractors (rather than the five that Centex revealed to Travelers), the appropriate equal shares allocation should have been 12.5% per share.  Travelers, however, paid in excess of 12.5% of the total fees and costs incurred by Centex.

62.     Moreover, Foremost was dismissed from the Kent Action without contributing towards any settlement amount.  Therefore, under a defense follows indemnity allocation, Travelers should have contributed nothing towards Centex's defense fees and costs.

63.     As a result of the side deals, Centex actually billed out and received greater than 100% of the total defense fees and costs actually incurred.

## FIRST CAUSE OF ACTION FOR DECLARATORY RELIEF

**(By Plaintiffs Travelers, Fidelity, TRV Indemnity, and St. Paul Against Defendant Centex and Does 1 through 10)**

**Count One**

64.    Plaintiffs hereby re-allege and incorporate by reference each allegations contained in all preceding paragraphs of this Complaint as though fully set forth herein.

65.    An actual, present, and justiciable controversy has arisen and now exists between Travelers, on the one hand, and the Defendant Centex on the other, concerning Travelers' rights, duties, and obligations under the American Woodmark Policy.

66.    Specifically, Travelers contends  and is informed and believes that Centex disputes the following:

- Travelers contends that under the American Woodmark Policy, it has the right to control the defense of Defendant Centex in the Garvey Action and in the Adkins Action and therefore, has the right to appoint counsel of its own choosing in each action.

- Travelers also contends that Defendant Centex is not entitled to the appointment of independent counsel under California Civil Code § 2860.

- Travelers also contends that Defendant Centex's refusal to acknowledge that Travelers has the right to control the defense and select counsel and its insistence that Travelers continue to pay the fees and costs of Newmeyer & Dillion is a breach of its duty to cooperate under the American Woodmark Policy.

- In addition, Travelers contends that Centex's refusal to seek a defense from and/or seek recovery of defense fees and costs incurred in defense of the Garvey Action and the Adkins Action from other carriers is a breach of its duty to cooperate under the American Woodmark Policy.

- In addition, Travelers contends that pursuant to the no-voluntary payments clause in the American Woodmark Policy, Travelers is not obligated to pay any fees and costs incurred by Newmeyer & Dillion subsequent to the date that Travelers appointed counsel of its choosing in the Garvey Action and in the Adkins Action.

67.    Travelers has no complete and adequate remedy at law to resolve these disputes. Travelers seeks a judicial resolution of the controversy and a declaration of the following: (1) that

**FIRST AMENDED COMPLAINT**

Travelers has the right to control the defense of Centex in the Garvey Action and in the Adkins Action; (2) that Defendant Centex is not entitled to the appointment of independent counsel under California Civil Code § 2860; (3) that Defendant Centex's refusal to acknowledge that Travelers has the right to control the defense and select counsel and its insistence that Travelers continue to pay the fees and costs of Newmeyer & Dillion is a breach of its duty to cooperate under the American Woodmark Policy; (4) that  Centex's refusal to seek a defense from other carriers and/or refusal to seek recovery of defense fees and costs incurred in defense of the Garvey Action and the Adkins Action from other carriers is a breach of its duty to cooperate under the American Woodmark Policy, and (5) that pursuant to the no-voluntary payments clause in the American Woodmark Policy, Travelers is not obligated to pay any fees and costs incurred by Newmeyer & Dillion subsequent to the date that Travelers appointed counsel of its choosing in the Garvey Action and in the Adkins Action.

68.    By reason of the foregoing, a declaratory judgment is both proper and necessary, so that the respective rights, duties, and obligations as between Travelers and Centex may be determined under the provisions of the applicable policies of insurance.

**Count Two**

69.    Plaintiffs hereby re-allege and incorporate by reference each allegation contained in all preceding paragraphs of this Complaint as though fully set forth herein.

70.    An actual, present, and justiciable controversy has arisen and now exists between Fidelity, on the one hand, and Centex on the other, concerning Fidelity's rights, duties, and obligations under the West Coast Countertops Policy, effective 4/12/04 to 4/12/05.

71.    Specifically, Fidelity contends  and is informed and believes that Centex disputes the following:

- Fidelity contends that under the West Coast Countertops Policy, effective 4/12/04 to 4/12/05, it has the right to control the defense of Defendant Centex in the Acupan Action and therefore, has the right to appoint counsel of its own choosing.

