IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, a Connecticut corporation; FIDELITY & GUARANTY INSURANCE COMPANY, an Iowa corporation; THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT, a Connecticut corporation, ST. PAUL MERCURY INSURANCE COMPANY, a Minnesota corporation,<br><br>        Plaintiffs,<br><br>   v.<br><br>CENTEX HOMES, a Nevada partnership; and DOES 1 through 10 inclusive,<br><br>        Defendant. | Case No. 11-3638-SC<br><br>ORDER GRANTING DEFENDANT'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT AND PARTIAL JUDGMENT ON THE PLEADINGS |

## I. INTRODUCTION

This case concerns who has the right to control the legal defense of an insured -- the insurer or the insured? Defendant Centex Homes ("Centex"), a homebuilder, was sued by several homeowners for alleged construction defects in two separate actions: the Garvey action and the Adkins action.[1] Centex tendered

---

[1] The two underlying construction defect actions are titled Bill Garvey v. Centex Homes, Inc., Sacramento Superior Court Case No. 34-2010-00073233 (the "Garvey action"); and Suzanne Adkins v. Centex Homes, Sacramento County Superior Court Case No. 2010-0068675 (the "Adkins action").

its defense of these actions to its insurer, Plaintiff Travelers Property Casualty Company of America ("Travelers"). Travelers initially denied the tenders. Left on its own, Centex hired the law firm of Newmeyer & Dillon, LLP ("Newmeyer") to defend the Adkins and Garvey actions. Several months later, Travelers indicated that it would provide a defense to Centex and insisted that different counsel take over for Newmeyer. Centex refused to accept the appointment of new counsel. As a result, Travelers filed the instant action, alleging breach of contract and breach of the covenant of good faith and fair dealing (aka "bad faith") and seeking a declaration that it has the right to control the defense of Centex in the Garvey and Adkins actions. ECF No. 5 ("FAC"). Centex counterclaimed for breach of contract and bad faith and seeks a declaration that it has a right to control its own defense. ECF No. 11 ("Countercl.").

Centex now moves for partial summary judgment, arguing that Travelers waived its right to exercise control of Centex's defense in the Garvey and Adkins actions because it previously denied its duty to defend. ECF No. 21 ("MSJ"). Centex has also filed a Motion for Partial Judgment on the Pleadings, arguing that Travelers' bad faith claim and prayer for attorney's fees fail as a matter of law. ECF No. 39 ("MJP"). Both motions are fully briefed. ECF Nos. 40 ("MJP Opp'n"), 41 ("MSJ Opp'n"), 49 ("MJP Reply"); 50 ("MSJ Reply"). Having reviewed the papers, the Court finds the motions appropriate for decision without oral argument. As detailed below, the Court GRANTS both motions.

///

///

## II. BACKGROUND

Centex participated in the development of several residential communities in Sacramento, California, subcontracting the construction work to a number of different entities, including American Woodmark ("Woodmark") and Foremost Superior Marble ("Foremost"). Countercl. ¶¶ 10, 14. Woodmark and Foremost obtained commercial general liability insurance from Travelers (hereinafter, the "Woodmark Policy" and the "Foremost Policy") and named Centex as an "additional insured" under the policies. FAC ¶¶ 9, 17. Each policy provides that Travelers "will have the right and duty to defend the insured again any suit" seeking damages covered under the policies. Id. ¶¶ 13, 17. The policies also contain a "cooperation clause," which mandates that the insureds cooperate with Travelers with regard to all aspects of its coverage. Id. ¶ 9.

In 2010, homeowners at the Skyline, Sun River, and Town Square developments brought the Garvey action against Centex, alleging, among other things, that they suffered property damage because of Woodmark's defective work. FAC ¶ 30; ECF No. 10 ("Answer") ¶ 30. Centex tendered the defense and indemnification of the Garvey action to Travelers under the Woodmark policy on July 2, 2010. FAC ¶ 31; Answer ¶ 31. Travelers subsequently requested additional information concerning the lawsuit. Barrera Decl.[2] Exs. C-E. On February 16, 2011, Travelers concluded that the Garvey action was not covered under the Woodmark policy and "declined to participate

---

[2] Gary A. Barrera ("Barrera"), Ivo G. Daniele ("Daniele"), and Joseph A. Ferrentino ("Ferrentino"), Centex's attorneys, filed declarations in support of Centex's Motion for Summary Judgment, attaching exhibits. ECF Nos. 21-4 ("Barrera Decl."), 21-5, 21-6 ("Daniele Decl."), 21-3 ("Ferrentino Decl.").

