**THE AGUILERA LAW GROUP, APLC**
A. Eric Aguilera (SBN 192390)
Kari M. Myron (SBN 158592)
Raymond E. Brown (SBN 164819)
650 Town Center Drive, Suite 100
Costa Mesa, CA 92626
T: 714-384-6600 F: 714-384-6601
eaguilera@aguileragroup.com
kmyron@aguileragroup.com
rbrown@aguileragroup.com

**LETHER & ASSOCIATES, PLLC**
Thomas Lether, Esq., *Pro Hac Vice*
3316 Fuhrman Ave E, Suite 250
Seattle, WA 98102-3800
T: 206-467-5444
tlether@letherlaw.com

Attorneys for Plaintiffs/Counter-Defendants

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, a Connecticut corporation; FIDELITY & GUARANTY INSURANCE COMPANY, an Iowa corporation; THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT, a Connecticut corporation, ST. PAUL MERCURY INSURANCE COMPANY, a Minnesota corporation,

Plaintiffs,

vs.

CENTEX HOMES, a Nevada partnership; and DOES 1 through 10 inclusive,

Defendant.

AND RELATED COUNTER CLAIM.

Case No. 3:11-CV-03638-SC
Hon. Samuel Conti

**PLAINTIFFS/COUNTER-DEFENDANTS' OPPOSITION TO ADMINISTRATIVE MOTION OF CENTEX HOMES RE SEALING ORDER PURSUANT TO CIVIL LOCAL RULE 79-5(D)**

Action Filed: July 25, 2011
Trial Date: Not Set

Plaintiffs and counter-defendants (collectively "Travelers") submit the following points and authorities in opposition to defendant and counter-complainant Centex Homes' ("Centex") administrative motion re sealing order pursuant to Civil Local Rule 79-5(d).

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Centex's request for an order permitting it to file the subject Construction Defect File Review Guidelines 2008 in the public record fails to recognize the scope, nature and purpose of these review guidelines. The guidelines are an internal document created for the purpose of providing guidance regarding administration of quality control reviews within the corporate structure of Travelers. The guidelines were created over a number of years based on experience and research relating to quality control measurements. The document creates a competitive advantage and derives its value from the fact that it is not disclosed to competitors. The guidelines further are kept strictly confidential. As such, the document constitutes Travelers' closely guarded trade secrets and Travelers would be harmed by its disclosure to the public.

Furthermore, the document is not relevant to any of the issues in this case. It is not provided to Travelers' adjusters to be relied upon in their handling of their claims. Moreover, the guidelines are not relevant to Centex's assertion that insurers are required to accept or deny a tender within 40 days. Multiple Travelers adjusters have testified in deposition regarding the 120-day guideline, so the physical document itself is unnecessary and irrelevant to establish what Travelers considered to be a reasonable amount of time to respond to a tender demand. Disclosure of the document would thus serve no purpose other than to cause harm to Travelers and provide a competitive advantage to Travelers' competitors.

## II. FACTUAL BACKGROUND

This lawsuit involves, among other issues, Travelers' right to control the defense of Centex and Centex's allegations of bad faith in the handling of underlying actions wherein Travelers paid for Centex's fees and costs of defense. All of the underlying cases were tendered between April 2010 and September 2010.

Centex recently deposed Sandy Ngo, a non-management level Travelers claims adjuster. In her deposition, Ms. Ngo acknowledged having a document at her desk that she believed stated when coverage position letters were to be issued to an insured. She testified that she did not remember whether it was emailed or given to her by her unit manager. (Declaration of Lindsee B. Falcone ("Falcone Dec."), Exh. A at 24:4-25:25.) She did not know who authored it or when she received it, guessing that it was in 2010 (which she likely only assumed because that was when she became a construction defect adjuster). At no

point did Ms. Ngo testify that she relied upon the document in making any coverage determinations.

