**United States District Court**
Northern District of California

1

2

3

4

5

6

7            IN THE UNITED STATES DISTRICT COURT

8            NORTHERN DISTRICT OF CALIFORNIA

9

10   TRAVELERS PROPERTY CASUALTY          )  Case No. 11-3638-SC
     COMPANY OF AMERICA, FIDELITY &       )
11   GUARANTY INSURANCE COMPANY, THE      )  ORDER GRANTING IN PART AND
     TRAVELERS INDEMNITY COMPANY OF       )  DENYING IN PART CROSS-
12   CONNECTICUT, AND ST. PAUL MERCURY    )  MOTIONS FOR PARTIAL
     INSURANCE COMPANY,                   )  SUMMARY JUDGMENT
13                                        )  _____
                  Plaintiffs,            )
14                                        )
        v.                               )
15                                        )
                                          )
16   CENTEX HOMES and DOES 1 through      )
     10 inclusive,                        )
17                                        )
18   _____  )
                                          )
19   CENTEX HOMES,                        )
                                          )
20                Counterclaimant,        )
                                          )
21      v.                                )
                                          )
22                                        )
23   TRAVELERS PROPERTY CASUALTY          )
     COMPANY OF AMERICA, et al.,          )
24                                        )
                  Counterdefendant.       )
25                                        )
                                          )
26   _____  )

27

28

**United States District Court**
For the Northern District of California

**INTRODUCTION & BACKGROUND**

This case arises out of an insurance dispute between the above-captioned plaintiffs (collectively, "Travelers") and defendant Centex Homes ("Centex").  Centex hires subcontractors to build residential developments throughout California.  Pertinent to this case, Centex subcontracted with West Coast Countertops ("West Coast"), Fresno Precision Plastics ("Fresno Precision"), Executive Landscape, American Woodmark, and Foremost Superior Marble ("Foremost Superior") to install countertops, cabinets, tub and shower surrounds, and landscaping features in a number of homes. These subcontractors obtained commercial general liability insurance policies from Travelers, naming Centex as an additional insured.  The Travelers' policies cover property damage arising from the subcontractors' work but does not provide coverage for replacement of the work itself.  For example, Travelers will cover water damage caused by an improperly installed tub, but not cover the replacement cost of the tub itself.

Centex is now being sued for construction defects by over 100 homeowners throughout California.  These actions allege a large number of defects, including a few that may be related to the work performed by West Coast, Fresno Precision, Executive Landscape, and Foremost Superior.  Centex has tendered at least five of these actions to Travelers as an additional insured under these subcontractors' policies: the Acupan action, the Adkins action, the Conner action, the Garvey action, and the Kent action (collectively, the "underlying actions").[1]

---

[1] The actions are captioned: Acupan v. Centex Homes, Kern County Superior Court Case No. S-1500-CV-273392; Adkins v. Centex Homes, Sacramento County Superior Court; Conner v. Centex Homes, Imperial

1    Centex and Travelers appear to disagree about almost every

2  relevant aspect of coverage, including whether the underlying

3  actions are covered by the policies, whether Travelers has a duty

4  to defend the underlying actions, what that duty to defend entails,

5  whether Centex has a right to control its own defense, whether

6  Centex has a right to Cumis counsel, whether Centex has a duty to

7  seek coverage from other insurers, and whether the parties have

8  timely responded to each other's requests for information.  As a

9  result, Travelers brought suit against Centex for, among other

10  things, breach of contract, breach of the implied covenant of good

11  faith and fair dealing ("bad faith"), reimbursement, and

12  declaratory relief.  Centex has also counterclaimed for breach of

13  contract, bad faith, and declaratory relief.  Now before the Court

14  are fully briefed cross-motions for partial summary judgment

15  brought by Travelers and Centex.  ECF Nos. 128 ("Trav. MSJ"); 143

16  ("Centex XMSJ/MSJ Opp'n"); 159 ("Trav. MSJ Reply/XMSJ Opp'n"); 162

17  ("Centex XMSJ Reply").  Pursuant to Civil Local Rule 7-1(b), the

18  Court finds these matters appropriate for resolution without oral

19  argument.  For the reasons set forth below, the cross-motions are

20  GRANTED in part and DENIED in part.

21

22                        **LEGAL STANDARD**

23    Entry of summary judgment is proper "if the movant shows that

24  there is no genuine dispute as to any material fact and the movant

25  is entitled to judgment as a matter of law."  Fed. R. Civ. P.

26  _____

27  County Superior Court Case No. ECF06075; Garvey et al. v. Centex
   Homes, et al., Sacramento County Superior Court Case No. 34-2010-

28  00073233; Kent v. Centex Homes, Sacramento County Superior Court
   Case No. 07AS04107.

**United States District Court**
For the Northern District of California

1   56(a).  Summary judgment should be granted if the evidence would

2   require a directed verdict for the moving party.  Anderson v.

3   Liberty Lobby, Inc., 477 U.S. 242, 251 (1986).  Thus, "Rule 56[]

4   mandates the entry of summary judgment . . . against a party who

5   fails to make a showing sufficient to establish the existence of an

6   element essential to that party's case, and on which that party

7   will bear the burden of proof at trial." Celotex Corp. v. Catrett,

8   477 U.S. 317, 322 (1986).  "The evidence of the nonmovant is to be

9   believed, and all justifiable inferences are to be drawn in his

10  favor." Anderson, 477 U.S. at 255.  However, "[t]he mere existence

11  of a scintilla of evidence in support of the plaintiff's position

12  will be insufficient; there must be evidence on which the jury

13  could reasonably find for the plaintiff." Id. at 252.

14

15                           **DISCUSSION**

16  **I.   CENTEX'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

17       Centex asks the Court to enter partial summary judgment in its

18  favor on five issues: (1) whether Travelers owes a duty to defend

19  Centex in the Garvey, Adkins, Acupan, and Conner Actions; (2)

20  whether Travelers has a duty to pay Centex's full defense costs;

21  (3) whether Centex breached the cooperation clauses in its

22  insurance contracts with Travelers by failing to tender to or sue

23  other insurers; (4) whether Travelers' delay in responding to the

24  Acupan and Conner actions divested it of the right to control those

25  actions; (5) whether Travelers' claim for reimbursement fails.  The

26  Court addresses each of these issues below.

27       **A.   Travelers' Duty to Defend Centex**

28       Under California law, an insurer's duty to defend an insured

4

United States District Court
For the Northern District of California

1   in an underlying action "is determined by reference to the policy,

2   the complaint, and all facts known to the insurer from any source."

3   Montrose Chem. Corp. v. Super. Ct., 6 Cal. 4th 287, 300 (Cal.

4   1993).  "[O]nce the insured has established potential liability . .

5   . the insurer must assume its duty to defend unless and until it

6   can conclusively refute that potential.  Necessarily, an insurer

7   will be required to defend a suit where the evidence suggests, but

8   does not conclusively establish, that the loss is not covered."

9   Id. at 299 (quotations omitted).

10      Here, Centex argues that the undisputed evidence shows that

11  Travelers had a duty to defend Centex in the Adkins, Acupan,

12  Garvey, and Conner actions.  Centex XMSJ/MSJ Opp'n at 29.

13  Travelers argues that summary judgment should be denied on these

14  issues because Centex fails to specify when the duty to defend

15  arose in each action.  Trav. MSJ Reply/XMSJ Opp'n at 22-23.  Centex

16  responds that its motion is sufficiently specific because the duty

17  to defend arises immediately upon tender.  Centex XMSJ Reply at 30-

18  31.  The Court disagrees.

