United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, FIDELITY & GUARANTY INSURANCE COMPANY, THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT, AND ST. PAUL MERCURY INSURANCE COMPANY,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>CENTEX HOMES and DOES 1 through 10 inclusive, | Case No. 11-3638-SC<br><br>Related Cases: 12-0371-SC, 13-0088-SC<br><br>ORDER DENYING MOTION FOR <u>CIVIL CONTEMPT SANCTIONS</u> |
| CENTEX HOMES,<br><br>　　　　Counterclaimant,<br><br>　　v.<br><br>TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, et al.,<br><br>　　　　Counterdefendants. | |

## I. INTRODUCTION

The above-captioned plaintiffs (collectively, "Travelers") now move to find Defendant Centex Homes ("Centex") in civil contempt for failing to comply with a Court order regarding the filing of certain documents under seal. ECF No. 173 ("Mot."). The motion is fully briefed. ECF Nos. 177 ("Opp'n"), 180 ("Reply").[1] The matter is appropriate for resolution without oral argument per Civil Local Rule 7-1(b). For the reasons set forth below, the Motion is DENIED.

## II. BACKGROUND

Centex, a general contractor and homebuilder, is named as an additional insured on a number of insurance policies issued by Travelers. Homeowners have sued Centex in several construction defect actions, and Centex tendered those actions to Travelers for defense and indemnity. This case arises out of a dispute between the parties over whether Travelers has breached its duty to defend; whether Centex has a right to appoint its own counsel, Newmeyer and Dillion LLP ("N&D"), to defend it in the underlying construction defect actions; and whether Travelers has a duty to pay for all the amounts billed by N&D, among other things.

The parties recently filed cross-motions for summary judgment. In connection with those motions, Travelers filed invoices that N&D had submitted to Centex for its work on the underlying construction defect cases. Pursuant to the parties' stipulated protective order, Travelers brought an administrative motion to determine

---

[1] Pursuant to a stipulation by the parties and with the Court's leave, ECF No. 187, Centex also filed a surreply brief, ECF No. 190 ("Surreply").

whether those invoices should be filed under seal. ECF No. 158 ("Admin. Mot."). The invoices filed by Travelers, which were attached to the declaration of Lindsee B. Falcone ("Falcone"), list the date of the work performed, the attorney that performed the work, a description of the work, the number of hours billed, and the total fees for professional services rendered. ECF No. 158-2 ("Falcone Decl.") Exs. A-H.

The motion to seal was granted in part and denied in part. ECF No. 163 ("Sealing Order"). The Sealing Order directed Centex to file unredacted versions of the billing records under seal with the Court and redacted versions in the public record. Id. at 4. Only the descriptions of the work performed were to be redacted from the billing records filed to the public record. Id. On March 4, 2013, Centex filed in the public record versions of the invoices which look identical to the invoices attached to the Falcone Declaration, except that the description of the work performed was redacted. ECF No. 166.

Travelers now argues that the invoices Centex lodged with the Court on March 4, 2013 do not fully comply with the Court's Sealing Order. Mot. at 4. The crux of the argument is that there are purportedly two sets of N&D invoices, and that Centex filed the first set when it should have filed the second (or perhaps both). The first set of invoices, the so-called "paper invoices," were attached to the Falcone Declaration. See id. Centex lodged a redacted copy of these invoices with the Court on March 4. The second set, the so-called "electronic invoices," were purportedly produced later in discovery, after Travelers learned of their existence at the deposition of Centex's general counsel. The

3

electronic invoices, which Travelers filed in connection with the instant motion, do not appear to be formal invoices. Rather, they appear to be spreadsheets containing data concerning N&D's billing that may have been used to generate the paper invoices. See ECF No. 173-1 ("Perea Decl.") Ex. E. When Centex's general counsel discussed these spreadsheets at his deposition, he stated: "Well, it's not a printed bill. I get my bill electronically." Perea Decl. Ex. C at 10.

In its moving papers, Travelers argues that Centex should have lodged the electronic invoices with the Court because, unlike the paper invoices, they show that N&D offered Centex a "line item discount." Mot. at 5. Travelers contends that this discount is central to its claim that N&D was providing Centex with a discount for attorney services yet billing Travelers for the full undiscounted amount. Travelers concludes that Centex should be held in civil contempt for "hiding the ball."

### III. DISCUSSION

To prevail on its motion for civil contempt, Travelers must establish by clear and convincing evidence that (1) a Court order was in effect, (2) the order required specified conduct by Centex, and (3) the Centex failed to comply with the Court's order. See United States v. City of Jackson, 359 F.3d 727, 731 (5th Cir. 2004). The Court finds that Travelers has not even come close to proving the third element.

In its moving papers, Travelers argues that the so-called electronic invoices were subject to the Sealing Order and thus should have been lodged with the Court. Mot. at 4-5. This

4

argument borders on the frivolous.  Travelers never filed the electronic invoices in connection with the Administrative Motion -- it only filed the paper invoices.  Accordingly, it is entirely unclear why Centex should have interpreted the Sealing Order to pertain to documents that were not before the Court.  If Travelers wanted Centex to file the electronic invoices in connection with its motion for summary judgment, Travelers should have attached the electronic invoices to the Falcone Declaration or the Administrative Motion.  In short, Centex's conduct was consistent with the Sealing Order: Centex filed a version of the paper invoices in the public record with the work descriptions redacted.

Travelers asserts two new arguments on reply.[2]  First, Travelers argues that the electronic invoices and paper invoices are one and the same.  Reply at 3.  As an initial matter, this argument is contrary to the facts set forth in Travelers' moving papers.  See Mot. at 5 ("The [N&D] paper invoices produced by Centex in discovery did not contain any indication on them of a line item discount like the electronic versions described by [Centex's general counsel].").  Further, the argument is contrary to the evidence before the Court.  The paper invoices, which are attached to the Falcone Declaration and which Centex lodged with the Court, look nothing like the electronic invoices.  Compare Falcone Decl. Exs. A-H with Perea Decl. Ex. E.

Second, Travelers argues on reply that the paper invoices lodged with the Court contain secret redactions.  Reply at 3-4.

---

[2] The Court is generally not inclined to address new arguments raised on reply.  The Court makes an exception here since Travelers' new arguments do nothing to alter the Court's conclusion, and because Centex was allowed to respond to these arguments on surreply.

5

Specifically, Travelers contends that the original paper invoices contained a column meant to include the total cost for each billing entry and that the entire column was deleted -- without any redaction notation -- but for the total charges at the bottom of each invoice. Id. The "secretly deleted column" supposedly reflects the line item discounts offered to Centex. This is a serious charge, and Travelers has not offered evidence to back it up. For example, Centex has not produced any N&D invoices which include subtotals for each billing entry. Further, Joseph Ferrentino ("Ferrentino"), a partner at N&D, has filed a declaration stating it is not N&D's custom and practice to include such a column in its invoices. ECF No. 190-2 ("Ferrentino Decl.") ¶ 6. In any event, if Travelers believed that the paper invoices had been doctored, it is unclear why it submitted them without comment in support of its motion for summary judgment.

## IV. CONCLUSION

In sum, Travelers has produced no evidence that even remotely suggests that Centex failed to comply with the Court's Sealing Order. Accordingly, Travelers' motion to hold Centex in civil contempt is DENIED.

IT IS SO ORDERED.

Dated: June 24, 2013

_____
UNITED STATES DISTRICT JUDGE