IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, FIDELITY & GUARANTY INSURANCE COMPANY, THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT, AND ST. PAUL MERCURY INSURANCE COMPANY,<br><br>    Plaintiffs,<br><br>  v.<br><br>CENTEX HOMES and DOES 1 through 10 inclusive,<br><br>    Defendants. | Case No. 11-3638-SC<br><br>ORDER GRANTING DEFENDANT'S <u>MOTION FOR RECONSIDERATION</u> |
| CENTEX HOMES,<br><br>    Counterclaimant,<br><br>  v.<br><br>TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, et al.,<br><br>    Counterdefendant. | |

## I. INTRODUCTION

On April 8, 2013 the Court issued an order granting in part and denying in part the above-captioned parties' cross-motions for partial summary judgment. ECF No. 170 ("Apr. 2013 Order"). Among other things, the April 2013 Order vacated in part a May 10, 2012 Order granting Centex's prior motion for partial summary judgment. ECF No. 56 ("May 2012 Order"). With the Court's leave, Defendant Centex Homes ("Centex") now moves for reconsideration of the April 2013 Order. ECF No. 195 ("Mot."). The primary question raised by the Motion is under what circumstances does an insurer forfeit its right to control the defense of its insured. The Motion is fully briefed, ECF Nos. 197 ("Opp'n"), 198 ("Reply"), and appropriate for determination without oral argument per Civil Local Rule 7-1(b). Having reviewed the arguments presented by the parties, the Court finds that its April 2013 Order is inconsistent with a case decided by the California Court of Appeal in May 2013, J.R. Marketing, L.L.C. v. Hartford Casualty Insurance Co., 216 Cal. App. 4th 1444 (Cal. Ct. App. 2013). Accordingly, the Court finds that its original decision was the correct one, and that its April 2013 Order was in error. Centex's motion for reconsideration is GRANTED.

## II. BACKGROUND

### A. Factual Background

As this is not the first time the Court has recounted the facts in this matter, the Court borrows extensively from previous orders. Centex participates in the development of residential communities throughout California, though it does not perform any

2

actual construction work.  Instead, it hires subcontractors to build the homes it sells.  These subcontractors include American Woodmark ("Woodmark"), Foremost Superior Marble ("Foremost"), West Coast Countertops ("West Coast"), Fresno Precision Plastics ("Fresno"), and Executive Landscape ("Executive").  Each of these subcontractors purchased commercial general liability insurance from the above-captioned Defendants (collectively, "Travelers"), and the policies name Centex as an additional insured.

This case arises from a number of underlying construction defect lawsuits filed against Centex in California state court. These underlying suits include the Adkins, Garvey, Acupan, and Conner actions.  Centex tendered each of these actions to Travelers pursuant to one or more of the insurance policies described above. It is undisputed that, in each of these actions, some time elapsed between Centex's tender and Traveler's decision to provide a defense subject to a reservation of rights.  In the interim, Centex retained the law firm of Newmeyer and Dillion LLP ("Newmeyer") to defend it in the underlying actions.  When Travelers finally agreed to provide a defense, it insisted on appointing its own counsel. Centex insisted on retaining Newmeyer, arguing that Travelers waived its right to control the defense by waiting too long to provide one.  As the facts surrounding the tender of the Adkins, Garvey, Acupan, and Conner actions are pertinent to the instant motion, the Court recounts them below.

Centex tendered the defense and indemnification of the Garvey action to Travelers under the Woodmark policy on July 2, 2010. Travelers subsequently requested additional information concerning the lawsuit.  On February 16, 2011, Travelers concluded that the

3

Garvey action was not covered under the Woodmark policy and declined to participate in the defense and indemnity of Centex. Travelers also indicated that it was willing to reconsider the denial and that its denial should not be construed as a waiver of any rights or defenses available to it under the policy. A few days later, Centex filed suit against Travelers for its failure to defend the Garvey action, as well as the Adkins action, which is discussed below. On April 18, 2011, Travelers reversed course, stating that it would agree to participate in the defense of Centex, subject to a reservation of rights. Centex subsequently dismissed its then-pending lawsuit without prejudice.

Centex tendered the Adkins action to Travelers under the Woodmark and Foremost policies on April 1, 2010. On September 14, 2010, Travelers informed Centex that it had no defense or indemnity obligation in the Adkins action under the Woodmark policy and issued a declination of coverage letter. At the time, Travelers indicated that it was willing to reconsider the denial and that it did not waive any of its rights under the policy while investigating the matter. Travelers also declined coverage under the Foremost policy on January 7, 2011. Again, Travelers stated that it did not waive any of its rights under the policy. Several months later, after Centex sued Travelers for coverage, Travelers agreed to provide a defense subject to a full reservation of rights. Travelers also continued to dispute that it had an obligation to provide coverage under both policies.

