IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CENTEX HOMES,<br><br>Defendant. | Case No. 11-cv-03638-CRB<br><br>Related Cases: 3:12-cv-00371-CRB; 13-cv-00088-CRB<br><br>**ORDER DENYING MOTIONS FOR LEAVE TO FILE MOTIONS FOR RECONSIDERATION, GRANTING REQUEST FOR JUDICIAL NOTICE, AND STAYING TRIAL** |

Plaintiff Travelers Property Casualty Company of America ("Travelers") seeks reconsideration of four orders in three related cases between Travelers and its insured, Centex Homes (11-3638 Dkt. 314; 12-371 Dkt. 242; 13-88 Dkt. 158). These orders are:

- An Order issued January 11, 2013 (12-371 Dkt. 87) (the "January Order")
- Orders issued August 26, 2013 (11-3638 Dkt. 200; 12-371 Dkt. 150; 13-88 Dkt. 65) (the "August Orders")
- An Order issued May 30, 2013 (12-371 Dkt. 127; 13-88 Dkt. 42) (the "May Order")
- An Order issued October 7, 2015 (11-3638 Dkt. 235) (the "October Order")

Defendant Centex Homes urges the Court to deny Travelers' Motions and to take Judicial Notice of pending state court proceedings. 12-371 Dkt. 236.

For the reasons that follow, the Court DENIES Travelers' Motions for Leave to File Motions for Reconsideration, GRANTS Centex's Request for Judicial Notice, and, in light of the ongoing state court proceeding, STAYS the forthcoming trial pending resolution of the California state court appeal.

A.  **Factual Background**

This case arises from several state construction defect actions filed against Centex Homes in California. Centex is a general contractor that contracts with subcontractors to build homes in California. 12-cv-371 Dkt. 150 at 2. Those actions included, as relevant here, the Adkins, Garvey, Acupan, and Conner construction defect lawsuits. Travelers Consolidated Br. at 8. Centex tendered the defense of those actions to Travelers pursuant to insurance contracts between the two parties. See id. at 3. The Court has repeatedly summarized the factual allegations in this case, see, e.g., 12-371 Dkt. 150; 11-3638 Dkt. 200, and thus the Court presumes the parties' familiarity with the factual background of this case.

B.  **Procedural Background**

Travelers brought, as relevant here, three lawsuits, docketed as 11-cv-3638, 12-cv-371, and 13-cv-88. The cases were eventually placed before Judge Conti. See 13-cv-88 Dkt. 43. He consolidated two of these matters but did not require that the parties file consolidated pleadings, dockets 12-cv-371 and 13-cv-88. 13-88 Dkt. 43; 12-371 Dkt. 128. He left the third, 11-cv-3638, separate because it was closer to trial than the other two cases. 11-3638 Dkt. 188.

Travelers now seeks reconsideration of several orders, briefly summarized as follows.

**August Orders**. Centex sought reconsideration of an order issued on April 8, 2013, in which the Court granted in part and denied in part the parties' cross motions for partial summary judgment. 11-3638 Dkt. 170. Centex argued that the April 8 order was inconsistent with the California Court of Appeal's decision in J.R. Marketing, L.L.C. v. Hartford Casualty Insurance Co., 158 Cal. Rptr. 3d 41 (Cal. Ct. App. 2013) ("J.R. Marketing"). 11-3638 Dkt. 195. In the two August Orders, one in 11-3638, Dkt. 200, and one in 12-371, Dkt. 150, and 13-88, Dkt. 65, Judge Conti granted Centex's motion for reconsideration and concluded that Travelers forfeited its right to control the defense of the Garvey and Adkins actions, because of its initial refusal to provide coverage, and of the

1  Acupan and Connor actions, because of its delays in accepting tender. Id.; see also 11-
2  3638 Dkt. 200.

**October Order**. The Court then stayed the proceedings because the California Supreme Court took the appeal from J.R. Marketing. 11-3638 Dkt. 224. After the California Supreme Court issued its decision—discussed in some detail below—the Court issued the October Order, granting Centex's motion for reconsideration and finding "that Travelers lost its right to control Centex's defense in the Acupan and Conner actions." 11-3638 Dkt. 235.