- Fidelity also contends that Defendant Centex is not entitled to the appointment of

**FIRST AMENDED COMPLAINT**

1    independent counsel under California Civil Code § 2860.

2    • Fidelity also contends that Defendant Centex's refusal to acknowledge that
3    Fidelity has the right to control the defense and select counsel and its insistence
4    that Fidelity continue to pay the fees and costs of Newmeyer & Dillion is a
5    breach of its duty to cooperate under the West Coast Countertops Policy,
6    effective 4/12/04 to 4/12/05.

7    • In addition, Fidelity contends that Centex's refusal to seek a defense from and/or
8    seek recovery of defense fees and costs incurred in defense of the Acupan Action
9    from other carriers is a breach of its duty to cooperate under the West Coast
10   Countertops Policy, effective 4/12/04 to 4/12/05.

11   • In addition, Fidelity contends that pursuant to the no-voluntary payments clause
12   in the West Coast Countertops Policy, effective 4/12/04 to 4/12/05, Fidelity is not
13   obligated to pay any fees and costs incurred by Newmeyer & Dillion subsequent
14   to the date that Fidelity appointed counsel of its choosing in the Acupan Action.

15   72.   Fidelity has no complete and adequate remedy at law to resolve these disputes.

16   Fidelity seeks a judicial resolution of the controversy and a declaration of the following: (1) that

17   Fidelity has the right to control the defense of Centex in the Acupan Action; (2) that Defendant

18   Centex is not entitled to the appointment of independent counsel under California Civil Code §

19   2860; (3) that Defendant Centex's refusal to acknowledge that Fidelity has the right to control the

20   defense and select counsel and its insistence that Fidelity continue to pay the fees and costs of

21   Newmeyer & Dillion is a breach of its duty to cooperate under the West Coast Countertops Policy;

22   (4) that  Centex's refusal to seek a defense from other carriers and/or refusal to seek recovery of

23   defense fees and costs incurred in defense of the Acupan Action from other carriers is a breach of its

24   duty to cooperate under the West Coast Countertops Policy, and (5) that pursuant to the no-

25   voluntary payments clause in the West Coast Countertops Policy, Fidelity is not obligated to pay

26   any fees and costs incurred by Newmeyer & Dillion subsequent to the date that Fidelity appointed

27   counsel of its choosing in the Acupan Action.

28   73.   By reason of the foregoing, a declaratory judgment is both proper and necessary, so

**FIRST AMENDED COMPLAINT**

that the respective rights, duties, and obligations as between Travelers and Defendant may be determined under the provisions of the applicable policy of insurance.

**Count Three**

74. Plaintiffs hereby re-allege and incorporate by reference each allegations contained in all preceding paragraphs of this Complaint as though fully set forth herein.

75. An actual, present, and justiciable controversy has arisen and now exists between Travelers, on the one hand, and the Defendant Centex on the other, concerning Travelers' rights, duties, and obligations under the Foremost Policy.

76. Specifically, Travelers contends and is informed and believes that Centex disputes the following:

- Travelers contends that under the Foremost Policy, it has the right to control the defense of Defendant Centex in the Adkins Action and therefore, has the right to appoint counsel of its own choosing.

- Travelers also contends that Defendant Centex is not entitled to the appointment of independent counsel under California Civil Code § 2860.

- Travelers also contends that Defendant Centex's refusal to accept Travelers appointment of counsel in the Adkins Action is a breach of its duty to cooperate under the Foremost Policy.

- In addition, Travelers contends that Centex's refusal to seek a defense from and/or seek recovery of defense fees and costs incurred in defense of the Adkins Action from other carriers is a breach of its duty to cooperate under the Foremost Policy.

- In addition, Travelers contends that pursuant to the no-voluntary payments clause in the Foremost Policy, Travelers is not obligated to pay any fees and costs incurred by Newmeyer & Dillion subsequent to the date that Travelers appointed counsel of its choosing in the Adkins Action.