3

in the defense and indemnity of Centex." Barrera Decl. Ex. F at 9. Travelers also indicated that it was willing to reconsider the denial and that its denial should not be construed as a waiver of any rights or defenses available to it under the policy. Id. A few days later, Centex filed suit against Travelers for its failure to defend the Garvey action, as well as the Adkins action which is discussed more fully below. Countercl. ¶ 54; ECF No. 17 ("Answer to Countercl.") ¶ 45. On April 18, 2011, Travelers reversed course, stating that it would "agree to participate in the defense of Centex," "subject to a reservation of rights." Barrera Decl. Ex. G. Among other things, Travelers reserved the right "to seek reimbursement from Centex for those uncovered fees, expenses, costs, and indemnity payments made on behalf of Centex which Travelers incurs in connection with any settlement, satisfaction of judgment, or in providing this defense." Id. Centex subsequently dismissed its then-pending lawsuit without prejudice. Ferrentino Decl. Ex. C.

 A similar course of events transpired in the Adkins action. In March 2010, homeowners at the Laguna Stonelake development filed the action against Centex, alleging that they suffered property damage because of Woodmark and Foremost's defective work. FAC ¶ 44; Answer ¶ 44. Centex tendered the Adkins action to Travelers under the Woodmark and Foremost policies on April 1, 2010. Daniele Decl. Exs. A, G. On September 14, 2010, Travelers informed Centex that it had "no defense or indemnity obligation" in the Adkins action under the Woodmark Policy and issued a "declination of coverage letter." Id. Ex. D. At the time, Travelers indicated that it was willing to reconsider the denial and it did not waive

any of its rights under the policy while investigating the matter. Id. Travelers also declined coverage under the Foremost policy on January 7, 2011. Id. Ex. K. Again, Travelers stated that it did not waive any of its rights under the policy. Id. Several months later, after Centex sued Travelers for coverage, Travelers agreed to provide a defense "subject to a full reservation of rights." Id. Ex. E, L. As in the Garvey action, Travelers specifically reserved the right "to seek reimbursement of any defense-related payments it may issue on behalf of Centex in connection with the referenced matter, with respect to claims not potentially covered by the policies." Id. Ex. E. Travelers also continued to dispute that it had an obligation to provide coverage under both policies. Id.

After Travelers initially denied coverage in the Garvey and Adkins actions, Centex continued to use its own chosen counsel, Newmeyer, to defend the actions. When Travelers later agreed to provide Centex with a defense, Travelers insisted that it had the right to control the defense and retained another law firm to represent Centex. Countercl. ¶ 90; Answer to Countercl. ¶ 90. By that time, Newmeyer had already filed answers and cross complaints, and retained experts in both the Garvey and Adkins actions. Barrera Decl. ¶ 11; Daniele Decl. ¶ 16. Additionally, Centex had incurred over $135,000 in fees and costs in the Adkins action and over $100,000 in fees and costs in the Garvey action.[3] Based on these facts, Centex claims "[i]t would have been reckless and

---

[3] After agreeing to provide a defense for Centex, Travelers paid Newmeyer $92,422.29 for its services in the Adkins action and $11,701.12 for its services in the Garvey action. ECF No. 42 ("Carrillo Decl.") ¶¶ 6-7.

5

wasteful to change horses mid-stream." MSJ at 7. Travelers disagrees, pointing to the fact that there is no trial date pending in either case. MSJ Opp'n at 7 (citing RJN Ex. C). In any event, Centex has refused to allow Travelers to appoint new counsel.

Travelers states that it does not want Newmeyer to conduct the defense of Centex because Newmeyer has engaged in dubious billing practices the past. Id. at 7-13. Travelers specifically points to Newmeyer's conduct in two other actions tendered by Centex to Travelers in the last several years. Id. Travelers asserts that, in these actions, Newmeyer: (1) reached side-deals with other insurers so that it could bill in excess of 100 percent of fees incurred; (2) billed for non-covered claims; and (3) reached a deal with Centex whereby Newmeyer would bill at a higher hourly rate when Centex's attorney's fees were covered by Travelers. Id.