After the deposition, Ms. Ngo provided the document to counsel. It turned out the document was not a claims adjusting guideline at all but instead was a document explaining strategy guidelines and considerations for managers in ensuring quality control. The internal document was never provided to the company's individual adjusters as instruction on the California Insurance Code and related timing regulations, and as such was never intended to provide guidance for adjusters in their claims handling. In fact, the document is outdated and no longer in use. As a result, Travelers withheld the document on the grounds of attorney-client privilege, work product privilege and trade secret.

The parties met and conferred regarding the document but continued to disagree on its privileged status. As a result, a joint letter to Magistrate Judge Ryu was filed on December 12, 2012. The matter was heard on January 10, 2013. At the hearing, Judge Ryu ordered the production of the document over Travelers' objections, finding that the document was neither work product nor attorney-client privileged. Notably, although Travelers objected on trade secret grounds at that time, Judge Ryu did not rule that the document was not protected proprietary information and instead relied upon the protective order in her decision. She explained:

> "to the extent it might be proprietary, there's a protective order in the case…trade secret, you heard my view. It might be proprietary. It might be something that you created to -- for the way that you do business, but I think it would be addressed through a protective order. And is there one in this case? I assume there is. Okay."

(Falcone Dec., Exh. B at 13:11-12, 23-14:2.)

While Travelers was deciding whether to file an objection to the Order with this Court, Judge Ryu ordered the immediate production of the document. The document was produced to counsel for Centex on January 18, 2013, pursuant to the protective order in place in this matter, and without waiving Travelers' objections to its production. Travelers thereafter filed an objection to Magistrate Judge Ryu's order on January 24, 2013. That objection is still pending before this Court.

## III. THE PROTECTION OF TRADE SECRETS CONSTITUTES A COMPELLING REASON FOR SEALING DOCUMENTS ATTACHED TO DISPOSITIVE MOTIONS

The courts have held that the decision to seal documents is "one best left to the sound discretion of the trial court, discretion to be exercised in light of the relevant facts and circumstances of the particular

case." *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995); *United States v. Shryock*, 342 F.3d 948, 983 (9th Cir. 2003) ("because the district court has the inherent power to seal documents, we review for an abuse of discretion the district court's decision to retain filings under seal").

In exercising that discretion, the courts have found "'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006), citing *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978); see also *MMI, Inc. v. Baja, Inc.*, 743 F. Supp. 2d 1101, 1106 (D. Ariz. 2010) (sealing trade secret where "request to seal only one document, and not the whole record, is sufficiently particularized. Finally, the Court notes that the public has a diminished need for this document because it is 'only tangentially related[ ] to the underlying cause of action.'")

**IV. <u>THE GUIDELINES CONSTITUTE PROTECTED TRADE SECRETS</u>**

The Uniform Trade Secrets Act (Cal. Civ. Code § 3426, et seq.) … defines a trade secret as "information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (1) Derives independent economic value, actual or potential, from not being generally known to the public or other persons who can obtain economic value from disclosure or use; and, (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Under the Act, information is more likely to be considered a trade secret if it is: (a) not known outside of the particular business entity; (b) known only by employees and others involved in the business; (c) subject to reasonable measures to guard the secrecy of the information; (d) valuable, and (e) difficult for others to properly acquire or independently duplicate.

Moreover, courts have specifically held that documents such as the materials and guidelines at issue here are protected trade secrets. *Takata v. Hartford Comprehensive Employee Ben. Service Co.*, 283 F.R.D. 617 (2012) (holding that the Hartford's training materials and on-line reference manual were protected trade secrets based on the fact that the information was the result of many years of business and extensive research, created a competitive advantage, and were kept confidential by only being disclosed to certain employees); *In re Worlds of Wonder Securities Litigation*, 147 F.R.D. 214 (1992) (holding that

audit manuals are closely guarded trade secrets the disclosure of which would be harmful and that the manuals were neither relevant or necessary).