19      Courts frequently refer to the duty to defend as immediate.

20  See Montrose, 6 Cal. 4th at 295.  However, courts also recognize

21  that an insurer has a right to conduct a reasonable investigation

22  before to assuming a duty to defend.  See Travelers Prop. v. Centex

23  Homes, C 10-02757 CRB ("Travelers v. Centex I" or the "'57

24  Action"), 2011 WL 1225982, at *4 (N.D. Cal. Apr. 1, 2011).  Thus,

25  where an insured tenders an underlying action but fails to provide

26  the insurer with necessary information relevant to a coverage

27  determination, then the insurer need not defend the action upon

28  tender.

**United States District Court**
For the Northern District of California

In this case, there are disputed issues of material fact as to when Travelers had sufficient information to make an informed decision on Centex's tenders.  For example, Travelers has submitted evidence showing that, in tendering the <u>Acupan</u> action under the Fresno Precision policy, Centex initially failed to provide its subcontracts with Frenso Precision, which were necessary to trigger coverage under the policy.  <u>See</u> Lopez Decl. Exs. B-C.  The issue of when Travelers had a duty to defend is central to the claims and counterclaims asserted by the parties.  For example, if that duty arose well before Travelers provided Centex with a defense in the underlying actions, then Centex may be able to succeed on its claims for breach and bad faith.  If it arose at the time Travelers provided a defense, then Centex's claims may lack merit.  Further, if Travelers later discovered facts that conclusively refuted the potential for coverage under its policies, then Travelers would no longer have had a duty to defend.

Centex does not address these issues.  Instead, it essentially asks the Court to render summary judgment on Travelers' duty to defend in a vacuum, without reference to any of the claims involved in this action.  Even if the Court could find that Travelers had a duty to defend the underlying actions at some unspecified point in time, it is unclear how that would narrow the scope of the issues set for trial.  Accordingly, the Court DENIES Centex's motion for summary judgment with respect to Travelers' duty to defend in the <u>Adkins</u>, <u>Acupan</u>, <u>Conner</u>, and <u>Garvey</u> actions.

**B.**   **<u>Travelers' Duty to Pay Centex's Full Defense Costs</u>**

Centex next asks the Court to find Travelers has a duty to pay Centex's full defense costs, not simply a pro-rata share, and that

**United States District Court**
For the Northern District of California

1  Travelers failed to meet this duty.  Centex XMSJ/MSJ Opp'n at 40.

2  Under California law, in actions where all the claims asserted

3  against the insured are at least potentially covered, the insured

4  has a duty to defend.  Buss v. Super. Ct., 16 Cal. 4th 35, 46 (Cal.

5  1997).  Moreover, in "mixed actions" -- in which some claims are at

6  least potentially covered by an insurer and the others are not --

7  "the insurer has a duty to defend the action in its entirety."  Id.

8  at 47-48.  "[A]lthough an insurer owing a duty to defend must

9  defend the entire underlying action, allocation of defense costs

10  may later be apportioned in certain situations involving multiple

11  insurers."  Cnty. of San Bernardino v. Pac. Indem. Co., 56 Cal.

12  App. 4th 666, 689-90 (Cal. Ct. App. 1997).  An insurer generally

13  cannot use its right to seek contribution from other insurers to

14  avoid fronting an insured's full defense costs.  Armstrong World

15  Indus., Inc. v. Aetna Cas. & Sur. Co., 45 Cal. App. 4th 1, 105-06

16  (Cal. Ct. App. 1996).

17      Travelers argues that Centex cannot claim that it was provided

18  with an incomplete defense because, from the beginning, either

19  Travelers or some other insurer has paid Centex's defense costs in

20  all of the underlying actions.  Trav. MSJ Reply/XMSJ Opp'n at 27-

21  29.  Travelers also argues that Centex has failed to provide

22  competent, admissible evidence of its actual reasonable and

23  necessary defense fees.  Id. at 29-31.  Finally, Travelers argues

24  that Centex engaged in improper billing practices through which it

25  misrepresented the contribution of other insurers and induced

26  Travelers to overpay for Centex's defense costs in the underlying

27  actions.  Id. at 31-32.  In sum, Travelers contends that there

28  exist triable issues of material fact as to whether Centex has

1  received all funds necessary to mount a reasonable defense.  Id.

2       The Court agrees with Travelers, at least in part.  Even if

3  Travelers does have a duty to defend, there are triable issues of

4  fact as to whether it has fulfilled that obligation.  Both parties

5  have presented declarations from their attorneys concerning the

6  amounts Travelers has paid towards Centex's defense in the

7  underlying actions.  Travelers' evidence indicates that Travelers

8  and other insurers have overpaid Centex's defense fees, while

9  Centex's evidence indicates Travelers still owes Centex thousands

10  of dollars.  At summary judgment, the Court cannot determine which

11  evidence is more credible.  Further, Centex has failed to address

12  Travelers' argument that Centex engaged in improper billing

13  practices, other than to argue that Travelers is procedurally

14  barred from raising such an argument.  Centex has not explained why

15  this argument is barred, and the Court fails to see why it is

16  improper.

17       Accordingly, the Court declines to find that Travelers failed

18  to provide a complete defense to Centex, and Centex's motion is

19  DENIED as to this issue.

20       **C.**   **The Cooperation Clause**

21       Travelers has alleged that Centex breached the cooperation

22  clause in its policies by failing to (1) acknowledge Travelers'

23  right to control Centex's defense in the underlying actions and (2)

24  seek recovery of defense fees and costs incurred in underlying

25  actions from other insurance carriers.  See ECF No. 5 ("Am.

26  Compl.") ¶ 66.  Centex now moves for summary judgment on the second

27  aspect of this claim on the ground that Centex was not required to

28  seek recovery from other insurers.  This argument has merit.

**United States District Court**
For the Northern District of California

1    Neither party specifically directs the Court to the

2  cooperation clauses in the relevant agreements; however, they

3  appear to be referring to the clauses which provide that Centex

4  must: (1) "cooperate with [Travelers] in the investigation,

5  settlement, or defense of the claim or suit"; and (2) "do all

6  that's possible after the loss to preserve for [Travelers] any . .

7  . right of recovery [from a third party]; and cooperate with

8  [Travelers] in any attempt to exercise any . . . right of recovery

9  [from a third party]." [2]  <u>See</u> Carrillo Decl. Ex. A at 28, 69.

10    Nothing in these cooperation clauses suggests that Centex had

11  an obligation to tender a defense to other insurers.  Under

12  California law, Travelers was entitled to seek contribution for

13  Centex's defense costs from other insurance carriers, even if

14  Centex did not tender its defense or provide notice to those other

15  carriers.  "When multiple policies are triggered on a single claim,

16  the insurers' liability is apportioned pursuant to the 'other

17  insurance' clauses of the policies or under the equitable doctrine

18  of contribution."  <u>Dart Indus., Inc. v. Commercial Union Ins. Co.</u>,

19  28 Cal. 4th 1059, 1080 (Cal. 2002) (citation and quotations

20  omitted).  Thus, Centex's refusal to tender its claims to other

21  insurers did not affect Travelers' rights to seek contribution from

22  other carriers who may have insured the losses alleged in the

23  underlying actions.  In fact, Travelers' own Rule 30(b)(6) witness

24  admitted that Travelers does not believe that its insured have

25  contractual obligations to provide notice of their claims to other

_____

26

27  [2] The parties are reminded that the Court is not required to
     independently search the record on motions for summary judgment.
     <u>See Carmen v. San Francisco Unified Sch. Dist.</u>, 237 F.3d 1026, 1031

28  (9th Cir. 2001).  All future citations to the record should include
     pin cites.