Centex first tendered the Acupan action to Travelers under the Fresno policy on April 8, 2010. On September 13, 2010, Travelers concluded that there was no potential for coverage under the Fresno

4

policy and declined to provide a defense. ECF No. 148-14. Several months later, on June 28, 2011, Travelers reversed course and agreed to provide a defense pursuant to the Fresno Policy, subject to a reservation of rights. ECF No. 148-18. Centex also tendered the Acupan action under the West Coast policy on January 21, 2011. ECF No. 148-24. On June 1, 2011, after requesting and receiving additional information, Travelers agreed to participate in Centex's defense under the West Coast policy, subject to a reservation of rights. ECF Nos. 148-16, 148-26.

Centex tendered the Conner action to Travelers under the Executive policy on September 8, 2010. ECF No. 148-27. About two weeks later, on September 22, Travelers requested additional information. ECF No. 148-28. Centex responded to the request that very same day. ECF No. 146-11. On January 21, 2011, Travelers agreed to participate in the Centex's defense in the Conner action under the Executive policy subject to a reservation of rights. ECF No. 148-29.

**B. Procedural History**

On July 25, 2011, Travelers filed the instant action against Centex. ECF No. 1. One month later Travelers filed a First Amended Complaint, which asserts causes of action for (1) declaratory relief, (2) breach of contract, (3) breach of the implied covenant of good faith and fair dealing, and (4) reimbursement. Among other things, Travelers seeks a judicial declaration that it has the right to control Centex's defense in the Garvey, Adkins, Acupan, and Conner actions.

On May 10, 2012, the Court issued an order granting Centex's motion for partial summary judgment and partial judgment on the

pleadings. Among other things, the Court found that, since the duty to defend is immediate, Travelers lost its right to control the defense of the Garvey and Adkins actions when it declined to participate in the defense of those actions in late 2010 and early 2011. May 2012 Order at 9-10. The Court also rejected Travelers' argument that Centex needed to show that Travelers intended to waive its right to control the defense of Garvey and Adkins actions, reasoning: "[A] court need not discern an insurer's intent to determine whether it has breached that duty. A delay is evidence enough." Id. at 13.

The Court reconsidered and reversed this decision when it ruled on the parties' cross-motions for partial summary judgment on April 8, 2013. Centex had asked the Court to find that Travelers' delay in responding to Centex's tenders of the Acupan and Conner actions divested Travelers of its right to control the defense of those actions. April 2013 Order at 11. Travelers responded that, under Chase v. Blue Cross of California, 42 Cal. App. 4th 1142 (Cal. Ct. App. 1996), an insurer could only lose a contractual right to arbitration under theories of waiver, forfeiture, or estoppel. See id. The Court agreed, finding that "an insurer cannot lose its right to control the defense of its insured through delay alone. Rather, it may only lose that right through waiver, forfeiture, or estoppel, none of which have been proven by Centex." Id. at 13. The Court denied Centex's motion for summary judgment on the issue of whether Travelers had lost its right to control the defense of the Acupan and Conner actions, and vacated its prior decision that Travelers had lost its right to control the defense of the Garvey and Adkins actions. Id. at 16. The Court

1 also found that there were triable issues of fact as to whether
2 Travelers had a duty to defend the Garvey, Adkins, Acupan, and
3 Conner actions.  Id. at 6.
4     Centex subsequently moved for leave to file a motion for
5 reconsideration concerning the Court's vacation of the May 2012
6 Order and the Court's findings with respect to the Garvey and
7 Adkins actions.  ECF No. 183.  The Court granted Centex leave to
8 file the motion.  ECF No. 186.

**III. LEGAL STANDARD**

    A party may ask a court to reconsider and amend a previous order pursuant to Federal Rule of Civil Procedure 59(e) and Civil Local Rule 7-9.  Rule 59(e) offers "an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources."  Carroll v. Nakatani, 342 F.3d 934, 945 (9th Cir. 2003) (quotations omitted).  Civil Local Rule 7-9(b) provides that a party moving for reconsideration must generally show: (1) an intervening change in controlling law, (2) the emergence of new material facts, or (3) a manifest failure by the Court to consider material facts or dispositive legal arguments.  "Whether or not to grant reconsideration is committed to the sound discretion of the court."  Navajo Nation v. Confederated Tribes and Bands of the Yakama Indian Nation, 331 F.3d 1041, 1046 (9th Cir. 2003).