**January Order**. In case 12-371, Chief Judge Hamilton dismissed with prejudice Traveler's reimbursement claim against third-party counsel Newmeyer and Dillion LLP ("Newmeyer") because:

> [A]n insurer is not authorized under Buss v. Superior Court, 16 Cal. 4th 35 (1997), to seek reimbursement from a policyholder's attorney. Travelers assert[ed] that under California Penal Code § 500(c)(4), it is allowed to recover restitution of any money it has overpaid as a result of fraud on the part of its insured, and that for this reason, 'the legal theory set forth in the complaint is of no consequence.' The court is not persuaded, not least because Penal Code § 500, which applies to 'transmission of money to foreign countries,' does not include a subsection (c), and in any event does not appear applicable.

January Order at 2.

**May Order**. In this order, Judge Conti addressed another round of motions to dismiss and strike, concluding that California law (1) does not allow an insurer to bring a claim for reimbursement against non-insuree parties Newmeyer and RGL, a third party administrator, see Buss v. Superior Court, 16 Cal. 4th 35, 39 (1997); and (2) Travelers failed to establish that it had a contractual or fiduciary relationship with Centex's counsel or RGL. May Order. The May Order then dismissed with prejudice Travelers' claims for breach of fiduciary duty as to RGL and Travelers' claim for reimbursement against RGL and Newmeyer. May Order at 19.

## II. LEGAL STANDARD

"Reconsideration is appropriate if the district court (1) is presented with newly

3

1 discovered evidence, (2) committed clear error or the initial decision was manifestly

2 unjust, or (3) if there is an intervening change in controlling law." See Sch. Dist. No. 11 v.

3 ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993); see also Navajo Nation v. Confederated

4 Tribes & Bands of the Yakama Indian Nation, 331 F.3d 1041, 1046 (9th Cir. 2003)

5 ("Whether or not to grant reconsideration is committed to the sound discretion of the

6 court.").

## III. DISCUSSION

Central to Travelers' position is its claim that Hartford overruled J.R. Marketing, and that the Court's previous orders that relied on or reference J.R. Marketing are in consequence incorrect. See generally Travelers Consolidated Br. Centex does not dispute that Hartford overruled J.R. Marketing in part, but the disagrees as to how much of J.R. Marketing was overruled. Centex Consolidated Br. at 1. As this disagreement is core to Travelers' argument as to all four orders, it is worth discussing these two cases before exploring how they affect the challenged orders.

### A. J.R. Marketing & Hartford

#### 1. J.R. Marketing

In J.R. Marketing, the California Court of Appeal considered an appeal by defendants in an action for reimbursement of allegedly excessive fees in an insurance dispute. 158 Cal. Rptr. 3d at 44. In that case, the insurer, Hartford, refused to defend the insured, J.R. Marketing, when J.R. Marketing was sued and tendered the complaints to Hartford. Id. at 44-45. J.R. Marketing then sued Hartford, represented by third-party counsel, Squire and Harrington. Id. at 45. Hartford then reconsidered its position on its duty to defend in the underlying suits and agreed to provide a defense. Id. But Hartford refused to pay the defense costs that J.R. Marketing had already incurred or to provide independent counsel (also known under California law as "Cumis" counsel, see San Diego Navy Fed. Credit Union v. Cumis Ins. Soc'y, Inc., 208 Cal. Rptr. 494 (Ct. App. 1984)). J.R. Marketing, 158 Cal. Rptr. 3d at 45. J.R. Marketing then moved for summary judgment

"on the issue of whether Hartford owed them a duty to defend, including a duty to provide independent counsel." Id.

The trial court granted summary judgment to the insured. Id. It:

> [O]rdered Hartford to pay the insured cross-defendants' outstanding invoices within 15 days and to pay all future reasonable and necessary defense costs within 30 days of receipt. Acknowledging a right of reimbursement, the enforcement order provided, to the extent Hartford seeks to challenge fees and costs as unreasonable or unnecessary, it may do so by way of reimbursement after resolution of the [one of the underlying matters].

Id. (quotations and alterations omitted). It also concluded that "while Squire's bills had to be reasonable and necessary, Hartford was barred from invoking the protective provisions afforded insurers under Civil Code section 2860 because it 'has breached and continues to breach its defense obligations by (1) failing to pay all reasonable and necessary defense costs incurred by the insured and by (2) failing to provide Cumis counsel.'" Id. (quoting trial court).[1]

After an underlying matter was resolved, Squire submitted its invoices to Hartford, which paid them. Id. at 47. Hartford then filed a cross-complaint against Squire "asserting causes of action for reimbursement of monies paid pursuant to the enforcement order, unjust enrichment, accounting and rescission." Id. Hartford alleged that "Squire submitted improper invoices to Hartford 'under the auspices of the enforcement order,' which caused it to pay in excess of $15 million in defense fees and costs." Id. Squire, along with the insured as cross-defendants, demurred the cross-complaint "on the ground that each cause of action fails to allege facts sufficient to state a valid legal claim." Id. The trial judge dismissed the order, and Hartford appealed. Id. at 47-48.