77. Travelers has no complete and adequate remedy at law to resolve these disputes. Travelers seeks a judicial resolution of the controversy and a declaration of the following: (1) that

**FIRST AMENDED COMPLAINT**

Travelers has the right to control the defense of Centex in the Adkins Action; (2) that Defendant Centex is not entitled to the appointment of independent counsel under California Civil Code § 2860; (3) that Defendant Centex's refusal to accept Travelers appointment of counsel in the Adkins Action is a breach of its duty to cooperate under the Foremost Policy; (4) that Centex's refusal to seek a defense from other carriers and/or refusal to seek recovery of defense fees and costs incurred in defense of the Adkins Action from other carriers is a breach of its duty to cooperate under the Foremost Policy, and (5) that pursuant to the no-voluntary payments clause in the Foremost Policy, Travelers is not obligated to pay any fees and costs incurred by Newmeyer & Dillion subsequent to the date that Travelers appointed counsel of its choosing in the Adkins Action.

78.     By reason of the foregoing, a declaratory judgment is both proper and necessary, so that the respective rights, duties, and obligations as between Travelers and Centex may be determined under the provisions of the applicable policies of insurance.

**Count Four**

79.     Plaintiffs hereby re-allege and incorporate by reference each allegations contained in all preceding paragraphs of this Complaint as though fully set forth herein.

80.     An actual, present, and justiciable controversy has arisen and now exists between TRV Indemnity, on the one hand, and the Defendant Centex on the other, concerning TRV Indemnity's rights, duties, and obligations under the Fresno Policy.

81.     Specifically, TRV Indemnity contends and is informed and believes that Centex disputes the following:

- TRV Indemnity contends that under the Fresno Policy, it has the right to control the defense of Defendant Centex in the Acupan Action and therefore, has the right to appoint counsel of its own choosing.

- TRV Indemnity also contends that Defendant Centex is not entitled to the appointment of independent counsel under California Civil Code § 2860.

- TRV Indemnity also contends that Defendant Centex's refusal to acknowledge that TRV Indemnity has the right to control the defense and select counsel and its insistence that TRV Indemnity continue to pay the fees and costs of Newmeyer &

**FIRST AMENDED COMPLAINT**

Dillion is a breach of its duty to cooperate under the Fresno Policy.

- In addition, TRV Indemnity contends that Centex's refusal to seek a defense from and/or seek recovery of defense fees and costs incurred in defense of the Acupan Action from other carriers is a breach of its duty to cooperate under the Fresno Policy.

- In addition, TRV Indemnity contends that pursuant to the no-voluntary payments clause in the Fresno Policy, TRV Indemnity is not obligated to pay any fees and costs incurred by Newmeyer & Dillion subsequent to the date that TRV Indemnity appointed counsel of its choosing in the Acupan Action.

82. TRV Indemnity has no complete and adequate remedy at law to resolve these disputes. TRV Indemnity seeks a judicial resolution of the controversy and a declaration of the following: (1) that TRV Indemnity has the right to control the defense of Centex in the Acupan Action; (2) that Defendant Centex is not entitled to the appointment of independent counsel under California Civil Code § 2860; (3) that Defendant Centex's refusal to acknowledge that TRV Indemnity has the right to control the defense and select counsel and its insistence that TRV Indemnity continue to pay the fees and costs of Newmeyer & Dillion is a breach of its duty to cooperate under the Fresno Policy; (4) that Centex's refusal to seek a defense from other carriers and/or refusal to seek recovery of defense fees and costs incurred in defense of the Acupan Action from other carriers is a breach of its duty to cooperate under the Fresno Policy, and (5) that pursuant to the no-voluntary payments clause in the Fresno Policy, TRV Indemnity is not obligated to pay any fees and costs incurred by Newmeyer & Dillion subsequent to the date that TRV Indemnity appointed counsel of its choosing in the Acupan Action.

83. By reason of the foregoing, a declaratory judgment is both proper and necessary, so that the respective rights, duties, and obligations as between TRV Indemnity and Centex may be determined under the provisions of the applicable policies of insurance.

**Count Five**

84. Plaintiffs hereby re-allege and incorporate by reference each allegations contained in all preceding paragraphs of this Complaint as though fully set forth herein.

**FIRST AMENDED COMPLAINT**

85. An actual, present, and justiciable controversy has arisen and now exists between St. Paul, on the one hand, and the Defendant Centex on the other, concerning St. Paul's rights, duties, and obligations under the Executive Landscape Policy.

86. Specifically, St. Paul contends and is informed and believes that Centex disputes the following:

- St. Paul contends that under the Executive Landscape Policy, it has the right to control the defense of Defendant Centex in the Conner Action and therefore, has the right to appoint counsel of its own choosing.