On July 25, 2011, Travelers, along with a number of other insurance companies (collectively, "Plaintiffs"), filed the instant action against Centex. ECF No. 1. One month later Plaintiffs filed a First Amended Complaint ("FAC"). The FAC concerns Centex's claims for indemnity in a number of construction defect cases, including the Garvey and Adkins actions, under a number of insurance policies, including the Foremost and Woodmark policies. FAC ¶¶ 9-63. With respect to the Adkins and Garvey actions, Plaintiffs allege that Centex's refusal to accept counsel appointed by Travelers constitutes a material breach of the insurance polices' cooperation clauses and the implied covenant of good faith and fair dealing. See FAC ¶¶ 34, 50. Among other things, Travelers prays for attorney's fees and a declaration that it has the right to control Centex's defense in these actions. FAC at 27.

6

1 Centex subsequently filed a Counterclaim against Plaintiffs for
2 breach of contract, bad faith, and declaratory relief.

### III. LEGAL STANDARD

#### A. Summary Judgment

Entry of summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment should be granted if the evidence would require a directed verdict for the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986). Thus, "Rule 56[] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255. However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Id. at 252. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

#### B. Judgment on the Pleadings

"After the pleadings are closed -- but early enough not to

delay trial -- a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." Hal Roach Studios, Inc. v. Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1989). Moreover, a motion for judgment on the pleadings is subject to the same standard of review as a motion to dismiss, and thus the pleading must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Johnson v. Rowley, 569 F.3d 40, 44 (2d Cir. 2009); see also Cafasso, U.S. ex rel. v. General Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 n.4 (9th Cir. 2011) (citing Johnson with approval). A claim is plausible on its face when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).

**IV. DISCUSSION**

    **A. Centex's Motion for Summary Judgment**

Centex moves for partial summary judgment against Travelers on the grounds that Travelers waived its right to control Centex's defense in the Adkins and Garvey actions when it previously denied its duty to defend those actions. MSJ at 8. Centex's motion turns on Travelers' so-called "duty to defend." "[A] liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity." Horace Mann Ins. Co. v. Barbara B., 4

Cal. 4th 1076, 1081 (Cal. 1993). "[T]he [insurer] must defend a suit which <u>potentially</u> seeks damages within the coverage of the policy[.]" <u>Gray v. Zurich Ins. Co.</u>, 65 Cal. 2d 263, 275 (Cal. 1966) (emphasis in the original). Thus, "the duty to defend is broader than the duty to indemnify; an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded." <u>Horace Mann</u>, 4 Cal. 4th at 1081. The duty is "immediate," "arising on tender of defense and lasting until the underlying lawsuit is concluded or until it has been shown that there is <u>no</u> potential for coverage . . . . Imposition of an immediate duty to defend is necessary to afford the insured . . . the full protection of a defense on its behalf." <u>Montrose Chem. Corp. v. Sup. Ct.</u>, 6 Cal. 4th 287, 295 (Cal. 1993) (internal citations omitted) (emphasis in the original). "The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy." <u>Horace Mann</u>, 4 Cal. 4th at 1081.

Once the insurer takes on the duty to defend, it generally has the absolute right to manage the defense and the insured is required to surrender all control. See <u>Safeco Ins. Co. of Am. v. Sup. Ct.</u>, 71 Cal. App. 4th 782, 787 (Cal. App. 1999). The insurer's right to control the insured's defense extends to the right to select legal counsel. <u>Carolina Cas. Ins. Co. v. Bolling, Walter & Gawthrop</u>, No. Civ. S-04-2445 FCD, 2005 U.S. Dist. LEXIS 20485, at *21 (E.D. Cal. May 31, 2005). However, "[w]hen an insurer wrongfully refuses to defend, the insured is relieved of his or her obligation to allow the insurer to manage the litigation and may proceed in whatever manner is deemed appropriate." <u>Eigner</u>

9

v. Worthington, 57 Cal. App. 4th 188, 196 (Cal. Ct. App. 1997).