Here, the document clearly constitutes Travelers' closely guarded trade secret. First, the document contains information and a method used to assist with quality control developed over many years of business and based on extensive research. (Wolcott Dec., ¶¶ 4, 7 and 8) Second, the document derives independent value from not being generally known to those outside Travelers as it allows Travelers to fully control the quality of its work and keep up its reputation and goodwill within the industry, thus creating a competitive advantage. (Wolcott Dec., ¶¶ 9 and 10.) Additionally, Travelers invested significant time and research into the methods set forth in the document, an expensive process which other companies could bypass altogether if this document were made public. (Wolcott Dec., ¶¶ 9 and 10.) Finally, the document is subject to reasonable efforts to maintain its secrecy, as it is only intended to be used by management level or higher employees for use during quality control efforts. (Wolcott Dec., ¶¶ 5, 6, and 8.)

Regardless of whether the document is outdated, it is nonetheless a trade secret. Trade secrets derive their value as a form of intellectual property from the fact that they are not disclosed to those who might be able to use them to create value properly belonging to the owner of the secret. *Pillsbury, Madison & Sutro v. Schectman*, 55 Cal.App.4th 1279, 1288, (1997). Travelers derives economic value from this document, and public dissemination would allow other insurance companies to derive economic benefit from the document. (Wolcott Dec., ¶¶ 9-11)

Thus, because the document constitutes Travelers' trade secrets, Centex's request to have it disclosed to the public must be denied.

## IV. THE GUIDELINES ARE NOT RELEVANT

Moreover, the guidelines are not relevant to nor necessary to Centex's claims and therefore it is unnecessary for Travelers' protected and privileged information to be placed in the public record. See, e.g., *In re Worlds of Wonder Securities Litigation*, 147 F.R.D. 214 (1992). The Federal rules provide for the discovery only of "nonprivileged matter that is **relevant to any party's claim or defense**." Fed.R.Civ.P. 26(b)(1) (emphasis added). No claims adjuster ever testified that he or she relied upon the document in their handling of the claims at issue in this lawsuit and thus are irrelevant for Centex to support its claims.

Further, the only portion of the guidelines that Centex claims are relevant are two lines that relate to a 120-day measurement guideline regarding issuance of coverage position letter. However, the guidelines are not necessary for Centex to establish what Travelers considered to be a reasonable amount of time to respond to a tender demand. The fact is that the adjusters who have testified in deposition have already stated that they may take anywhere from 90 to 120 days to make a coverage determination and that it is their understanding that they have 120 days in which to make a determination pursuant to the quality measurement guidelines. (Falcone Dec., Exh. A at pgs. 24-26; Exh. C at pg. 32-33; Exh. D at pgs. 144-145; Exh. E at pg. 31; Exh. F at pgs. 22-23; Exh. G at pg. 27; Exh. H at pgs. 117-119.)

Given the adjusters' testimony, the guidelines have no probative value and are unnecessary to support Centex's claims. There is other evidence already available to Centex to prove that Travelers has set a 120-day quality measurement guideline to establish what Travelers considered a reasonable amount of time for adjusters to communicate a coverage determination, assuming the information necessary to do so has been made available. Accordingly, disclosing Travelers' trade secrets on the public record is unnecessary to this litigation.

Finally, public policy supports trade secret protection of this document. As explained above, this document has been created by Travelers through much work and is used to set itself apart itself apart from its competition as the best in the industry. As Travelers is a company which serves the public, the public has a strong interest in Travelers performing at its best. This, however, can only be done by preserving the free flow of this type of information within the upper management of a company. If this proprietary information were discoverable, companies like Travelers would be curtailed from spending precious resources on the creation of such documents – which better their companies and in turn benefit the public. Similarly, though not a recognized privilege in California, the public policy considerations behind the self-critical analysis privilege certainly support allowing companies to self audit and create policies to better themselves without fear of disclosure. Thus, public policy further supports the protection of this proprietary document.

## VI. <u>CONCLUSION</u>

Based on the foregoing, Travelers respectfully requests that this Court deny Centex's administrative motion re sealing order pursuant to Civil Local Rule 79-5(d).

Dated: February 1, 2013

**THE AGUILERA LAW GROUP, APLC**

By: */s/ A. Eric Aguilera*
A. Eric Aguilera
Kari M. Myron
Raymond E. Brown
Attorneys for plaintiffs and counter-defendants