1   carriers or to pursue insurance claims against other carriers.

2   Hayes Decl. Ex. H8 at 245-49.

3       Case law from other jurisdictions also suggests that insureds

4   do not have an independent duty to seek contribution from other

5   insurers.  Specifically, the Seventh Circuit has stated:

> [Insureds] have the right to choose which insurer they
> want to defend them, and their doing so cannot be said
> to legally impair any right they had against any other
> insurers. Indeed, [the plaintiff insurer] has cited no
> cases from any jurisdiction holding that an insurer
> may force its insured, under the language of the
> insurance policy, to tender its claims to another
> insurance company as well.

12  Emp'rs Ins. of Wausau v. James McHugh Const. Co., 144 F.3d 1097,

13  1106 (7th Cir. 1998).

14      Travelers does not directly respond to these points.  Instead,

15  it asserts two new theories of how Centex allegedly breached the

16  cooperation clause.  Specifically, it argues that Centex impaired

17  Travelers' right of recovery against other insurers by (1) failing

18  to provide Travelers with requested information regarding other

19  additional insured tenders in a timely manner, and (2) specifically

20  directing other carriers to stop contributing to Centex's defense.

21  Trav. MSJ Reply/XMSJ Opp'n at 17-18.  These theories were not pled

22  in Travelers' Amended Complaint, and it would be unfair to allow

23  Travelers to assert them now.[3]  Travelers has not sought leave to

24  amend and the discovery cut-off passed long ago.  See ECF No. 58.

---

[3] In its opposition papers, Travelers also frames these new
allegations as breaches of the covenant of good faith and fair
dealing.  However, according to Travelers' pleadings, its bad faith
claim is predicated on "[Centex's] continuous refusal to
acknowledge [Travelers'] right to select defense counsel thereby
impeding [Travelers'] ability to provide a defense . . . ."  Am.
Compl. ¶ 111.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    In any event, Travelers' second new claim fails as a matter of

2  law.  Centex's decision to seek 100 percent of its defense costs

3  from Travelers does not affect Travelers' right to seek

4  contribution from other insurance carriers.  Travelers contends

5  that these carriers can now argue that they have no contribution

6  obligations because Centex represented that Travelers did not want

7  them to contribute.  MSJ Reply/XMSJ Opp'n at 17-18.  But this

8  argument is inconsistent with the evidence presented by Travelers,

9  which merely shows that Centex told other carriers that Travelers

10 had acknowledged a defense obligation and that Centex was not

11 currently seeking contribution from anyone else.  See Aguilera

12 Decl. Exs. C, F.  There is no indication that Centex informed its

13 other insurers that Travelers had waived its right to seek

14 contribution.

15    Accordingly, the Court GRANTS Centex's motion for partial

16 summary judgment with respect to Travelers' claim for breach of the

17 cooperation clauses and finds that Centex did not breach its duty

18 to cooperate by failing to seek recovery of its defense fees from

19 other carriers.  Travelers' claim for breach of contract remains

20 undisturbed in all other respects.

21    **D.    Travelers' Right to Control Centex's Defense in the**

22         **Acupan and Conner Actions**

23    Centex also asks the Court to find that Travelers' delay in

24 responding to Centex's tenders of the Acupan and Conner actions

25 divested Travelers of its right to control the defense of those

26 actions.  Centex XMSJ/MSJ Opp'n at 51.  Centex first tendered the

27 Acupan action to Travelers under the Fresno Precision policy on

28 April 8, 2010.  Lopez Decl. Ex. A.  On September 13, 2010,

Travelers declined to provide coverage for the Acupan action, but it reversed course on June 28, 2011.  Owens Decl. Ex. O14, O18. The delay associated with the Conner action was much shorter. Centex tendered the Conner action on September 8, 2010, and Travelers asked for additional information on September 22, 2010. Id. Exs. O27, O28, O38.  After receiving and reviewing this additional information, Travelers agreed to provide an equitable defense on January 21, 2011.  Id. Ex. O29.  After Travelers accepted Centex's tenders in the Conner and Acupan actions, Travelers attempted to appoint its own counsel to defend those actions.  Centex refused to cooperate with Travelers proposed counsel, and insisted that the law firm of Newmeyer and Dillion LLP ("Newmeyer") continue to manage its defense.  Centex contends that Travelers lost its right to appoint new counsel by waiting too long to accept Centex's tenders.  Travelers asserts that Centex's actions amount to breach of the cooperation clauses in the relevant insurance agreements.

This is not the first time this issue has been raised in this case.  Centex previously moved for summary judgment on the grounds that Travelers' delay divested it of the right to control the Adkins and Garvey actions.  ECF No. 21.  That motion was granted. ECF No. 56 ("May 10, 2012 Order").[4]  The Court held that Travelers lost the right to control the Adkins and Garvey actions because it waited over nine months to provide Centex with a defense in those actions and because Travelers only agreed to provide a defense after Centex brought suit for Travelers' failure to defend.  Id. at

---

[4] Travelers Prop. Cas. Co. of Am. v. Centex Homes, 2012 WL 1657121, 2012 U.S. Dist. LEXIS 65834 (N.D. Cal. May 10, 2012).

United States District Court
For the Northern District of California

1  3-5, 10-11.  The Court reasoned: "As the duty to defend arises

2  immediately upon tender, Travelers' delay in providing Centex with

3  a defense divested it of the right to control that defense."  Id.

4  at 10.

5      Having reviewed the parties' briefs and new authority offered

6  by Travelers, the Court finds that its prior decision was in error

7  and would work a manifest injustice.[5]  The Court finds that an

8  insurer cannot lose its right to control the defense of its insured

9  through delay alone.  Rather, it may only lose that right through

10 waiver, forfeiture, or estoppel, none of which have been proven by

11 Centex.

12     Under California law, an insurer's duty to defend is

13 immediate, "arising on tender of defense and lasting until the

14 underlying lawsuit is concluded or until it has been shown that

15 there is no potential for coverage . . . .  Imposition of an

16 immediate duty to defend is necessary to afford the insured . . .

17 the full protection of a defense on its behalf."  Montrose Chem.

18 Corp. v. Sup. Ct., 6 Cal. 4th 287, 295 (Cal. 1993).  Once an

19 insurer takes on the duty to defend, it generally has the absolute

20 right to manage the defense and the insured is required to

21 surrender all control.  See Safeco Ins. Co. of Am. v. Super. Ct.,

22 71 Cal. App. 4th 782, 787 (Cal. App. 1999).  The insurer's right to

23 control the insured's defense extends to the right to select legal

24 counsel.  Carolina Cas. Ins. Co. v. Bolling, Walter & Gawthrop, No.

25 Civ. S-04-2445 FCD, 2005 WL 1367096, at *7, 2005 U.S. Dist. LEXIS

---

26
27 [5] Under the law of the case doctrine, courts generally refuse to
   reopen issues that have already been decided.  Gonzalez v. Arizona,
   677 F.3d 383, 390 n.4 (9th Cir. 2012).  However, a court may depart
28 from the law of the case where its prior decision was erroneous and
   would work a manifest injustice.  Id.

**United States District Court**
For the Northern District of California

20485, at *21 (E.D. Cal. May 31, 2005). However, "[w]hen an insurer wrongfully refuses to defend, the insured is relieved of his or her obligation to allow the insurer to manage the litigation and may proceed in whatever manner is deemed appropriate." Eigner v. Worthington, 57 Cal. App. 4th 188, 196 (Cal. Ct. App. 1997).