    As Centex moves for reconsideration of a summary judgment order, the Court also employs the legal standard set forth in Federal Rule of Civil Procedure 56.  Entry of summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). Summary judgment should be granted if the evidence would require a directed verdict for the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986). Thus, "Rule 56[] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.

**IV. DISCUSSION**

As discussed above, the Court granted Centex leave to file a motion for reconsideration concerning Traveler's right to control the defense of the Garvey and Adkins actions. However, the motion filed by Centex goes further. Centex also seeks leave to file a motion for reconsideration of the Court's decision regarding the Acupan and Conner actions. Further, in the event that the Court declines to reconsider its decision regarding the Garvey, Adkins, Acupan, and Conner actions, Centex asks the Court to certify the April 2013 Order for interlocutory appeal.

    **A. Motion for Reconsideration Re: Centex's Right to Control the Defense of the Garvey and Adkins Actions**

"[A] liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity." Horace Mann Ins. Co. v. Barbara B., 4 Cal. 4th 1076, 1081 (Cal. 1993). The duty is "immediate," "arising on tender of defense and lasting

8

until the underlying lawsuit is concluded or until it has been shown that there is no potential for coverage." Montrose Chem. Corp. v. Sup. Ct., 6 Cal. 4th 287, 295 (Cal. 1993) (internal citations omitted). Once the insurer takes on the duty to defend, it generally has the absolute right to manage the defense, and the insured is required to surrender all control. See Safeco Ins. Co. of Am. v. Sup. Ct., 71 Cal. App. 4th 782, 787 (Cal. Ct. App. 1999). However, "[w]hen an insurer wrongfully refuses to defend, the insured is relieved of his or her obligation to allow the insurer to manage the litigation and may proceed in whatever manner is deemed appropriate." Eigner v. Worthington, 57 Cal. App. 4th 188, 196 (Cal. Ct. App. 1997).

The issue raised by Travelers' handling of the Garvey and Adkins actions is whether an insurer can ever regain control over its insured defense after it initially refuses to provide coverage. Centex contends that the answer to this question is controlled by J.R. Marketing, which was decided after the April 2013 Order, as well as Stalberg v. Western Title Insurance Co., 230 Cal. App. 3d 1223 (Cal. Ct. App. 1991). The Court agrees. In light of J.R. Marketing and Stalberg, the authority cited by Travelers is not persuasive.

### 1. J.R. Marketing

In J.R. Marketing, the defendant insurer refused to defend or indemnify the plaintiff insured in an underlying lawsuit. 216 Cal. App. 4th at 1449. The insured hired the law firm of Squire Sanders L.L.P. ("Squire") to defend it in the underlying action and bring suit against the insurer for coverage. Id. The insurer then reconsidered its position and agreed to provide the insured with a

defense, but the insurer refused to pay defense costs incurred prior to a certain date and insisted that its own counsel represent the insured in place of Squire, the insured's chosen Cumis counsel.[1] Id.

On summary adjudication, the trial court found that the insured was entitled to Cumis counsel from the date it tendered the underlying action and that the insurer could not invoke the provisions of California Civil Code section 2860 that cap the amount of fees payable to Cumis counsel. Id. at 1449-50. The trial court found that section 2860's protections were unavailable since the insurer had breached and continued to breach its defense obligations by failing to pay all reasonable and necessary defense costs incurred by the insured, and by failing to provide Cumis counsel. Id. at 1450. The Court of Appeal affirmed, reasoning: "Where, as here, the insurer breaches its duty to defend the insured, the insurer loses all right to control the defense, including, necessarily, the right to control financial decisions such as the rate paid to independent counsel or the cost-effectiveness of any particular defense tactic or approach." Id. at 1457.

Centex argues that J.R. Marketing shows that an insurer's breach of its duty to defend leads to a forfeiture of its right to control the insured's defense. Mot. at 22. Travelers responds that J.R. Marketing is distinguishable, because, in that case, the court found the insurer had a duty to defend, whereas here, the Court denied Centex's motion for partial summary judgment on the

---

[1] In California, an insured is entitled to independent counsel, a.k.a. Cumis counsel, where a conflict exists because of an insurer's control over the litigation. See Cal. Civ. Code § 2860.