The Court of Appeal addressed "one primary question": "Does Hartford have a quasi-contractual right rooted in common law to maintain a direct suit against . . . independent counsel for certain cross-defendants in [an underlying] action, or Harrington,

---

[1] California Civil Code § 2860 governs when insurance companies have a duty to provide independent counsel to their insured due to a conflict of interest.

5

an uninsured defendant in the Marin action . . . for reimbursement of excessive or otherwise improperly-invoiced defense fees and costs?" Id. at 48. The Court of Appeals determined the answers to those questions was "no." Id. It reasoned as follows.

Under California law, "an insurer has the right to control defense and settlement of a third party action against its insured, and to otherwise directly participate in the litigation on the insured's behalf, so long as no conflict of interest arises between the insurer and the insured." Id. In J.R. Marketing, there was undisputedly such a conflict of interest. Id. In such cases, the "insured is entitled under Civil Code section 2860 to independent [Cumis] counsel at the insurer's expense." Id. at 49. In other words, "there is no attorney-client relationship between Cumis counsel and the insurer." Id. (quoting Assurance Co. of America v. Haven 38 Cal. Rptr. 2d 25, 33 (Cal. App. 1995)).

Section 2860 provides certain protections for the insurer, for instance "limits the rate of fees an insurer may be obligated to pay to 'the rates which are actually paid by the insurer to attorneys retained by it in the ordinary course of business in the defense of similar actions in the community where the claim arose or is being defended.'" Id. (quoting Cal. Civ. Code § 2850(c)). But, J.R. Marketing cautioned, "these protective rules come with an important caveat. '[T]o take advantage of the provisions of [section] 2860, an insurer must meet its duty to defend and accept tender of the insured's defense, subject to a reservation of rights.'" Id. (quoting Atmel Corp. v. St. Paul Fire & Marine, 426 F. Supp. 2d 1039, 1047 (N.D.Cal. 2005) (alterations in original)). When an insurer fails to meet that duty, "the insurer forfeits the protections of section 2860, including its statutory limitations on independent counsel's fee rates and resolution of fee disputes." Id.

The Court of Appeal held that "Hartford failed to meet its duty to defend and accept tender of the defense in the Marin matter, thereby . . . forfeiting its right to rely on the statutory protections of section 2860 and to otherwise control the defense." Id. Against that background, the court considered "Hartford's asserted right to seek reimbursement in a direct suit against Squire." Id.

It began that inquiry by identifying two important principles:

> First, with respect to claims that are at least partially covered under the relevant policy, an insurer's duty to defend extends to the insured's entire defense cost. And second, with respect to claims not even potentially covered under the relevant policy, an insurer, like Hartford, does indeed have a right to seek reimbursement of its cost to defend such claims once the underlying suit has been resolved.

Id. at 49-50 (internal citations omitted). But, it observed, neither principle resolves "<u>against whom</u> may an insurer assert this right." Id. at 50 (emphasis in original).

Hartford argued that under California law, "a right of restitution lies, independent of a contractual relationship, between any person who has suffered loss and the person who has been unjustly enriched thereby," and so "insurers are entitled to reimbursement from independent counsel of those costs to prevent counsel's unjust enrichment by the insurer." Id. at 50-51 (citing <u>Buss v. Superior Court</u>, 16 Cal. 4th 35, 47-48 (1997); <u>Durell v. Sharp Healthcare</u>, 108 Cal. Rptr. 682, 699 (Cal. App. 2010)).