- St. Paul also contends that Defendant Centex is not entitled to the appointment of independent counsel under California Civil Code § 2860.

- St. Paul also contends that Defendant Centex's refusal to accept St. Paul's appointment of counsel in the Conner Action is a breach of its duty to cooperate under the Executive Landscape Policy.

- In addition, St. Paul contends that Centex's refusal to seek a defense from and/or seek recovery of defense fees and costs incurred in defense of the Conner Action from other carriers is a breach of its duty to cooperate under the Executive Landscape Policy.

- In addition, St. Paul contends that pursuant to the no-voluntary payments clause in the Executive Landscape Policy, St. Paul is not obligated to pay any fees and costs incurred by Newmeyer & Dillion subsequent to the date that St. Paul appointed counsel of its choosing in the Conner Action.

87. St. Paul has no complete and adequate remedy at law to resolve these disputes. St. Paul seeks a judicial resolution of the controversy and a declaration of the following: (1) that St. Paul has the right to control the defense of Centex in the Conner Action; (2) that Defendant Centex is not entitled to the appointment of independent counsel under California Civil Code § 2860; (3) that Defendant Centex's refusal to accept St. Paul's appointment of counsel in the Conner Action is a breach of its duty to cooperate under the Executive Landscape Policy; (4) that Centex's refusal to seek a defense from other carriers and/or refusal to seek recovery of defense fees and costs incurred

**FIRST AMENDED COMPLAINT**

1    in defense of the Conner Action from other carriers is a breach of its duty to cooperate under the

2    Executive Landscape Policy, and (5) that pursuant to the no-voluntary payments clause in the

3    Executive Landscape Policy, St. Paul is not obligated to pay any fees and costs incurred by

4    Newmeyer & Dillion subsequent to the date that St. Paul appointed counsel of its choosing in the

5    Conner Action.

6          88.    By reason of the foregoing, a declaratory judgment is both proper and necessary, so

7    that the respective rights, duties, and obligations as between St. Paul and Centex may be determined

8    under the provisions of the applicable policies of insurance.

9    **Count Six**

10         89.    Plaintiffs hereby re-allege and incorporate by reference each allegations contained in

11   all preceding paragraphs of this Complaint as though fully set forth herein.

12         90.    An actual, present, and justiciable controversy has arisen and now exists between

13   Travelers, on the one hand, and the Defendant Centex on the other, concerning Travelers' rights,

14   duties, and obligations under the Wayne-Dalton Policies.

15         91.    Specifically, Travelers contends and is informed and believes that Centex disputes

16   the following:

17               •   Travelers contends that there are no allegations of resulting damages arising from

18                   the work of Wayne-Dalton at issue in the Garvey Action and therefore no

19                   potential for coverage for Centex;

20               •   Travelers contends that it has no duty to defend or indemnify Centex in the

21                   Garvey Action under any of the Wayne-Dalton Policies.

22         92.    Travelers has no complete and adequate remedy at law to resolve these disputes.

23   Travelers seeks a judicial resolution of the controversy and a declaration of the following: (1) that

24   there are no allegations of resulting damages arising from the work of Wayne-Dalton at issue in the

25   Garvey Action and therefore no potential for coverage for Centex; and (2) that Travelers has no duty

26   to defend or indemnify Centex in the Garvey Action under any of the Wayne-Dalton Policies.

27         93.    By reason of the foregoing, a declaratory judgment is both proper and necessary, so

28   that the respective rights, duties, and obligations as between Travelers and Centex may be

**FIRST AMENDED COMPLAINT**

determined under the provisions of the applicable policies of insurance.

**Count Seven**

94.     Plaintiffs hereby re-allege and incorporate by reference each allegations contained in all preceding paragraphs of this Complaint as though fully set forth herein.

95.     An actual, present, and justiciable controversy has arisen and now exists between St. Paul, on the one hand, and the Defendant Centex on the other, concerning St. Paul's rights, duties, and obligations under the Penney Lawn Policies.

96.     Specifically, St. Paul contends and is informed and believes that Centex disputes the following:

- St. Paul contends that there are no allegations of resulting damages arising from the ongoing operations of Penney Lawn at issue in the Acupan Action and therefore no potential for coverage for Centex;

- St. Paul contends that it has no duty to defend or indemnify Centex in the Acupan Action under any of the Penney Lawn Policies.