Here, Travelers lost its right to control the defense of the Garvey and Adkins actions when it declined to participate in the defense of those actions in late 2010 and early 2011. The Garvey action was tendered to Travelers in July 2010. FAC ¶ 31; Answer ¶ 31. In February 2011, Travelers declined to participate in Centex's defense. Barrera Decl. Ex. F. It was not until April 2011 -- after Centex filed suit to enforce the Woodmark policy -- that Travelers agreed to provide a defense, subject to a reservation of rights. Barrera Decl. Ex. G. Likewise, Travelers initially refused Centex's tender of the Adkins action, and several months elapsed between Centex's initial tender and Traveler's agreement to provide a defense. Daniele Decl. Exs. A, D, E, G, K, L. As the duty to defend arises immediately upon tender, Travelers' delay in providing Centex with a defense divested it of the right to control that defense.

Travelers suggests that the Court should follow Judge Breyer's decision in Travelers Property Casualty Co. v. Centex Homes, No. C 10-02757 CRB ("Centex I"), 2011 U.S. Dist. LEXIS 36128 (N.D. Cal. Apr. 1, 2011), an earlier action between the parties which involved similar issues. MSJ Opp'n at 1. The Court finds that Centex I is distinguishable. In that case, Judge Breyer found that Centex had a duty to cooperate with Travelers' appointed counsel in two construction defect actions not at issue in this case. Centex I, 2011 U.S. Dist. Lexis 36128, at *17-19. The court recognized that an insurer has an immediate duty to defend but reasoned that "[i]f there was any unreasonable delay in [Travelers'] response to [Centex]'s tenders, it occurred in part because [Centex] failed to

10

promptly provide the reasonable, requested information to facilitate [Travelers'] investigation." Id. at *11. In contrast, in the instant action, there is no indication that Traveler' delay was due to Centex's failure to provide requested information. Even after Centex submitted additional information concerning its tender, Travelers refused to provide or fund a defense. See Barrera Decl. Exs. C-F; Daniele Decl. Exs. B-D. In fact, Travelers only agreed to provide a defense after Centex brought suit for Travelers' failure to defend.

Travelers also heavily relies on the California Court of Appeal's decision in Gray v. Begley, 182 Cal. App. 4th 1509 (Cal. Ct. App. 2010). Contrary to Travelers' assertion, that case is not controlling here. As the Court of Appeal noted, Gray "presents a somewhat tortured procedural history." 192 Cal. App. 4th at 1512. In that case, Gray was injured by Begley in an automobile accident. Id. Gray sued Begley and his employer, alleging that Begley was driving under the influence of alcohol and that the employer knew of Begley's prior reckless driving. Id. at 1513. The employer's insurer reached a $5 million settlement with Gray on behalf of the employer and later agreed to defend Begley under a reservation of rights. Id. at 1514. At trial, Gray obtained a $4.5 million verdict against Begley. Id. at 1515. Begley subsequently moved to vacate in order to offset the $4.5 million judgment against Gray's $5 million settlement with the employer. Id. Gray and Begley then reached a private agreement, whereby Begley would withdraw his motion to vacate. Id. at 1517. The Court noted that the agreement "may have included a payment from Gray to Begley and agreement to jointly proceed against [the insurer]." Id. The insurer moved to

11

1 intervene so that it could file its own motion to vacate and apply
2 the setoff; Gray opposed. Id. at 1518. The Court of Appeal
3 ultimately found that the insurer's intervention was proper,
4 holding that "an insurer that provides a defense under a
5 reservation of rights has a sufficient interest in the litigation
6 to intervene when the insured reaches a settlement without the
7 participation of the defending insurer." Id. at 1523. The court
8 also noted that "the key factor in determining whether an insurer
9 is bound by a settlement reached without the insurer's
10 participation is whether the insurer provided the insured with a
11 defense, not whether the insurer denied the coverage." Id.
12     Under Travelers' strained interpretation, Gray stands for the
13 proposition that "an insurer who initially denies its insured's
14 tender and later withdraws its denial and agrees to defend under a
15 reservation of rights prior to trial maintains the right to control
16 the defense it provides." MSJ Opp'n at 17. The Court disagrees.
17 Gray stands for the much more limited proposition that an insurer
18 may intervene "to protect its own interests" where the "insurer
19 provides an insured a defense under a reservation of rights, and
20 the insured subsequently reaches a private settlement with the
21 third party claimant without the participation of the insurer."
22 Gray, 182 Cal. App. at 1512. Thus, Gray has little to no relevance
23 to the instant action.
24     Travelers also argues that Centex has failed to meet its
25 burden of showing that Travelers waived its right to control the
26 defense of the Adkins and Garvey actions. MSJ Opp'n at 18.
27 Travelers contends that Centex must show, by clear and convincing
28 evidence, that Travelers intended to waive its right to control