Centex argues that because the duty to defend is immediate, an insurer irrevocably loses its right to control an insured's defense if the insurer does not provide an immediate defense, even if the insurer later agrees to defend and offers to retroactively pay the insured's legal fees. Centex XMSJ/MSJ Opp'n at 52. But the authority cited by Centex stands for much more limited propositions. Specifically, this authority holds that (1) an insured has the right to control its own defense where the insurer refuses to provide one, Eigner, 57 Cal. App. 4th at 196; (2) an insured may settle a claim without the consent or approval of the insurer where the insurer denies liability and refuses to provide a defense, St. Louis Dressed Beef & Provision Co. v. Maryland Cas. Co., 201 U.S. 173, 181 (1906); and (3) an insurer may irrevocably waive its right to control an insured's defense through "a direct and positive written request by it to the insured to take charge of the litigation and defend the suit," Witt v. Universal Auto. Ins. Co., 116 S.W.2d 1095, 1098 (Tex. Civ. App. 1938). This authority is not applicable here. First, Travelers has since offered to provide a defense in each of the underlying actions. Second, Travelers is not challenging a settlement reached by Centex before Travelers offered to defend the underlying actions. Third, Travelers did not expressly waive its right to control Centex's defense. Rather, it has repeatedly reserved its rights under the

1   relevant insurance agreements.

2       The California Court of Appeal's decision in Chase v. Blue

3   Cross of California, 42 Cal. App. 4th 1142 (Cal. Ct. App. 1996), is

4   more on point.  The issue in Chase was whether an insurer had lost

5   its right to compel arbitration because its communications with the

6   insured did not mention the arbitration provision in the parties'

7   insurance contract.  42 Cal. App. 4th at 1149.  The court found

8   that an insurer could only lose a contractual right to arbitration

9   under theories of waiver, forfeiture, or estoppel.  Id. at 1151.

10  While the Chase court was primarily concerned with an arbitration

11  clause, its holding has broader implications.  In reaching its

12  conclusion, the Court relied on a number of authorities which dealt

13  with other types of contractual rights provided by insurance

14  policies.  See id. at 1149-51 (citing Waller v. Truck Ins. Exch.,

15  Inc., 11 Cal. 4th 1 (Cal. 1995); Intel Corp. v. Hartford Acc. &

16  Indem. Co., 952 F.2d 1551 (9th Cir. 1991)).  Further, the Court

17  generally referred to the means by which an insurer may lose a

18  contractual right, not just the right to arbitration.

19      There are also policy justifications for allowing an insurer

20  to reserve its right to control an insured's defense and to assume

21  control over the insured's defense after a delay.  Since the

22  insurer may have a duty to indemnify the insured, the insurer often

23  has the most at stake in the outcome of the underlying litigation.

24  As Centex points out, allowing an insurer to appoint new counsel in

25  the middle of a case may not always be the best strategy.  But

26  since the insurer may be liable for any judgments rendered against

27  the insured, the insurer is often in the best position to make

28  decisions about selecting counsel.  Additionally, the rule proposed

by the Court does not relieve an insurer of its duty to provide an "immediate defense."  If an insured is forced to hire its own independent counsel due an insurer's delay, the insurer may later be liable for that independent counsel's fees.  In fact, in this case, Travelers has offered evidence that it has paid Newmeyer for all of the time it devoted to the underlying actions, even the hours billed prior to Travelers' acceptance of Centex's tenders.  Further, in certain circumstances, an insurer's refusal to provide an immediate defense may render it liable for breach of contract or breach of the covenant of good faith and fair dealing.

Accordingly, the Court DENIES Centex's motion for summary judgment on the issue of whether Travelers has lost its right to control the defense of the <u>Acupan</u> and <u>Conner</u> actions.  The Court also VACATES its prior decision that Travelers lost its right to control the defense of the <u>Adkins</u> and <u>Garvey</u> actions.

**E.   <u>Travelers' Claim for Reimbursement</u>**

Travelers has asserted a claim for reimbursement in connection with the <u>Kent</u> action.  Am. Complaint. ¶¶ 113-117.  Travelers agreed to defend Centex in the <u>Kent</u> action pursuant to the Foremost Superior policy and subsequently paid for a portion of Centex's defense fees in that action.  Travelers alleges that it is entitled to reimbursement from Centex because Centex billed Travelers and other insurers for more than 100 percent of its defense costs and because Foremost Superior was ultimately dismissed from the <u>Kent</u> action without contributing toward any settlement amount.[6]  <u>Id.</u> ¶ 116.  Centex now moves for summary judgment on Travelers'

---

[6] The parties agree that Travelers is pursuing a claim for reimbursement, not a claim for misrepresentation or fraud.  <u>See</u> Trav. MSJ Reply/XMSJ Opp'n at 62; Centex XMSJ Reply at 31.

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1  reimbursement claim.

2      Insurers have a duty to defend every aspect of a mixed action,
3  i.e., an action brought against the insured that includes claims
4  that are covered (or at least potentially covered), as well as
5  claims that are not potentially covered. <u>Buss</u>, 16 Cal. 4th at 48.
6  The insurer may later seek reimbursement from the insured for
7  defending claims that are not even potentially covered, but may not
8  seek reimbursement for claims that are potentially covered.  <u>Id.</u> at
9  50.  The insurer's right to reimbursement is limited to defense
10 costs that can be allocated solely to claims that are not even
11 potentially covered.  <u>Id.</u> at 52.  Thus, "[i]f [an insurer], <u>after</u>
12 <u>providing an entire defense</u>, can prove that a claim was not even
13 potentially covered because it did not even possibly embrace any
14 triggering harm of the specified sort within its policy or periods
15 caused by an included occurrence, it should have that opportunity."
16 <u>State v. Pac. Indem. Co.</u>, 63 Cal. App. 4th 1535, 1550 (Cal. Ct.
17 App. 1998) (emphasis in the original) (internal quotations
18 omitted).

19     Centex argues that Travelers is not entitled to reimbursement
20 because Travelers failed to pay for all of Centex's defense costs
21 in the <u>Kent</u> action.  Centex XMSJ/MSJ Opp'n at 59-60.  However,
22 where, as here, multiple insurers contribute toward an insured's
23 defense, an insurer does not need to pay for 100 percent of the
24 insured's defense costs in order to provide an entire defense.
25 <u>Travelers v. Centex I</u>, 2011 WL 1225982, at *4 (citing <u>San Gabriel</u>
26 <u>Valley Water Co. v. Hartford Accident & Indem. Co.</u>, 82 Cal. App.
27 4th 1230, 1241 (Cal. Ct. App. 2000)).  Further, there are triable
28 issues of fact as to whether Travelers paid its share of Centex's

defense fees.  For example, because Centex may have overbilled its insurers for defense costs, the exact amount of Centex's actual defense costs remains unclear.  There are also triable issues of fact as to whether Centex is trying to hold Travelers responsible for defense costs incurred before Centex tendered the <u>Kent</u> action to Travelers under the Foremeost Superior policy and after Foremost Superior was dismissed from the <u>Kent</u> action.