10

issue of whether Travelers had a duty to defend Centex in any of the underlying cases. Opp'n at 23-24. Thus, Travelers maintains that it has a right to control Centex's defense, even though it purportedly does not owe Centex any defense obligations. Under this framework, Centex cannot control its defense in the Garvey and Adkins actions, but Centex is still on the hook for any damages and defense costs arising out of those actions. Travelers cannot have it both ways. If Travelers does have a duty to defend, then its denial of the Garvey and Adkins tenders was wrongful and resulted in a forfeiture of its right to control the defense of those actions. Alternatively, if Travelers has no duty to defend Centex, it is unclear why Travelers is trying to provide Centex with a defense and control its appointment of counsel.

Travelers also argues that even if Centex establishes that Travelers had a duty to defend Centex as of the date of Travelers' denial letters, Centex has not shown that the denials were wrongful, unreasonable, or in bad faith. Opp'n at 21. As to wrongfulness, the undisputed facts show that, prior to the initial denials, Centex provided Travelers with requested information regarding the Garvey and Adkins actions. Thus, if Travelers does owe a duty to defend with respect to those actions, then it must have erred in initially denying Centex's tenders. Moreover, Centex need not establish that the denials were unreasonable or in bad faith. Under J.R. Marketing, a breach of the duty to defend is sufficient to trigger a forfeiture of the insurer's rights to manage the insured's defense. See 216 Cal. App. 4th at 1457.

Next, Travelers argues that J.R. Marketing is inapposite because the breach in that case turned on the insured's failure to

11

provide Cumis counsel and to pay all reasonable and necessary defense costs. Opp'n at 24. In contrast, contends Travelers, the Court has already found that Centex is not entitled to Cumis counsel here, and Travelers has agreed to pay all reasonable and necessary defense costs. Id. This argument is also unavailing. Nothing in J.R. Marketing suggests that certain breaches of the duty to defend result in a forfeit of an insurer's rights while others do not. In fact, the J.R. Marketing court couched its opinion in broad terms, stating that the insurer forfeited its rights under section 2860 by "fail[ing] to meet its duty to defend and accept tender of the defense in the [underlying] matter." 216 Cal. App. 4th at 1455.

Finally, Travelers argues that J.R. Marketing is distinguishable because, in that case, the insurer did not try to cure its forfeiture, whereas here, Travelers purportedly agreed to pay all reasonable and necessary defense costs when it ultimately accepted the Centex's tenders. Opp'n at 24. But the insurer in J.R. Marketing eventually agreed to provide coverage. J.R. Marketing, 216 Cal. App. 4th at 1449-50. The appellate court upheld the trial court's decision to reject the insurer's argument "that once an insurer breaches its duty to defend by refusing to provide Cumis counsel, when that insurer is later ordered to provide Cumis counsel, and continues to refuse the order, but later agrees to provide that counsel, it can unilaterally take advantage of the rate limitation provision of Section 2860." Id. at 1451. While there was no intervening court order in the instant action, Travelers did not agree to provide coverage until after Centex filed a suit for coverage. Moreover, about a year elapsed between

12

1  the dates Centex tendered the Garvey and Adkins actions and the
2  dates Travelers agreed to provide coverage for those actions. Such
3  a delay, coupled with Travelers' initial denials, surely
4  constitutes a breach of the immediate duty to defend.

### 2. Stalberg

The court in J.R. Marketing relied in part on Stalberg, which also supports Centex's position. In Stalberg, the plaintiff landowners filed a quiet title action, and tendered the litigation to their insurer. 230 Cal. App. 3d at 1228. The insurer, Western, agreed to pay half the costs and attorney's fees incurred in the action. Id. When the plaintiffs appealed the trial court's decision in the underlying quiet title action, Western refused to pay their attorney's fees unless the plaintiffs stayed with the Warburton firm, the law firm that had represented them at trial. Id. at 1229. The Stalberg opinion is not clear on what happened next, but the insureds ultimately sued Western for breach of the duty to defend. The appellate court found for the insureds, holding: "When Western refused plaintiffs' tender of their appeal in the [underlying] action, it breached the contract. Once Western wrongfully denied a defense, it gave up the right to control the litigation and could not insist that plaintiffs use the Warburton firm in order for Western to cover attorney's fees on appeal." Id. at 1233. The Court also found that Western had not adequately investigated before deciding to pay only half the attorney fees and costs incurred in the lower court proceedings and rejecting the insured's request for attorney's fees for the appeal. Id.