The Court of Appeal disagreed. It reasoned that Hartford's argument ignored the "important caveat governing restitution claims," that "the fact that one person benefits another is not, by itself, sufficient to require restitution. The person receiving the benefit is required to make restitution only if the circumstances are such that, as between the two individuals, it is unjust for the person to retain it." Id. at 51 (citations omitted). Here, allowing an insurer's fee arrangement preferences to retroactively be imposed on <u>Cumis</u> counsel when the insurer previously forfeited the protections of § 2860 would "afford the insured . . . more rights in a fee dispute with independent counsel than the insurer that has not waived such protections." Id. at 52. The court thus held that:

> [B]y providing legal services to cross-defendants, Squire did not confer any benefit upon Hartford. Rather, Squire conferred a benefit on its clients—to wit, cross-defendants. That Hartford paid Squire for those services does not change this fact. There simply is no legal basis here for the restitution claim that Hartford has asserted against Squire. Here, it is the insured cross defendants—rather than independent counsel—that the insurer should look to for reimbursement if it believes the fees were incurred to defend claims that were not covered by the insurer's policies[.]

Id. at 53.

The Court of Appeal also noted that its holding was a limited one, and explicitly stated that "we have no reason to, and do not, take a position as to whether an insurer would have the right to maintain a direct suit against independent counsel for fraudulent billing practices in connection with the underlying defense of its insured." Id.

## B. Hartford

Hartford then appealed to the California Supreme Court. Hartford, 61 Cal. 4th. The Court defined the "narrow question" presented as: "From whom may a [commercial general liability (CGL)] insurer seek reimbursement when: (1) the insurer initially refused to defend its insured against a third-party lawsuit; (2) compelled by a court order, the insurer subsequently provided independent counsel under a reservation of rights—so-called Cumis counsel to defend its insured in the third party suit; (3) the court order required the insurer to pay all 'reasonable and necessary defense costs,' but expressly preserved the insurer's right to later challenge and recover payments for 'unreasonable and unnecessary' charges by counsel; and (4) the insurer now alleges that independent counsel 'padded' their bills by charging fees that were, in part, excessive, unreasonable, and unnecessary?" Id. at 992 (internal citations omitted).

The Court then reversed the Court of Appeal, holding that "[i]f Cumis counsel, operating under a court order that expressly provided that the insurer would be able to recover payments of excessive fees, sought and received from the insurer payment for time and costs that were fraudulent, or were otherwise manifestly and objectively useless and wasteful when incurred, Cumis counsel have been unjustly enriched at the insurer's expense." Id. at 992-93. The Court recognized that "[t]hough this restitutionary obligation is often described as quasi-contractual, a privity of relationship between the parties is not necessarily required;" rather, "the obligation [to pay restitution] arises when the enrichment obtained lacks any adequate legal basis and thus cannot conscientiously be retained." Id. at 998 (internal citation omitted).

Relying on Buss, the Court then noted that "[w]hen the issuer of a CGL policy has

8

met its obligation to completely defend a 'mixed' action against its insured . . . the insurer is entitled to restitution from the insured for those fees and costs that were solely attributable to defending claims that clearly were not covered by the policy," because "the insurer never bargained to bear the costs of defending those claims that were manifestly outside the policy's coverage . . . . Under these circumstances . . . [Buss held that] it would be unjust for the insured to retain the benefit of the insurer paying for defense costs that are beyond the scope of the insurance contract." Id. at 998-99 (citing Buss, 16 Cal. 4th at 47-48).[2] But, Buss left open a question: "who is 'unjustly' enriched if independent counsel representing the insured, but compensated by the insurer, are allowed to retain payments that were unreasonable and unnecessary for the insureds' defense against any claim[?]" Id. at 999. The Court concluded that, "on the assumption that counsel's fees were excessive and unnecessary and were not incurred for the benefit of the insured . . . . it is counsel who should owe restitution of the excess payments received." Id.

The Court then took care to note what it was not deciding:

> We emphasize that our conclusion hinges on the particular facts and procedural history of this litigation. As noted, the trial court's . . . enforcement order foreclosed Hartford from "invok[ing] the rate provisions of [s]ection 2860," but nevertheless admonished that counsel's bills must be "reasonable and necessary," and, citing cases that allow reimbursement actions based on restitution principles, expressly provided that Hartford could challenge Squire Sanders's bills in a subsequent reimbursement action. This enforcement order was upheld on appeal and is now final. We thus assume its propriety for purposes of the question presented here. Our task is to determine only whether, taking as given that Hartford is entitled to challenge the reasonableness and necessity of counsel's fees in a reimbursement action, Hartford may seek reimbursement directly from Squire Sanders. We conclude that it may, but express no view as to what rights an insurer that breaches its defense obligations might have to seek reimbursement directly from Cumis counsel in situations other than the rather unusual one before us in this case.