97.     St. Paul has no complete and adequate remedy at law to resolve these disputes.  St. Paul seeks a judicial resolution of the controversy and a declaration of the following: (1) that there are no allegations of resulting damages arising from the ongoing operations of Penney Lawn at issue in the Acupan Action and therefore no potential for coverage for Centex; and (2) that St. Paul has no duty to defend or indemnify Centex in the Acupan Action under any of the Penney Lawn Policies.

98.     By reason of the foregoing, a declaratory judgment is both proper and necessary, so that the respective rights, duties, and obligations as between St. Paul and Centex may be determined under the provisions of the applicable policies of insurance.

**Count Eight**

99.     Plaintiffs hereby re-allege and incorporate by reference each allegations contained in all preceding paragraphs of this Complaint as though fully set forth herein.

100.     An actual, present, and justiciable controversy has arisen and now exists between Fidelity/Travelers, on the one hand, and the Defendant Centex on the other, concerning Travelers' rights, duties, and obligations under the West Coast Countertops Policies.

**FIRST AMENDED COMPLAINT**

101.     Specifically, Fidelity/Travelers contends and is informed and believes that Centex disputes the following:

- Fidelity/Travelers contends that there are no allegations of resulting damages arising from the ongoing operations of West Coast Countertops at issue in the Conner Action and therefore no potential for coverage for Centex;

- Fidelity/Travelers contends that it has no duty to defend or indemnify Centex in the Conner Action under any of the West Coast Countertops Policies.

102.     Fidelity/Travelers has no complete and adequate remedy at law to resolve these disputes. Fidelity/Travelers seeks a judicial resolution of the controversy and a declaration of the following: (1) that there are no allegations of resulting damages arising from the ongoing operations of West Coast Countertops at issue in the Conner Action and therefore no potential for coverage for Centex; and (2) that Fidelity/Travelers has no duty to defend or indemnify Centex in the Conner Action under any of the West Coast Countertops Policies.

103.     By reason of the foregoing, a declaratory judgment is both proper and necessary, so that the respective rights, duties, and obligations as between Fidelity/Travelers and Centex may be determined under the provisions of the applicable policies of insurance.

## SECOND CAUSE OF ACTION FOR BREACH OF CONTRACT

**(By Plaintiffs Travelers, Fidelity, TRV Indemnity, and St. Paul Against Defendant Centex and Does 1 through 10)**

104.     Plaintiffs hereby re-allege and incorporate by reference each allegation contained in all preceding paragraphs of this Complaint as though fully set forth herein.

105.     Under the terms of the American Woodmark, West Coast Countertops, Foremost, Fresno, and Executive Landscape Policies the insured and any additional insureds, including Defendant Centex, are mandated to cooperate with Plaintiffs with regard to all aspects of coverage, including any defense afforded under the policies.

106.     Plaintiffs have performed all conditions, covenants, and promises required on their part to be performed in accordance with the terms and conditions of the American Woodmark, West Coast Countertops, Foremost, Fresno, and Executive Landscape Policies.

**FIRST AMENDED COMPLAINT**

107.    Defendant Centex has breached the referenced insurance policies by breaching its duty to cooperate pursuant to the terms of the policies by refusing to acknowledge that Plaintiffs have the right to control the defense and select counsel in the referenced actions and by insisting that Plaintiffs continue to pay the fees and costs of Newmeyer & Dillion, thereby impeding Plaintiffs ability to provide Centex with a defense.  In addition, Centex has breached the duty to cooperate by refusing to seek a defense from other insurance carriers and/or refusing to seek recovery of defense fees and costs incurred in defense of the Garvey, Acupan, Adkins, and Conner Actions from other insurance carriers.

108.    As a result of Centex's breach of the insurance policies and breach of the duty to cooperate, Plaintiffs have been damaged in a sum according to proof at trial.

## THIRD CAUSE OF ACTION FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### (By Plaintiffs Travelers, Fidelity, TRV Indemnity, and St. Paul Against Defendant Centex and Does 1 through 10)

109.    Plaintiffs hereby re-allege and incorporate by reference each allegation contained in all preceding paragraphs of this Complaint as though fully set forth herein.

110.    There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement.

111.    By engaging in the conduct more fully described above and in breaching the duty to cooperate by its continuous refusal to acknowledge Plaintiffs' right to select defense counsel thereby impeding Plaintiffs ability to provide a defense, Centex has acted in a manner that is unreasonable and without proper cause, aggravated, malicious, outrageous and fraudulent, without good faith and for the purpose of depriving Plaintiffs of their rights and benefits, and Centex has therefore breached the implied covenant of good faith and fair dealing.