12

Centex's defense. Id. Travelers reasons that this is a question of fact for the jury, and, thus, not appropriate for summary judgment. These arguments are also unavailing. Travelers' theory is predicated on a line of cases holding that "a denial of coverage on one ground does not, absent clear and convincing evidence to suggest otherwise, impliedly waive grounds not stated in the denial." Waller v. Truck Ins. Exch., 11 Cal. 4th 1, 32 (Cal. 1995). This authority has no bearing on the dispute here. Whether or not Travelers has waived its right to deny coverage is a separate question from whether it has waived its right to control Centex's defense. As discussed above, an insurer's duty to defend is an immediate one. Thus, a court need not discern an insurer's intent to determine whether it has breached that duty. A delay is evidence enough.

Relatedly, Travelers argues that it could not have waived its right to control Centex's defense since it repeatedly and expressly reserved that right. MSJ Opp'n at 19-20. Since the duty to defend is immediate, Travelers' reservations of rights have no bearing here. The pertinent inquiry is whether Travelers satisfied its duty to defend in a timely manner.

Finally, Travelers contends that Centex consented to Travelers providing it with a defense. MSJ Opp'n at 23. Travelers points out that Centex filed a declaratory relief action in Sacramento County Superior Court specifically requesting that Travelers provide it with a defense and that Centex voluntarily dismissed the action once Travelers agreed to provide that defense. Id. This argument is belied by the record. Nothing in Centex's complaint for declaratory relief suggests Centex was willing to consent to

13

the appointment of new counsel in the Adkins or Garvey actions. See Ferrentino Decl. Exs. A, B. Further, almost immediately after Travelers agreed to provide Centex with a defense, Centex stated that "Travelers waived its right . . . to control the defense of this matter." Barrera Decl. Ex. H.

For these reasons, the Court finds that Travelers waived its right to control Centex's defense of the Adkins and Garvey actions and, accordingly, GRANTS Centex's motion for partial summary judgment.

### B. Centex's Motion for Judgment on the Pleadings

Centex also moves for judgment on the pleadings on Travelers' third cause of action for bad faith, as well as Travelers' request for attorney's fees. Centex argues Travelers' bad faith claim sounds in tort and an insurer cannot state such a claim against its insured. MJP at 5 (citing Kransco v. Am. Empire Surplus Lines Ins. Co., 23 Cal. 4th 390, 400 (Cal. 2000)). Centex further argues that Travelers' bad faith claim also fails if it sounds in contract since the cause of action is duplicative of Travelers' claim for breach of contract. Id. at 6. Finally, Centex argues that Travelers has no legal basis for seeking attorney's fees since it cannot assert a tort claim and no federal or California statute would support such an award. Id.

Travelers responds that its bad faith claim sounds in contract and insists that it is not duplicative of its claim for breach of contract because the gravamen underlying the two causes of action is different. MJP Opp'n at 8. Specifically, Travelers argues that its breach of contract claim is based on Centex's alleged failure to comply with its express contractual obligations while its "bad

faith cause of action naturally encompasses an argument that [Centex]'s breach of the contract was not merely negligent or mistaken but was carried out intentionally for the purpose of frustrating the plaintiff from obtaining the benefit of the contract . . . ." Id. at 9-10. Travelers also contends that it may seek attorney's fees under Section 1021.5 of the California Code of Civil Procedure ("Section 1021.5"). Id. at 7. This provision states that a court may award attorney's fees "in any action which has resulted in the enforcement of an important right affecting the public interest" if, among other things, "a significant benefit . . . has been conferred on the general public or a large class of persons." Cal. Code Civ. Proc. § 1021.5.