Next, Centex argues that Travelers cannot seek reimbursement because it did not provide an immediate defense to Centex. However, Centex cites no California authority that would support such a proposition.  As Centex points out, in <u>Buss</u>, 16 Cal. 4th at 48-49, the California Supreme Court held that the insurer's duty to defend generally arises as soon as tender is made.  However, <u>Buss</u> does not hold that an insurer irrevocably loses its right to seek reimbursement for payments made on a clearly uncovered claim if the insurer fails to provide an immediate defense.  In fact, <u>Buss</u> arguably stands for the contrary proposition:

> Under the policy, the insurer does not have a duty to defend the insured as to the claims that are not even potentially covered. With regard to defense costs for these claims, the insurer has not been paid premiums by the insured. It did not bargain to bear these costs. To attempt to shift them would not upset the arrangement.  The insurer therefore has a right of reimbursement that is implied in law as quasi-contractual, whether or not it has one that is implied in fact in the policy as contractual. As stated, under the law of restitution such a right runs against the person who benefits from "unjust enrichment" and in favor of the person who suffers loss thereby. The "enrichment" of the insured by the insurer through the insurer's bearing of unbargained-for defense costs is inconsistent with the insurer's freedom under the policy and therefore must be deemed "unjust."

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

16 Cal. 4th at 50-51 (internal citations and footnotes omitted).
Centex is essentially arguing that Travelers' alleged failure to
provide an immediate defense gave Centex a blank check to overbill
for defense costs.  Such an outcome would be inequitable.

Even if an insured could lose its right to reimbursement by
failing to provide an immediate defense, triable issues of fact
exist as to whether Travelers provided a timely defense to Centex
in the <u>Kent</u> action.  Centex tendered the defense of the <u>Kent</u> action
to Travelers on February 7, 2008.  Imamura Decl. Ex. D.  On
February 19, 2008, Travelers indicated that it was still
investigating the claim and requested additional information from
Centex.  <u>Id.</u> Ex. E.  Centex subsequently provided at least some of
the requested information.  <u>Id.</u> Ex. F.  On May 19, 2008, Travelers
agreed to defend Centex as an additional insured, but it noted that
it did not have sufficient information upon which to base its
determination of coverage, and therefore requested additional
information.  <u>Id.</u> Ex. G.  The Court declines to find that, as a
matter of law, Travelers unduly delayed responding to Centex's
tenders, especially in light of the fact that Travelers had a right
to conduct a reasonable investigation to determine whether it had a
duty to defend.  <u>Cf. State Farm Mut. Auto. Ins. Co. v. Flynt</u>, 17
Cal. App. 3d 538, 548 (Cal. Ct. App. 1971) ("'[T]he duty to defend
should be fixed by the facts which the insurer learns from the
complaint, the insured, or other sources.'")

Centex also argues that Travelers' reimbursement claim is
barred because it was a compulsory counterclaim in an earlier
action between Travelers and Centex pending before Judge Charles
Breyer in this Court, <u>Travelers v. Centex I</u>, <u>supra</u>.  In that

**United States District Court**
For the Northern District of California

action, Centex counterclaimed against Travelers for breach of
contract, declaratory relief, and bad faith because of Travelers'
alleged failure to honor its defense obligations in the <u>Kent</u>
Action.  '57 Action ECF No. 37 ¶¶ 37-42, 70.  Travelers filed an
answer in November 2010, but did not assert a counterclaim for
reimbursement.  '57 Action ECF No. 42.  Travelers asserts that it
did not learn that Centex was overbilling for defense costs until
Travelers deposed a number of Centex witnesses in April and May of
2011.  Trav. MSJ Reply/XMSJ Opp'n at 64-65.  In May 2011, Centex
moved to amend its counterclaim to dismiss its claims related to
the <u>Kent</u> action, arguing that Travelers would not be prejudiced by
such a dismissal.  '57 Action ECF No. 306.  On August 5, 2011,
Judge Breyer stayed <u>Travelers v. Centex I</u> and ordered Centex to
file an amended complaint.  '57 Action ECF No. 365.  The instant
action was filed on July 25, 2011, and Travelers amended its
complaint in this action to add a claim for reimbursement one month
later.  Over a year later, Judge Breyer dismissed <u>Travelers v.</u>
<u>Centex I</u> pursuant to a settlement reached by the parties.  '57
Action ECF No. 413.

Under Federal Rule of Civil Procedure 13, a counterclaim
arising out of the same transaction or occurrence that is the
subject matter of the opposing party's claim is compulsory.  Fed.
R. Civ. P. 13(a)(1).  However, "[n]othing in Rule 13 prevents the
filing of a duplicative action instead of a compulsory
counterclaim." <u>Adam v. Jacobs</u>, 950 F.2d 89, 93 (2d Cir. 1991)
(citing 6 Wright & Miller, <u>Federal Practice and Procedure</u> § 1418
(2d ed. 1990)).  Ideally, the court in the first-filed action
should stay the proceedings in the second-filed action once it

**United States District Court**
For the Northern District of California

becomes aware that the second-filed action involves a compulsory
counterclaim.  <u>Id.</u>  In this case, Travelers asserted its
reimbursement claim in this action while the <u>Travelers v. Centex I</u>
was still pending before Judge Breyer.  There is no indication that
either party alerted Judge Breyer to the duplicative claim.[7]  Since
Judge Breyer took no action to stay the Travelers' reimbursement
claim in this action, Travelers is not barred from pursuing it now.

Accordingly, Centex's cross-motion for summary judgment is
DENIED with respect to Travelers' claim for reimbursement.

## II.   <u>TRAVELERS' MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

Travelers moves for partial summary judgment on Centex's
counterclaims for breach of contract and bad faith on three
grounds: (1) Centex has not suffered damages that could support its
claims for breach of contract and bad faith; (2) Centex cannot
recover for breach of contract and bad faith with respect to the
<u>Conner</u> action; (3) Centex is not entitled to independent counsel in
any of the underlying actions because no significant conflict
exists.  The Court addresses each of these issues below.

### A.   <u>Centex's Damages</u>

Travelers first argues that Centex's counterclaims fail
because Centex has not produced any evidence that it sustained
damages.  Travelers is essentially arguing that it fully
compensated Centex for all claimed amounts submitted in connection

---

[7] Travelers moved to relate the instant action to <u>Travelers v. Centex I</u> in August 2012, long after it asserted a claim for reimbursement in connection with the <u>Kent</u> action.  '57 Action ECF No. 395.  Centex opposed Travelers' motion to relate, representing that the two matters involved different underlying construction defect actions.  '57 Action ECF No. 399 at 11.  The motion was ultimately denied by Judge Breyer.  '57 Action ECF Nos. 399, 406.

**United States District Court**
For the Northern District of California

1  with the underlying actions.  Centex disputes this claim on the

2  ground that Travelers has refused to reimburse Centex's counsel,

3  Newmeyer, at its full hourly rates.

4      It is undisputed that Centex paid Newmeyer out-of-pocket at a

5  rate of $225 per hour.  Centex claims that this is only a fraction

6  of Newmeyer's standard rates and that Newmeyer's attorneys bill as

7  much as $515 per hour.  Centex also claims that it was merely

8  fronting a portion of Newmeyer's rates until it could convince or

9  compel Travelers to fund Centex's defense and pay the remainder of

10  Newmeyer's fees.  Travelers disputes this account, arguing that

11  Newmeyer and Centex struck an under-the-table deal whereby Newmeyer

12  would charge Centex one rate and then charge Travelers a

13  significantly higher rate.  Travelers contends that it is only

14  obligated to reimburse Newmeyer at a rate of $225 per hour, because

15  that is the rate that Newmeyer was charging Centex.