Travelers' attempts to distinguish Stalberg are unavailing. First, Travelers argues that, unlike in Stalberg, there has been no

13

determination that Travelers had a duty to defend Centex in the Garvey and Adkins actions. However, as discussed above, this argument is unpersuasive as it is predicated on a framework that puts the insured in an impossible position. Second, Travelers argues that the instant action is distinct because Travelers ultimately agreed to defend Centex while the Garvey and Adkins actions were still ongoing. However, the insurer in Stalberg also agreed to fund its insured's case in the trial court, and attempted to intervene while its insureds' appeal was pending. As in the instant action, the insurer in Stalberg insisted that the insured use a particular law firm. 230 Cal. App. 3d at 1233. The Stalberg court found that the insurer had forfeited its right to do so by breaching its duty to defend. See id.

Together, Stalberg and J.R. Marketing support the conclusion that an insurer may not control the defense of its insured, which includes controlling the selection of counsel, after the insurer breaches its duty to defend.

### 3. Travelers' Authority

Travelers once again relies on Chase for the proposition that an insurer cannot forfeit a contractual right absent a showing of bad faith. Opp'n at 16-17. The issue in Chase was whether an insurer had lost its right to compel arbitration because its communications with the insured did not mention the arbitration provision in the parties' insurance contract. 42 Cal. App. 4th at 1148. The court found that an insurer could only lose a contractual right to arbitration under theories of waiver, forfeiture, or estoppel, and that forfeiture applied where an insurer "engage[d] in bad faith conduct designed to mislead the

14

insured." Id. In its April 2013 Order, the Court found that "while the Chase court was primarily concerned with an arbitration clause, its holding has broader implications," at least with respect to an insurer's duty to defend. Apr. 2013 Order 15. However, since J.R. Marketing and Stalberg directly address breaches of the duty to defend and enunciate a different rule with respect to forfeiture, that finding was in error.

Travelers also argues that Karsant Family Limited Partnership v. Allstate Insurance Co., C 08-01490 SI, 2009 WL 188036 (N.D. Cal. Jan. 27, 2009), shows that an insurer can cure a breach of the duty to defend where it later agrees to assume the insured's defense. Opp'n at 20. In Karsant, this Court held that an insurer's delay in accepting an insured's defense did not preclude it from invoking the attorney rate protections afforded by California Civil Code § 2860. 2009 WL 188036, at *5. Karsant is arguably inconsistent with J.R. Marketing, which was decided years later. In any event, since the Court now sits in diversity, J.R. Marketing is binding, while Karsant is not.

Nor is Petersen v. Hartell, 40 Cal. 3d 102 (Cal. 1985), controlling or persuasive in the insurance context. That case concerned whether a vendee was entitled to completion of performance on a land sale contract where it had willfully defaulted in making payments after having paid a substantial part of the purchase price. Id. at 105-06. The court concluded that the vendee retained an absolute right to redeem the property by paying the entire balance of the price and any other amounts due. Id. at 114. As the instant action concerns an insurance contract, not the sale of land, the equitable principles and policy

15

rationales considered in Petersen have little relevance here.

### 4. Conclusion as to the Garvey and Adkins Actions

In sum, the Court does not find persuasive Chase, Karsant, Petersen, and the other authority cited by Travelers. J.R. Marketing and Stalberg are more on point, and they indicate that an insurer forfeits its right to control an insured's defense when the insurer breaches the duty to defend. Accordingly, Centex's motion for reconsideration is GRANTED. The Court finds that Travelers forfeited its right to control the defense of the Garvey and Adkins actions.

### B. Motion for Leave to File Motion for Reconsideration Re: the Acupan and Connor Actions

Centex requests leave to file a motion for reconsideration of the April 2013 Order as that order relates to Travelers' right to control the defense of the Acupan and Conner actions. Contrary to Traveler's argument, Centex's request is not procedurally improper. Pursuant to Civil Local Rule 7-9, a party is permitted to seek leave to file a motion for reconsideration, which is exactly what Centex has done here. In light of the authority discussed above and the similarities between the Garvey, Adkins, Acupan, and Conner actions, Centex's motion for leave is GRANTED.

### C. Motion for Certification of Interlocutory Appeal

Centex alternatively moves the Court to certify its May 2012 Order for interlocutory appeal. As the Court has granted Centex's motion for reconsideration regarding the Garvey and Adkins actions, and has also granted Centex leave to file a motion for reconsideration regarding the Acupan and Connor actions, see Sections IV.A-B supra, Centex's motion for interlocutory appeal is

DENIED as moot.

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS Centex's motion for reconsideration, and finds that Travelers forfeited its right to control the defense of the Garvey and Adkins actions. Centex's motion for leave to file a motion for reconsideration as to the Acupan and Conner actions is also GRANTED. Centex's motion for certification of an interlocutory appeal is DENIED as moot.

IT IS SO ORDERED.

Dated: August 21, 2013

UNITED STATES DISTRICT JUDGE

17