Id. at 999-1000. The Court thus "reversed insofar as it upheld the dismissal of Squire

---

[2] A "mixed" action is an action in which an insurance policy "potentially" covers a claim against an insured. Hartford, 61 Cal. 4th at 991. In such cases, the insurer must defend against all claims, even if some of those claims fall outside the policy but may seek reimbursement from the insured as to the uncovered claims. Id.

9

Sanders from Hartford's cross-suit," and "otherwise affirmed." Id. at 1008.

With the foregoing in mind, the Court now turns to the orders for which Travelers seeks reconsideration.

### C. August Orders

In the August Orders, decided after J.R. Marketing but before Hartford, Judge Conti granted reconsideration of an April 2013 Order in which he had vacated in part a May 10, 2012 Order granting Centex's prior motion for partial summary judgment. 12-371 August Order at 2 (citing April 2013 Order, 11-3638 Dkt. 170). The August Order held that "[p]rior to Travelers' acknowledgement of its duty to defend, N&D could not have plausibly owed Travelers a fiduciary duty, since during this period, N&D's sole duty was to Centex." Id. at 18. The Court then limited Travelers' claim for breach of fiduciary duty only to the time after Travelers accepted the defense. Id. This Order thus held that Travelers could not pursue causes of action for accounting or breach of fiduciary duty against N&D for fees and costs incurred during the time period between Centex and N&D's tender and Travelers' acceptance. Id. Similarly, in the 11-3638 August Order, the Court granted Centex's motion for reconsideration for the Acupan and Connor actions. 11-3638 August Order at 16-17.

Travelers argues that Hartford is inconsistent with that conclusion. Travelers Consolidated Br. at 19. And that is so, it urges, because Hartford permitted the insurance company to seek fees from Cumis counsel from the date of tender, not the date of the enforcement order. Id. Travelers argues that this holding requires this Court to permit Travelers to pursue its claims against Newmeyer from the date of tender. Id.

The problem with Traveler's position is that it ignores the California Supreme Court's explicit narrowing of its holding. Hartford confined its holding to "the particular facts and procedural history of this litigation," namely that there was an enforcement order. Hartford, 61 Cal. 4th at 999. The enforcement order mattered, the Court reasoned, because the existence of that order foreclosed the possibility that Squire was merely an incidental beneficiary of Hartford's payments. Id. at 1000-01. As to other situations, the Court took

10

"no view as to what rights an insurer that breaches its defense obligations might have to seek reimbursement directly from Cumis counsel in situations other than the rather unusual one before us in this case"—that is, a case in which there was an underlying enforcement order. Id. at 999–1000.

Here, Travelers does not allege that there was an enforcement order. See generally Travelers Consolidated Br.; see also Centex Consolidated Br. at 25. Hartford's reasoning based on an enforcement order thus has no application here. And Hartford took pains to avoid reaching any broader holder. 61 Cal. 4th at 999-1000. Hartford's holding, thus, does not apply to the facts of this case, and thus does not constitute "an intervening change in controlling law," Sch. Dist. No. 11, 5 F.3d at 1263, that would require reconsideration.

Nor is Travelers' argument that the fact that the August Order repeatedly cited J.R. Marketing, which Hartford depublished, is alone sufficient to justify reconsideration persuasive. See Travelers Consolidated Br. at 11-12. To be sure, Hartford did reverse J.R. Marketing, but it only "reversed insofar as it upheld the dismissal of Squire Sanders from Hartford's cross-suit, and [] otherwise affirmed." Hartford, 61 Cal. 4th at 1008. And it only reached that decision based "on the particular facts and procedural history of this litigation." Id. at 999. The fact that the August Orders relied on J.R. Marketing in concluding that Travelers could not bring a cause of action for breach of fiduciary duty against Newmeyer does not inherently render that decision flawed. See August Order at 18.

In consequence, Travelers has not demonstrated an intervening change in the law that would warrant granting its motion for reconsideration. The Motion for Reconsideration of the August Orders is thus DENIED.

### D. October Order

In the October Order, Judge Conti addressed whether Travelers' delay in accepting tender in the Acupan and Conner actions amounted to a breach of the duty to defend and whether, if so, that meant that Travelers lost its right to control Centex's defense in those actions. October Order at 9. The Court held that "a failure to provide counsel or to

guarantee the payment of legal fees immediately after an insurer's duty to defend has been triggered constitutes a breach of the duty to defend, even if the insurer later reimburses the insured." Id. (citing Montrose Chem. Corp. v. Superior Court, 6 Cal. 4th 287, 300 (1993)).