112.    As the result of Centex's conduct, Plaintiffs have been damaged in a sum according to proof at trial.

//

**FIRST AMENDED COMPLAINT**

## FOURTH CLAIM FOR RELIEF FOR REIMBURSEMENT

### (By Plaintiff Travelers Against Defendant Centex and Does 1 through 10)

113.    Plaintiffs hereby re-allege and incorporate by reference each allegation contained in all preceding paragraphs of this Complaint as though fully set forth herein.

114.    Travelers has paid certain defense fees and costs incurred by Centex in connection with the defense of the Kent Action.  Travelers did not pay these sums as a volunteer.  When Travelers agreed to participate in the defense of Centex, it specifically reserved its rights to seek reimbursement from Centex of any defense related payments that Travelers may make that are not potentially covered under the Foremost Policy.

115.    The Foremost Policy requires that Travelers defend and indemnify only those claims that are covered under the policy.  To the extent that Travelers pays or has paid fees, costs or other sums incurred by or on behalf of Centex in connection with its defense in the Kent Action, which fees and costs, are not potentially covered under the Foremost Policy, Travelers is entitled to reimbursement of such payments, plus interest.

116.    As more fully alleged above, Centex entered into secret side deals that resulted in Centex billing out greater than 100% of the total fees and costs incurred in its defense and which further resulted in Travelers paying more than it should have paid using an actual equal shares allocation.  Moreover, Travelers' named insured, Foremost, was dismissed from the Kent Action without contributing towards any settlement amount.  Therefore, under a defense follows indemnity allocation, Travelers should have contributed nothing towards Centex's defense fees and costs.  Under either a defense follows indemnity or an equal shares allocation, Travelers has paid in excess of its appropriate share of Centex's defense fees and costs.  Travelers, therefore, is entitled to reimbursement of those amounts it paid in excess of its appropriate allocation of Centex's defense fees and costs.

117.    The precise amount of reimbursement that is appropriate will be subject to proof at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

**FIRST AMENDED COMPLAINT**

1.       For a declaration of this Court of the following: (1) that Travelers has the right to control the defense of Centex in the Garvey Action and in the Adkins Action; (2) that Defendant Centex is not entitled to the appointment of independent counsel under California Civil Code § 2860; (3) that Defendant Centex's refusal to acknowledge that Travelers has the right to control the defense and select counsel and its insistence that Travelers continue to pay the fees and costs of Newmeyer & Dillion is a breach of its duty to cooperate under the American Woodmark Policy; (4) that Centex's refusal to seek a defense from other carriers and/or refusal to seek recovery of defense fees and costs incurred in defense of the Garvey Action and in the Adkins Action from other carriers is a breach of its duty to cooperate under the American Woodmark Policy, and (5) that pursuant to the no-voluntary payments clause in the American Woodmark Policy, Travelers is not obligated to pay any fees and costs incurred by Newmeyer & Dillion subsequent to the date that Travelers appointed counsel of its choosing in the Garvey Action and in the Adkins Action.

2.       For a declaration of this Court of the following: (1) that Fidelity has the right to control the defense of Centex in the Acupan Action; (2) that Defendant Centex is not entitled to the appointment of independent counsel under California Civil Code § 2860; (3) that Defendant Centex's refusal to acknowledge that Fidelity has the right to control the defense and select counsel and its insistence that Fidelity continue to pay the fees and costs of Newmeyer & Dillion is a breach of its duty to cooperate under the West Coast Countertops Policy; (4) that Centex's refusal to seek a defense from other carriers and/or refusal to seek recovery of defense fees and costs incurred in defense of the Acupan Action from other carriers is a breach of its duty to cooperate under the West Coast Countertops Policy, and (5) that pursuant to the no-voluntary payments clause in the West Coast Countertops Policy, Fidelity is not obligated to pay any fees and costs incurred by Newmeyer & Dillion subsequent to the date that Fidelity appointed counsel of its choosing in the Acupan Action.