The Court finds that Travelers' bad faith claim is duplicative. Under California law, a bad faith claim "involves something beyond breach of the contractual duty itself . . . ." Careau & Co. v. Sec. Pac. Bus. Credit, Inc., 222 Cal. App. 3d 1371, 1394 (Cal. Ct. App. 1990). Specifically, "it involves unfair dealing, whether or not it also constitutes breach of a consensual contract term, prompted by a conscious and deliberate act that 'unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party.'" Celador Int'l Ltd. v. Walt Disney Co., 347 F. Supp. 2d 846, 852 (C.D. Cal. 2004) (quoting Careau, 222 Cal. App. 3d at 1395). "If the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." Careau, 222 Cal. App. 3d at 1395.

15

Here, Travelers' bad faith claim relies on the same alleged acts and seeks the same contractual damages as its claim for breach of contract. Both claims are predicated on the allegation that Centex breached the cooperation clauses in its policies by refusing to allow Travelers to control the defense of the various underlying construction defect actions. See FAC ¶¶ 107, 111. Further, since both claims sound in contract, they seek the same damages. Accordingly, Travelers' bad faith claim must be dismissed as duplicative.

Travelers argues that its bad faith claim is distinguishable since it is predicated on the allegation that Centex's breach was carried out intentionally. MJP Opp'n at 10. Under Travelers reasoning, a plaintiff could state contract claims for both breach of contract and bad faith, so long as the breach was intentional. As evidenced by Travelers' own authority, Celador, that is not the law. In Celador, the court found that the plaintiff's claims for bad faith and breach were distinguishable, even though they were based on the same facts and sought the same remedy, since the bad faith claim was based on allegations that the defendant acted in bad faith to frustrate the contract's benefits. 347 F. Supp. 2d at 852-53. The court reasoned:

> Even if Plaintiffs are not ultimately successful on their breach of contract claim, they may still be able to prevail on their breach of the covenant of good faith and fair dealing claim. Even if the fact finder concludes that the consensual terms of the contract did not impose such obligations on Defendants, the fact finder could conclude that the actions of Defendants frustrated a benefit of the contract . . . .

Id. at 853. In contrast, Travelers' claims for breach and bad faith rise and fall together. Travelers has not alleged that

16

Centex took actions to cheat Travelers out of contract benefits while not actually breaching the contract. Rather, both its claims for breach and bad faith are predicated on the assertion that Centex intentionally breached its duty to cooperate by refusing to allow Travelers to select its counsel. See FAC ¶¶ 107, 111. Thus, this is clearly a case where "the allegations do not go beyond a mere contract breach." Celador, 347 F. Supp. 2d at 852.

Travelers' argument in support of its prayer for attorney's fees is also unavailing. Section 1021.5 clearly has no application here because this action does not implicate an "important right affecting the public interest." See Cal. Code Civ. Proc. § 1021.5. The Court fails to see how a decision related to an insurer's right to control the defense of its insured could possibly confer a "significant benefit" on either the general public or a large class of persons. See id. Travelers argues the public will be affected because it is a multi-billion dollar corporation and Centex's conduct could force it to raise insurance rates across the board to make up for additional expenses. MJP Opp'n at 8. This interpretation of the statute is far too broad. Following Travelers' logic, any large corporation would be entitled to attorney's fees in almost any action in which even a modest sum was at stake.

For these reasons, the Court GRANTS Centex's motion for judgment on the pleadings and dismisses Travelers' claim for breach of the covenant of good faith and fair dealing, as well as Travelers' prayer for attorney's fees.

///
///

**V.     CONCLUSION**

The Court GRANTS Centex's Motion for Partial Summary Judgment and Motion for Partial Judgment on the Pleadings. The Court finds that Travelers waived its right to control Centex's defense of the <u>Adkins</u> and <u>Garvey</u> actions. Further, the Court DISMISSES Travelers' claim for breach of the covenant of good faith and fair dealing and its prayer for attorney's fees.

Dated: May 10, 2012

UNITED STATES DISTRICT JUDGE