16      Both parties point to the deposition testimony of Centex's

17  Assistant General Counsel, Jarrett Coleman.  Mr. Coleman testified

18  that Newmeyer bills Centex at a discounted rate of $225 per hour,

19  but Newmeyer ultimately expects that it will collect its full

20  hourly rate from Centex once Centex is reimbursed for defense costs

21  by its insurance carriers.  Myron Decl. Ex. F at 70.  When asked

22  what would happen if Centex's insurance claims were unsuccessful,

23  Mr. Coleman responded: "You know, we ultimately will have a

24  discussion about where that ends . . . depending on how much

25  recovery.  It really has not been an issue with us."  Id. at 71.

26  Centex argues that this testimony shows that Newmeyer and Centex

27  never agreed to a rate of $225 per hour.  Travelers argues that

28  this testimony shows that Centex was never obligated to pay

United States District Court
For the Northern District of California

1   Newmeyer anything more than $225 per hour.

2        The Court finds that there is a triable issue of fact as to

3   exactly what rate was agreed to by Newmeyer and Centex.   Thus,

4   there is also a triable issue of fact as to Travelers'

5   reimbursement obligations in the underlying actions, as well as

6   Centex's damages.   Accordingly, Travelers' motion for summary

7   judgment on this issue is DENIED.

8        **B.   The Conner Action**

9        Next, Travelers argues that Centex cannot sustain its burden

10  on it counterclaims for breach of contract and bad faith with

11  respect to the Conner action because Travelers promptly agreed to

12  provide a full and complete defense of that action.   It is

13  undisputed that Centex refused to accept the defense offered by

14  Travelers because of a dispute over the selection of legal counsel.

15  Centex wanted to appoint Newmeyer, its own independent counsel.

16  Travelers wanted to appoint David Lee of the Law offices of Lee,

17  Hernandez, Brooks, Garafalo & Blake.   Centex contends that

18  Travelers breached its duty to defend in the Conner action by (1)

19  failing to immediately defend Centex and (2) refusing to provide a

20  full and complete defense.[8]

21           **i.   The duty to provide an immediate defense**

22        As discussed at length in Section I.D, the duty to defend is

23  immediate.   Buss, 16 Cal. 4th at 49.   However, California courts

24  have yet to enunciate exactly what an immediate defense entails.

25  In Travelers v. Centex I, Judge Breyer found that Travelers

26  provided Centex with an immediate defense in a number of other

27  _____

28  [8] Centex also argues that Travelers breached its duty to defend by
    failing to appoint independent counsel.   This issue is discussed in
    Section II.C infra.

23

construction defect actions when it waited three to four months to accept Centex's tenders. 2011 WL 1225982, at *4. Judge Breyer reasoned that "an insurer must reasonably investigate to determine if a duty to defend exists" and, "if there was any unreasonable delay in [Travelers'] response to [Centex's] tenders, it occurred because [Centex] failed to promptly provide the reasonable, requested information to facilitate [Travelers'] investigation." Id. The facts here are similar. Centex tendered the Conner action on September 8, 2010, and Travelers asked for additional information on September 22, 2010. Owens Decl. Exs. O27, O28, O38. After receiving and reviewing this additional information, Travelers agreed to provide an equitable defense on January 21, 2011. Id. Ex. O29.

Centex argues that the 135-day delay in the Conner action is unreasonable, pointing to the California Fair Claims Settlement Practices ("Fair Claims") regulations. Centex XMSJ/MSJ Opp'n at 54. The Fair Claims regulation cited by Centex provides: "Upon receiving proof of claim, every insurer . . . shall immediately, but in no event more than forty (40) calendar days later, accept or deny the claim . . . ." Cal. Code Regs. tit. 10, § 2695.7(b). Travelers argues that Centex submitted a "notice of legal action," not a "proof of claim," and thus the forty-day requirement is inapplicable here. Trav. MSJ Reply/XMSJ Opp'n at 41.

The Fair Claims regulations define "proof of claim" as "any evidence or documentation in the possession of the insurer, whether as a result of its having been submitted by the claimant or obtained by the insurer in the course of its investigation, that provides any evidence of the claim and that reasonably supports the

1   magnitude or the amount of the claimed loss."  Cal. Code Regs. tit.

2   10, § 2695.2(s).  The regulations define "notice of legal action"

3   as "notice of an action commenced against the insurer with respect

4   to a claim, or notice of action against the insured received by the

5   insurer, or notice of action against the principal under a bond,

6   and includes any arbitration proceeding."  <u>Id.</u> § 2695.2(o).  The

7   regulations require insurers to respond to communications regarding

8   claims within certain time periods, but they relieve insurers from

9   those requirements where a notice of legal action is involved.  <u>Id.</u>

10  § 2695.5(b), (e).

11      Travelers interpretation of the regulations is more

12  convincing, especially since the "magnitude or the amount of the

13  claimed loss" is generally unknown at the time that an insured asks

14  an insurer to defend a legal action.  <u>See id.</u> § 2695.2(s).  In any

15  event, regardless of whether Centex's tender constitutes a notice

16  of legal action or a proof of claim, the regulations are not

17  dispositive.  They do not provide that a delay exceeding forty days

18  constitutes evidence of bad faith on the part of the insurer.  Nor

19  do they provide that an insurer may delay responding to a notice of

20  legal action for 135 days and escape liability for breach of

21  contract or bad faith.

22      The Court finds that the best course would be to allow the

23  jury, considering the totality of the evidence, to determine

24  whether Travelers breached its duty to defend or engaged in bad

25  faith in handling Centex's claim.  Accordingly, the Court declines

26  to find that Travelers provided Centex with an immediate defense as

27  a matter of law.

28  ///

**United States District Court**
For the Northern District of California

1         **ii.  The duty to provide a full and complete defense**

2        Under California law, "[i]t is settled that where an insurer

3   has a duty to defend, the obligation generally applies to the

4   entire action, even though the suit involves both covered and

5   uncovered claims, or a single claim only partially covered by the

6   policy." <u>Presley Homes, Inc. v. Am. States Ins. Co.</u>, 90 Cal. App.

7   4th 571, 575 (Cal. Ct. App. 2001) (citing <u>Buss</u>, 16 Cal. 4th at 48-

8   49).  Centex argues that Travelers breached its duty to defend by

9   failing to offer a full and complete defense in the <u>Conner</u> action.

10  Centex XMSJ/MSJ Opp'n at 56-58, 81.  Specifically, Centex points to

11  the fact that, in agreeing to defend the <u>Conner</u> action, Travelers

12  reserved its rights under the Executive Landscape policy:

13

14       [P]lease be advised that the additional insured coverage
     for Executive [Landscape] is limited to covered damages
     arising out of the Executive[] [Landscape's] work as a

15       landscape subcontractor . . . .  Please be advised that
     Travelers as an additional insured carrier for Centex

16       will only consider reasonable and necessary fees and
     costs on an equitable basis from 09/08/10 (post tender)

17       forward to fund and/or resolve the additional insured
     obligation for this matter.

18

19  <u>Id.</u> (citing Owens Decl. Ex. O29).  Lacking from Centex's discussion

20  is any indication that Travelers withheld defense funds requested

21  by Centex.  In fact, Travelers has submitted evidence that it made

22  defense payments in connection with the <u>Conner</u> action and offered

23  to appoint counsel to represent Centex.  <u>See</u> Shaw Decl. Ex. A.  The

24  Court is aware of no authority which holds that an insurer fails to

25  provide a full and complete defense when it merely reserves its

26  rights under the policy.

27       Nevertheless, for the reasons set forth in Section II.B.i

28  <u>supra</u>, the Court DENIES Travelers motion for summary judgment on

**United States District Court**
For the Northern District of California

Centex's claims for breach of contract and bad faith with respect
to the Conner action.