Travelers argues that Hartford nullifies the October Order because it, too, relied on J.R. Marketing. October Order at 12; Travelers Consolidated Br. at 25. Specifically, Travelers points to Hartford's rejection of Squire's argument that where "the insurer wrongfully refused to defend the insured or to afford Cumis counsel, the insured may proceed as he or she deems appropriate, and the insurer forfeits all right to control the insured's defense, including the right to determine litigation strategy." 61 Cal. 4th at 1002. Travelers argues that Hartford thus stands for the proposition that an insured does not forfeit its right to control through delay, but may only lose a right through waiver, estoppel, or forfeiture. Travelers Consolidated Br. at 25-27.

Again, Travelers overreads Hartford. While the Court did reject Squire's argument, it did so in the context of the "particular facts and procedural history of this litigation." Hartford, 61 Cal. 4th at 999. And California law is clear that, in general, "[u]nreasonable delay in paying policy benefits or paying less than the amount due is actionable withholding of benefits which may constitute a breach of contract as well as bad faith giving rise to damages in tort." Intergulf Dev. LLC v. Superior Court, 183 Cal. App. 4th 16, 20 (2010). Hartford did not purport to alter this general rule. See generally Hartford, 61 Cal. 4th. And so that general proposition—the basis for the October Order—remains unaltered. Hartford is thus not an intervening change in law that can support a motion for reconsideration. See Sch. Dist. No. 11, 5 F.3d at 1263.

Travelers additionally argues that the October Order was in error because "[i]n holding that an insurer must accept the defense before the date upon which the answer must be filed, the Court calculated the date upon which an answer would be due from the date the complaint was filed rather than calculating from the date on which the complaint was actually served on Centex." Travelers Consolidated Br. at 22. And it urges that if the Court had calculated from the date served, "Travelers acceptance of the defense of Centex

12

was timely in both actions because Centex was not forced to file answers before Travelers accepted the defense." Id. This argument is not the basis for a successful motion for reconsideration, as it identifies no new evidence, injustice, or intervening change in law. See Sch. Dist. No. 11, 5 F.3d at 1263.

Travelers next argues that public policy demands reconsideration because "Travelers be entirely disincentivized from reversing a denial [of coverage] and accepting the defense if in doing so all of its rights were forfeited" because it had delayed acceptance. Travelers Consolidated Br. at 27-28. Even were this true, this does not meet the standard for reconsideration, as it identifies no new evidence, injustice, or intervening change in law. See Sch. Dist. No. 11, 5 F.3d at 1263. So too with Travelers' arguments that Centex did not establish a forfeiture and failed to establish that Travelers waived its rights to control the defense. Travelers Consolidated Br. at 28-29. Travelers already had the opportunity to make these arguments to Judge Conti, and Travelers has identified nothing that compels a different conclusion. See generally Travelers Consolidated Br.

In consequence, Travelers has not demonstrated anything that would warrant granting its motion for reconsideration. The Motion for Reconsideration of the October Order is thus DENIED.

### E. January Order

Travelers further argues that under Hartford, Chief Judge Hamilton's determination "that an insurer is not authorized under Buss v. Superior Court, 16 Cal. 4th 35 (1997)[,] to seek reimbursement from a policyholder's attorney," May Order at 2, cannot be sustained. Travelers Consolidated Br. at 15-16. It contends that Hartford permits a claim for unjust enrichment, and thus this Court should reconsider Judge Hamilton's rejection of its claim for reimbursement against Newmeyer and RGL on a theory of unjust enrichment. Id. at 16-17. But Chief Judge Hamilton's order was based on Travelers' argument "that under California Penal Code § 500(c)(4), it is allowed to recover restitution of any money it has overpaid as a result of fraud on the part of its insured, and that for this reason, 'the legal theory set forth in the complaint is of no consequence.'" January Order at 2. Hartford did

1    not address whether California criminal law creates a private cause of action for restitution.
2    Id. Nor did that order does not rely on J.R. Marketing. Id.