3.       For a declaration of this Court of the following: (1) that Travelers has the right to control the defense of Centex in the Adkins Action; (2) that Defendant Centex is not entitled to the appointment of independent counsel under California Civil Code § 2860; (3) that Defendant Centex's refusal to accept Travelers appointment of counsel in the Adkins Action is a breach of its

**FIRST AMENDED COMPLAINT**

duty to cooperate under the Foremost Policy; (4) that Centex's refusal to seek a defense from other carriers and/or refusal to seek recovery of defense fees and costs incurred in defense of the Adkins Action from other carriers is a breach of its duty to cooperate under the Foremost Policy, and (5) that pursuant to the no-voluntary payments clause in the Foremost Policy, Travelers is not obligated to pay any fees and costs incurred by Newmeyer & Dillion subsequent to the date that Travelers appointed counsel of its choosing in the Adkins Action.

4.      For a declaration of this Court of the following: (1) that TRV Indemnity has the right to control the defense of Centex in the Acupan Action; (2) that Defendant Centex is not entitled to the appointment of independent counsel under California Civil Code § 2860; (3) that Defendant Centex's refusal to acknowledge that TRV Indemnity has the right to control the defense and select counsel and its insistence that TRV Indemnity continue to pay the fees and costs of Newmeyer & Dillion is a breach of its duty to cooperate under the Fresno Policy; (4) that Centex's refusal to seek a defense from other carriers and/or refusal to seek recovery of defense fees and costs incurred in defense of the Acupan Action from other carriers is a breach of its duty to cooperate under the Fresno Policy, and (5) that pursuant to the no-voluntary payments clause in the Fresno Policy, TRV Indemnity is not obligated to pay any fees and costs incurred by Newmeyer & Dillion subsequent to the date that TRV Indemnity appointed counsel of its choosing in the Acupan Action.

5.      For a declaration of this Court of the following: (1) that St. Paul has the right to control the defense of Centex in the Conner Action; (2) that Defendant Centex is not entitled to the appointment of independent counsel under California Civil Code § 2860; (3) that Defendant Centex's refusal to accept St. Paul's appointment of counsel in the Conner Action is a breach of its duty to cooperate under the Executive Landscape Policy; (4) that Centex's refusal to seek a defense from other carriers and/or refusal to seek recovery of defense fees and costs incurred in defense of the Conner Action from other carriers is a breach of its duty to cooperate under the Executive Landscape Policy, and (5) that pursuant to the no-voluntary payments clause in the Executive Landscape Policy, St. Paul is not obligated to pay any fees and costs incurred by Newmeyer & Dillion subsequent to the date that St. Paul appointed counsel of its choosing in the Conner Action.

6.      For a declaration of this Court of the following: (1) that there are no allegations of

**FIRST AMENDED COMPLAINT**

resulting damages arising from the work of Wayne-Dalton at issue in the Garvey Action and therefore no potential for coverage for Centex; and (2) that Travelers has no duty to defend or indemnify Centex in the Garvey Action under any of the Wayne-Dalton Policies.

7.      For a declaration of this Court of the following: (1) that there are no allegations of resulting damages arising from the ongoing operations of Penney Lawn at issue in the Acupan Action and therefore no potential for coverage for Centex; and (2) that St. Paul has no duty to defend or indemnify Centex in the Acupan Action under any of the Penney Lawn Policies.

8.      For a declaration of this Court of the following: (1) that there are no allegations of resulting damages arising from the ongoing operations of West Coast Countertops at issue in the Conner Action and therefore no potential for coverage for Centex; and (2) that Fidelity/Travelers has no duty to defend or indemnify Centex in the Conner Action under any of the West Coast Countertops Policies.

9.      For reimbursement by Centex to Travelers for amounts Travelers has paid for the defense and indemnification in connection with the Kent Action in an amount to be proven at trial;

10.      For general damages in an amount to be proven at trial;

11.      For attorneys' fees and costs;

12.      For prejudgment interest;

13.      For costs of suit herein; and

14.      For such other and further relief as this Court deems just and proper.


Dated:  August 25, 2011                    **BOHM, MATSEN, KEGEL & AGUILERA, LLP**


                            _____*/s A. Eric Aguilera*_____
                            A.  Eric Aguilera, Esq.
                            Raymond E. Brown, Esq.
                            Attorneys for Plaintiff TRAVELERS
                            PROPERTY CASUALTY COMPANY OF
                            AMERICA and FIDELITY AND GUARANTY
                            INSURANCE COMPANY

**FIRST AMENDED COMPLAINT**