### C.   **Centex's Right to Cumis Counsel**

In California, an insured is entitled to independent counsel,
a.k.a. Cumis counsel, where a conflict exists because of an
insurers' control over the litigation.[9]  Cal. Civ. Code § 2860.  "A
mere possibility of an unspecified conflict does not require
independent counsel.  The conflict must be significant, not merely
theoretical, actual, not merely potential." Dynamic Concepts, Inc.
v. Truck Ins. Exch., 61 Cal. App. 4th 999, 1007 (Cal. Ct. App.
1998).  Centex asserts a right to Cumis counsel in the underlying
actions based on Travelers' reservations of rights, as well as
perceived ethical conflicts on the part of Travelers' counsel.
Travelers now moves for summary judgment on this issue, arguing
that the potential conflicts cited by Centex do not justify the
appointment of Cumis counsel.  Trav. MSJ at 29-33.  For the reasons
set forth below, the Court agrees with Travelers.

### i.   **Travelers reservation of rights**

Cumis counsel is generally required "where the insurer
reserves its rights on a given issue and the outcome of that
coverage issue can be controlled by the insurer's retained
counsel." James 3 Corp. v. Truck Ins. Exch., 91 Cal. App. 4th
1093, 1101 (Cal. Ct. App. 2001).  However, "there is no entitlement
to independent counsel where the coverage issue is independent of,

---

[9] The term "Cumis counsel" is derived from the California Court of
Appeal's decision in San Diego Navy Fed. Credit Union v. Cumis Ins.
Soc'y, Inc., 162 Cal. App. 3d 358 494 (Cal. Ct. App. 1984),
superseded by statue, Cal. Civ. Code § 2860, as recognized in
United Enters., Inc. v. Super. Ct., 183 Cal. App. 4th 1004, 1010
(Cal. Ct. App. 2010).

United States District Court
For the Northern District of California

1  or extrinsic to, the issues in the underlying action."  Gafcon,

2  Inc. v. Ponsor & Assocs., 98 Cal. App. 4th 1388, 1422 (Cal. Ct.

3  App. 2002) (quotations omitted).  "Stated otherwise, 'where the

4  reservation of rights is based on coverage disputes which have

5  nothing to do with the issues being litigated in the underlying

6  action, there is no conflict of interest requiring independent

7  counsel.'"  Id.

8      In support of its right to Cumis counsel, Centex points to a

9  number of reservations of rights on the part of Travelers.  First,

10  Centex points out that Travelers reserved its right to deny

11  coverage on the grounds that there is either no property damage or

12  that the only property damage was to Centex's subcontractor's own

13  work.  Centex XMSJ/MSJ Opp'n at 91-92.  Under Travelers' policies,

14  Centex bore the risk of repairing or replacing faulty workmanship,

15  while Travelers bore the risk that faulty workmanship would give

16  rise to other types of property damage.  Centex argues that

17  Travelers' reservations create an incentive for Travlers' defense

18  counsel to show that Centex's subcontractor's work was merely

19  faulty and did not give rise to property damage that would be

20  covered under the policy.   Id.

21      This same argument was considered and rejected by the

22  California Court of Appeal in Blanchard v. State Farm Fire &

23  Casualty Co., 2 Cal. App. 4th 345 (Cal. Ct. App. 1991).  Like this

24  case, Blanchard involved an insurance dispute over an underlying

25  construction defect action concerning subcontractors' work.  2 Cal.

26  App. 4th at 348-49.  Like this case, the insurance policy at issue

27  in Blanchard did not cover the risk of repairing or replacing

28  faulty workmanship by the subcontractors.  Id. at 348.  Like this

United States District Court
For the Northern District of California

case, the general contractor in <u>Blanchard</u> argued that it was entitled to <u>Cumis</u> counsel because the insurer reserved its rights to deny coverage excluded by the policy.  <u>Id.</u>  The court rejected this argument, reasoning that "insurance counsel had no incentive to attach liability to [the general contractor].  [The insurer] recognized its liability for certain damages flowing from [the general contractor]'s liability; thus it was to the advantage of both [the general contractor] and [the insurer] to minimize [the general contractor]'s underlying liability." <u>Id.</u> at 350.

In any event, Centex's argument is unpersuasive.  The work of Centex's subcontractors either caused other property damage or it did not.  If the subcontractors' work did cause other property damage, then that property damage is covered under Travelers' policies.  If it did not, then neither Travelers nor Centex is liable for that property damage.  Thus, the interests of Centex and Travelers are aligned.  Centex has failed to point to any conflict, either theoretical or actual.  Further, under Centex's reasoning, an insured would be entitled to <u>Cumis</u> counsel whenever an insurer chooses to reserve its right to deny coverage for losses not covered by its policies.  This is not the law.

Next, Centex argues that it has a right to <u>Cumis</u> counsel because Travelers reserved its right to deny coverage for work performed by Centex or work performed by subcontractors other than those insured by Travelers.  Centex XMSJ/MSJ Opp'n at 91.  Centex reasons that this reservation creates an incentive for Travelers to pin the fault on parties other than covered subcontractors in order to eliminate coverage.  <u>Id.</u>  Centex contends that the issue of who caused the damage to the homeowners' properties in the underlying

**United States District Court**
For the Northern District of California

1   actions is currently being litigated, pointing to cross complaints

2   it filed against its subcontractors, including West Coast, Fresno

3   Precision, Executive Landscape, American Woodmark, and Foremost

4   Superior.  Id. (citing Owens Decl. Exs. O53, O56).

5        The Court finds that the conflicts cited by Centex are either

6   non-existent or theoretical.  Travelers' counsel could not possibly

7   attribute the alleged construction defects to Centex, because it is

8   undisputed that Centex did not perform any work of its own.

9   Further, Centex has failed to enunciate how Travelers' chosen

10  counsel could possibly manipulate the evidence to pin the alleged

11  construction defects on subcontractors who are not insured by

12  Travelers.  Travelers' insureds, West Coast, Fresno Precision,

13  Executive Landscape, American Woodmark, and Foremost Superior,

14  installed countertops, cabinets, landscaping, and tub and shower

15  surrounds.  It is unclear how Travelers' counsel could, for

16  example, attribute property damage arising from American Woodmark's

17  allegedly defective cabinets to some other construction defect or

18  some other contractor.  As Travelers points out, a broken cabinet

19  cannot be transformed into a broken pipe.  These are facts beyond

20  the control of counsel.  Moreover, the fact that Centex elected to

21  file a cross complaint against dozens of its subcontractors does

22  not show that there is a dispute over which subcontractor caused

23  what damage.  It merely shows that Centex may be able to recover

24  from third parties, regardless of who is at fault.

25       Centex also claims that it is entitled to Cumis counsel

26  because Travelers reserved its right to deny coverage for property

27  damage that occurred outside of the policy period.  Centex XMSJ/MSJ

28  Opp'n at 92-93.  Specifically, Travelers concluded that the

United States District Court
For the Northern District of California

property damage alleged in some instances must have occurred after the policy period because the homes at issue were completed after the policy period. <u>See</u> Owens Decl. O18.  Once again, it is unclear how Travelers' counsel could possibly manipulate these facts to affect coverage.  Centex has failed to present any evidence that there is a dispute about when the subject homes were completed.