Moreover, again, Hartford expressly limited its holding to cases in which there was an enforcement order. 61 Cal. 4th at 999-1000. And so Travelers' contention that "the rationale that Travelers cannot seek reimbursement from N&D and RGL as a matter of law simply because no contractual basis exists is no longer a valid argument based on this change of law," Travelers Consolidated Br. at 16, is, as above, an overly-broad reading of the rather modest holding of Hartford. Hartford did not create a general cause of action for reimbursement against defense counsel divorced from the particular facts of that case. See Hartford, 61 Cal. 4th at 999-1000.

In consequence, Travelers has not demonstrated an intervening change in the law that would warrant granting its motion for reconsideration. The Motion for Reconsideration of the January Order is thus DENIED.

### F. May Order

The final order that Travelers asks this Court to reconsider is the May Order, in which Judge Conti held that California law (1) does not allow an insurer to bring a quasi-contract claim for reimbursement against non-insuree parties like Centex's counsel or a third party administrator like RGL, see Buss v. Superior Court, 16 Cal. 4th 35, 51 (1997); and (2) Travelers failed to establish that it had a contractual or fiduciary relationship with Centex's counsel or RGL during the relevant time periods. See May Order.

Judge Conti's reasoning in the May Order was functionally identical to Chief Judge Hamilton's reasoning in the January Order—in fact, he observed that Travelers' argument based on the California Penal Code and contract law and was "previously rejected in a related case." May Order at 14. And so the reasons why reconsideration is not warranted there compel the same conclusion here.

In consequence, Travelers has not demonstrated an intervening change in the law that would warrant granting its motion for reconsideration. The Motion for Reconsideration of the May is thus DENIED.

14

### G. Request for Judicial Notice (12-371 Dkt. 236)

Centex has alerted this Court that the parties are litigating substantially similar issues in state court. Centex Consolidated Br. at 23-24. And it has requested this Court take judicial notice of several documents from that case, <u>Centex Homes v. Ad Land Ventures, et al.</u>, Sacramento County Superior Court Case No. 34-2011-00112151. 12-371 Dkt. 236.

While a court generally "will not consider facts outside the record developed before the district court," it "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." <u>U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.</u>, 971 F.2d 244, 248 (9th Cir. 1992) (quoting <u>Daly–Murphy v. Winston</u>, 837 F.2d 348, 351 (9th Cir. 1987); <u>see also</u> <u>St. Louis Baptist Temple, Inc. v. FDIC</u>, 605 F.2d 1169, 1172 (10th Cir. 1979)).

Pursuant to this rule, the Court now takes judicial notice of the following. A Sacramento state-court jury has recently reached a verdict against Travelers. Request for Judicial Notice; <u>id.</u> Exh. 2. That jury, via a special verdict form, rejected Travelers' argument that the billing arrangement between Centex and N&D was fraudulent. <u>Id.</u> Exh. 2.

Centex indicates that this case is currently on appeal. Centex Consolidated Br. at 23-24. And, it argues, "[o]nce this judgment becomes final . . . the jury's rejection of Travelers' billing-fraud theory will collaterally estop and preclude Travelers from re-litigating the issue here or anywhere." <u>Id.</u>

In light of this pending state court appeal's potential preclusive impact on this case—and taking no position on whether or to what extent there will be such an impact—it undermines the interests of judicial efficiency and economy to proceed to trial in these matters at this time. The Court thus STAYS the forthcoming trial pending resolution of the state-court proceedings.

### H. Request for Certificate of Immediate Appeal (12-371 Dkt. 30)

Lastly, Travelers requests that, if its motions for reconsideration are not granted, the Court permit an interlocutory appeal on the August and October Orders. Travelers

Consolidated Br. at 30-31. Such a certificate is appropriate when:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order.

28 U.S.C. § 1292(b).

Travelers contends that this standard is met because "there have been numerous motions for reconsideration of orders that must be fully and finally resolved before this case will ever be completed." Travelers Consolidated Br. at 30-31.

Given that the pending state court appeal may yet have an impact on the issues before this court, such an interlocutory appeal is premature, and risks undermining the goals of judicial efficiency. The Court thus DENIES the request for a certificate of appealability at this time.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Travelers' Motions for Leave to File Motions for Reconsideration and for a certificate of immediate appealability, GRANTS Centex's Request for Judicial Notice, and, in light of those state court proceeding, STAYS the forthcoming trial pending resolution of the California state court appeal. The parties are hereby directed to advise the Court within thirty days of the resolution of the appeal in the state court matter discussed herein.

**IT IS SO ORDERED.**

Dated: January 22, 2019

CHARLES R. BREYER
United States District Judge