Finally, Centex argues that it is entitled to <u>Cumis</u> counsel because Travelers has reserved its right to seek reimbursement for defense fees that do not arise out of Centex's subcontractors' work.  XMSJ/MSJ Opp'n at 93-95.  This issue was addressed by the California Court of Appeal in <u>James 3 Corporation</u>.  The court refused to adopt a per se rule that independent counsel was required whenever an insurer reserved its right to seek contribution.  <u>James 3 Corp.</u>, 91 Cal. App. 4th at 1107-08.  The court ultimately held that the insured was not entitled to independent counsel, reasoning: "[T]he allocation of defense costs between covered and noncovered claims is not an issue that will be litigated in the underlying . . . action.  Moreover, there is nothing in the record to suggest that defense counsel would violate his ethical duties to completely defend the insureds . . . ."  <u>Id.</u> at 1109 (internal quotations and citations omitted).

Likewise, Centex has failed to point to any actual conflict that would arise as a result of Travelers' reservation of its contribution rights.  Centex argues that because Travelers only intends to pay for an equitable share of the defense based on the liability of its subcontractors, it may seek to orchestrate a smaller settlement on behalf of its subcontractors so that it can seek more money back from Centex.  However, it is entirely unclear

1   how Travelers' counsel could possibly manipulate the plaintiffs in

2   the underlying actions into settling for a smaller amount.

3        Centex further argues that Travelers' refusal to give up its

4   reimbursement rights could delay settlement, pointing to the

5   settlement negotiations in <u>Allie v. Centex</u> (the <u>Allie</u> Action), a

6   construction defect case at issue in <u>Travelers v. Centex I</u>.  Centex

7   XMSJ/MSJ Opp'n at 94 (citing Ferrentino Decl. ¶¶ 26-35).  At a

8   settlement conference, the <u>Allie</u> plaintiffs and the subcontractors

9   involved in the action indicated that they were willing to settle

10  so long as Centex waived its claims for defense fees against the

11  subcontractors.  Ferrentino Decl. ¶ 26.  Centex's counsel was

12  concerned about giving up Centex's subrogation rights because

13  Travelers had threatened to seek reimbursement for defense fees

14  paid in that action.  <u>Id.</u>  As a result, the settlement was delayed.

15  <u>Id.</u> ¶¶ 27-35.

16       There are several problems with this line of argument.  First,

17  Centex has pointed to no evidence that Travelers' right to

18  contribution has affected the settlement of any of the underlying

19  actions at issue here.  Second, Travelers' right to contribution

20  would have been an issue regardless of who represented Centex in

21  the <u>Allie</u> action and thus was extrinsic to the underlying action.

22  <u>See</u> <u>Novak v. Low, Ball & Lynch</u>, 77 Cal. App. 4th 278, 285 (Cal. Ct.

23  App. 1999) ("[A]lthough independent counsel controls the insured's

24  defense, that control does not extend to preventing the insurer

25  from exercising its contractual right to settle claims.").  Third,

26  Travelers intervention resulted in a favorable settlement in the

27  <u>Allie</u> action: the <u>Allie</u> subcontractors ultimately agreed to allow

28  Centex to reserve its right to seek defense contributions in the

**United States District Court**
For the Northern District of California

1  event that Travelers pursued Centex for reimbursement of defense

2  fees.  Lee Decl. ¶ 17.

3       Accordingly, the Court finds that Travelers' reservations of

4  rights did not give Centex the right to retain <u>Cumis</u> counsel.

5            **ii.  <u>Ethical conflicts</u>**

6       In addition to Travelers' reservations of rights, Centex

7  points to a number of other purported ethical conflicts which it

8  claims justify the appointment of <u>Cumis</u> counsel.  First, Centex

9  argues that Travelers is seeking to control the defense of two

10 adverse parties.  XMSJ/MSJ Opp'n at 96.  As noted above, Centex

11 filed cross complaints against a number of its subcontractors,

12 including West Coast, Fresno Precision, Executive Landscape,

13 American Woodmark, and Foremost Superior.  Travelers wants to

14 appoint its own counsel to represent both Centex and the

15 subcontractors in these related actions.  Although different

16 attorneys would represent Centex and the subcontractors, Centex

17 contends that these attorneys are conflicted because they both

18 report to Travelers.  This argument was addressed and rejected in

19 <u>Travelers v. Centex I</u>:

20      [Centex]'s cross-complaints against the subcontractors
        are for indemnification.  [Centex]'s liability to the
        plaintiffs in the <u>Allie</u> and <u>Agles</u> Actions will be
21      derivative from the liability of the subcontractors who
        performed the work.  Although [Travelers] insures
22      [Centex], American Woodmark, and Foremost [Superior], it
        will have the same interest in defending all three
23      entities against plaintiffs' general allegations in both
        lawsuits.  [Centex]'s claim that a conflict of interest
24      exists on this basis is "merely theoretical.

25 2011 WL 1225982, at *8.  The facts in this case are practically

26 identical, and there is no indication that the legal standards have

27 changed.

28      Next, Centex argues that it is entitled to <u>Cumis</u> counsel

1   because it is being sued by Travelers in a number of other actions.

2   Centex XMSJ/MSJ Opp'n at 98-99.  Centex cites to Truck Insurance

3   Exchange v. Fireman's Fund Insurance Co., 6 Cal. App. 4th 1050

4   (Cal. Ct. App. 1992), for the proposition that an insured is

5   entitled to independent counsel whenever it is sued by its insurer.

6   Id.  But Truck merely holds that an attorney may not concurrently

7   represent clients whose interests conflict.  6 Cal. App. 4th at

8   1055.  Moreover, the rule proposed by Centex is circular.  Under

9   Centex's logic, anytime an insured wishes to obtain Cumis counsel,

10  it need only sue its insurer to create a conflict of interest.

11      Finally, Centex argues that Travelers' chosen counsel, Mr.

12  Lee, faces many conflicts because his website identifies

13  "relationships" with a number of insurance carriers against which

14  Centex has claims for defense and indemnity.  Centex XMSJ/MSJ Opp'n

15  at 99.  But there is no indication that Mr. Lee actually represents

16  any of these insurance companies.  Centex also argues that its

17  expert report confirms Mr. Lee's conflicts.  But the only reference

18  to Mr. Lee in this report is completely irrelevant.  See Hayes

19  Decl. Ex. H28 at 5 n.2. ("My opinions are not directed towards the

20  professional conduct or integrity of Mr. Lee or his law firm; nor

21  do my opinions state or imply any breach of any professional

22  standard by Mr. Lee or his law firm, since I do not have sufficient

23  information to opine on Mr. Lee's or his firm's conduct.").

24      For these reasons and the reasons set forth in Section II.C.i,

25  the Court GRANTS Travelers' motion for partial summary judgment

26  with respect to Centex's claim that it is entitled to Cumis

27  counsel.

28  ///

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CONCLUSION**

For the foregoing reasons, the Court GRANTS in part and DENIES in part Centex's and Travelers' cross-motions for partial summary judgment.  The Court GRANTS Centex's motion to the extent that it seeks dismissal of Travelers' claim that Centex breached its duty to cooperate by failing to seek recovery of defense fees and costs incurred in underlying actions from other insurance carriers.  The Court GRANTS Travelers motion to the extent that it seeks a determination on Centex's entitlement to <u>Cumis</u> counsel.  The cross-motions for partial summary judgment are DENIED in all other respects.  The Court also VACATES its May 10, 2012 Order, ECF No. 56, and DENIES Centex's November 4, 2011 motion for partial summary judgment, ECF No. 21.


IT IS SO ORDERED.


Dated: April 8, 2013

_____
UNITED STATES DISTRICT JUDGE